**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS BAKER, SEAN BAILEY, NICOLE BOLDEN, ALLISON NELSON, and MEREDITH WALKER, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. No. 4:16-cv-1693 |
| THE CITY OF FLORISSANT | ) ) | (Jury Trial Demanded) |
| Defendant. | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COME NOW Plaintiffs Thomas Baker, Sean Bailey, Nicole Bolden, Allison Nelson, and Meredith Walker, individually and on behalf of all others similarly situated, by and through their counsel of record, and for their Response in Opposition to Defendant City of Florissant's Motion to Dismiss (Doc. 22) pray this honorable Court deny the motion for the following reasons:

## INTRODUCTION

Defendant City of Florissant makes no serious argument that Florissant's practice of jailing individuals for failure to pay fines and fees without first inquiring into individuals' ability to pay is constitutional. Nor could it. *See Tate v. Short*, 401 U.S. 395, 398 (1971) ("[T]he Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full"); *Bearden v. Georgia*, 461 U.S. 660, 667–68 (1983) ("[I]f the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it").

Instead, Defendant seeks dismissal based on three unconvincing arguments: First, Defendant argues that Plaintiffs' pleadings are facially insufficient—which they are not. Second, Defendant argues that Plaintiffs' *Monell* claims against the City for its unconstitutional debtors' prison scheme are actually just claims against individual or single entity participants in that scheme who are immune from suit. Finally, Defendant argues that Plaintiffs' allegations do not provide them standing to pursue injunctive or declaratory relief, despite well-settled federal law readily conferring standing on the Plaintiffs.

The attorneys for Florissant have made these same, rote arguments for dismissal in two separate lawsuits asserting similar constitutional claims against St. Louis area municipalities. This Court has already rejected those arguments. *See Fant v. City of Ferguson ("Ferguson I")*, 107 F. Supp. 3d 1016, 1024, 1027 (E.D. Mo. May 26, 2015) (Plaintiffs' fifty-five-page complaint did not violate Rules 8 or 10 because it alleged "discrete sets of circumstances" in sufficient detail); *Fant v. City of Ferguson ("Ferguson II")*, No. 4:15-cv-00253, 2016 WL 6696065, *6 (E.D. Mo. Nov. 15, 2016) (complaint that was "replete with allegations" of injuries suffered because of "continuing and pervasive unconstitutional practices of a wide range of City employees" was against the City not the municipal court and its judges); *Ferguson II*, 2016 WL 6696065 at *6-8 (plaintiffs who pled they still owed the city debts had standing for injunctive relief because they remained "subject to the City's continuing unconstitutional debt-collection and post-arrest policies and procedures").[1] Respectfully, this Court should follow these well-reasoned decisions and deny Defendant's Motion entirely.

---

[1] Plaintiffs' undersigned counsel, ArchCity Defenders, Inc. (a not-for-profit public interest law firm), also represents the *Ferguson* plaintiffs.

## LEGAL STANDARD

The Supreme Court has adopted a two-step analysis for evaluating motions to dismiss under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face'," quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). First, the court must accept the plaintiff's well-pled factual allegations as true and "construe the complaint in the light most favorable to the nonmoving party." *Carton v. General Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010). Although mere "legal conclusions" and "naked assertions devoid of further factual enhancement" are "not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 678 (internal citation omitted), the Supreme Court has adhered to the basic precept of Rule 8(a)(2): A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78.

Second, a court must ask whether the complaint contains "enough facts to state a belief that is plausible on its face." *Twombly*, 540 U.S. at 570. The plausibility standard is satisfied where the complaint contains enough "factual content [to] allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, the Plaintiffs need only allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" of their claim. *Twombly*, 550 U.S. at 556.

## ARGUMENT

### I. The Amended Complaint Easily Satisfies the Federal Pleading Requirements and Defendant's Arguments to the Contrary are Nonsensical.

Five Plaintiffs have advanced seven claims against the City of Florissant (the "City") for its pervasive and complex practice of using detention to extort bonds from indigent civil judgment debtors. *See* Am. Compl. *et seq.* In their Amended Complaint, Plaintiffs allege their

individual claims with sufficient specificity, comprehensively describe Florissant's widespread practices, and clearly relate all of those facts to the elements of the seven causes of action. The City's motion to dismiss for failure to comply with Rule 8, Rule 10, and its motion for a more definite statement pursuant to Rule 12, should each be denied.

A.     **The Amended Complaint Complies with Rule 8.**

Defendant hopes the Amendment Complaint will be dismissed under Rule 8 because Defendant believes it is too detailed and complicated. Although Rule 8(a)(2) requires a complaint to *contain* a short and plain statement of a plaintiff's claim, the complaint itself need not *be* short or plain. Indeed, the complaint must be long enough to allege sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1217 (3d ed.) (Rule 8 "speaks of a short and plain *statement of each claim*, not a short and plain *pleading*") (emphasis added).

Even where each claim is "stated as succinctly and plainly as possible," a "multiparty, multiclaim complaint" is frequently "long and complicated by virtue of the number of parties and claims." *Id.*; *see also Kadamovas v. Stevens*, 706 F.3d 843, 844-45 (7th Cir. 2013) (noting the plausibility requirement meant complaints would likely be longer than before *Twombly* and *Iqbal*). Plaintiffs' Amended Complaint reflects the full scope of the City's scheme—one composed of constitutional violations committed at every level of Florissant's local government over many years and harming thousands of people. Conveying the severity and pervasiveness of the City's misconduct and its impact on Plaintiffs necessitated a lengthy Amended Complaint.

Further, although courts can dismiss complaints under Rule 8, they do not do so simply because the complaints are "too long" or "too detailed," but because they are impossible to

understand. *See Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("Dismissal pursuant to the rule is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised") (internal quotation marks omitted). The Amended Complaint here is long solely because it describes the full scope of the City's myriad unconstitutional practices, not because it is unintelligible.

The City also argues that the Amended Complaint alleges facts irrelevant to Plaintiffs' substantive legal claims—objecting, for example, to allegations about the jail's squalid conditions and the City's failure to provide medical care. *See* Def.'s Mem. (Doc. 23) at 5. These are core allegations: the City used its jail and the threat of jail to extract money from indigent individuals, and it used squalid conditions to punish individuals not convicted of a crime. Simply, confining Plaintiffs in these punitive conditions violated their Fourteenth Amendment rights as pre-trial detainees, and confining and threatening to confine Plaintiffs in these conditions is part of the City's larger unconstitutional scheme to extort money from Plaintiffs.

Lastly, the City also argues that the seventeen footnotes in Plaintiffs' complaint create "uncertainty as to the significance of the content or how defendant is to specifically respond." Def.'s Mem. (Doc. 23) at 5. To support this argument, the City cites *Klopfenstein v. P&C Creative Investments,* No. 1:07CV47 CDP, 2007 WL 2507779, at *1 (E.D. Mo. Aug. 30, 2007), in which the Court ordered plaintiffs to re-plead their complaint without footnotes. *Id.* at *2. But nothing in the *Klopfenstein* order suggests that the complaint's use of footnotes alone required re-pleading. *Id.* at *1 (noting the complaint was "extremely confusing" for a number of reasons, including that it did not clearly state each legal theory in a separate count). *Klopfenstein* is an extreme example of a disorganized complaint containing no discernible cause of action, yet

alleging facts that the court believed could support one. If anything, the *Klopfenstein* order showed extreme leniency with plaintiffs who failed to specify *any* legal claims.

Plaintiffs here demand no such leniency, as the Amended Complaint clearly pleads the relevant facts and specifically enumerates the legal theories giving rise to each distinct cause of action.

### B.      The Amended Complaint Complies with Rule 10.

Having argued that the Amended Complaint contained too many paragraphs under Rule 8, the City also argues the pleading has too *few*. Def.'s Mem. (Doc. 23) at 7.

Rule 10(b) requires that plaintiffs—to the extent practicable—group discrete facts into numbered paragraphs so that each paragraph makes a coherent point about related conduct. Fed. R. Civ. P. 10. To support their argument that Plaintiffs failed to comply with the Rule 10(b) requirement, the City cites a single decision from an Iowa federal court without any additional explanation of its significance. Def.'s Mem. (Doc. 23) at 7 (citing *Fleming v. Iowa Bd. of Med.*, No. C16-0161-LRR, 2016 WL 4487875, at *2 (N.D. Iowa Aug. 24, 2016)). As it turns out, *Fleming* involved a *pro se* plaintiff who failed to meet the Rule 10(b) requirements when he *omitted an entire page* of the form he used to file his complaint. *Id.* at *2. Understandably, a missing page made it difficult for the defendant and the court to determine what the plaintiff's allegations were and the court dismissed the case. *Id. Fleming* is factually inapposite to the present case. Apart from introductory paragraphs describing the nature of the suit, Plaintiffs' numbered paragraphs each deal with a discrete set of circumstances. The City has cited zero authority where a court has dismissed a complaint under Rule 10(b) for including introductory paragraphs that summarized the impacts of a challenged practice.

### C. The Amended Complaint Contains No "Redundant, Immaterial, Impertinent, or Scandalous Matters."

The City's argument that certain allegations in the Amended Complaint are subject to being stricken under Rule 12(f) as "redundant, immaterial, impertinent, or scandalous." *See* Def.'s Mem. (Doc. 23) at 7. Striking a party's pleadings is an extreme measure even under the court's broad discretion to do so. The Eighth Circuit reviews motions to strike with disfavor and infrequently grants them. *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059 (8th. Cir. 2000). As the City notes, the legal definition of a "scandalous" allegation for purposes of Rule 12 is one that "*improperly* casts a derogatory light on someone, most typically on a party to the action." *Aoki v. Benihana, Inc.*, 823 F.Supp.2d 759, 764 (D. Del. 2012) (emphasis added). While the City's alleged conduct of extorting money from poor people by threatening jail is indeed "scandalous" under common parlance, there is nothing "improper" about alleging such conduct when it actually occurs daily in Florissant. The City has not shown and cannot show that Plaintiffs' allegations are unfounded or irrelevant—and thus *improper* under 12(f)—where Plaintiffs' allegations all have a clear, robust logical connection to the subject matter of this suit. *See Mark Andy, Inc. v. Cartonmaster Int'l (2012), Inc.*, No. 4:14-CV-986-SPM, 2014 WL 7140630, at *1 (E.D. Mo. Dec. 12, 2014) (noting a motion to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties").

The City argues, specifically, that the Court should strike factual allegations from the Amended Complaint about the disproportionate impact Florissant's debtors' prison scheme has on minorities. Def.'s Mem. (Doc. 23) at 9. Again, aside from calling this allegation "scandalous," the City fails to articulate how this allegation is unduly prejudicial to it. At a minimum, these factual allegations about racially disproportionate impact of the City's

unconstitutional scheme supply basic background information on Florissant's debtors' prisons. *See, e.g., Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, No. 04-4213 (JRT/AJB), 2006 WL 1851137, at *2 (D. Minn. June 30, 2006) ("A motion to strike should not be used to strike allegations that supply background or historical material unless unduly prejudicial to defendant"); *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992) (same); *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 402 F. Supp. 636, 637 (S.D.N.Y. 1975) (same). At most, these allegations show the scheme almost uniformly burdens a particular race and thus provide additional evidence of the practices' constitutional infirmity. Because the Defendant has made no argument about how or why it will suffer undue prejudice unless the Court strikes the challenged portions of the Amended Complaint the Court should not dismiss any portion of Plaintiffs' allegations.

## II.     Plaintiffs Adequately Alleged § 1983 Municipal Liability under *Monell.*

Plaintiffs' Amended Complaint alleges multiple levels of Florissant municipal employees in multiple departments have participated in a practice of extracting funds from poor civil judgment debtors. The City, as a municipal corporation, is responsible for this unconstitutional scheme, and Plaintiffs have properly alleged the City is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (establishing municipal corporations' liability in §1983 actions).

Municipalities do not enjoy absolute or qualified immunity from suit under §1983 precisely *because* absolute and qualified immunity protect such a wide range of individual bad actors from monetary liability under § 1983. *Sample v. City of Woodbury*, 836 F.3d 913, 917 (8th Cir. 2016) ("Extending immunity protections to municipalities . . . would leave innocent persons harmed by the abuse of governmental authority without a remedy for compensation for their injury").

## A.      Legal Standards for Municipal Liability

Municipal corporations are liable for constitutional violations under §1983 where those violations result from "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699 (8th Cir. 2016) (citing *Monell*, 436 U.S. at 691) (internal quotation marks omitted); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).

Plaintiffs need only plead facts at the motion to dismiss stage, from which a court can *infer* Plaintiffs' injuries were the result of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)); *see also Fant v. The City of Ferguson*, No. 4:15-CV-00253-AGF, 2016 WL 6696065, at *5 (E.D. Mo. Nov. 15, 2016) (same).

Plaintiffs have two possible paths for establishing an inference of *Monell* liability. As one option, Plaintiffs can allege action by a municipal official with "final policymaking authority" where the challenged action was "taken pursuant to a policy adopted by the official . . . responsible under state law for making policy in that area of the city's business." *Cities of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (internal citations omitted). Alternatively—as they have done here— Plaintiffs can allege the muncipality's challenged conduct was the result of an unofficial custom or practice. *See, e.g.*, *Corwin*, 829 F.3d at 700 (citing *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999); *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)). Defendant argues that Plaintiffs have not alleged sufficient facts under the first option to plead *Monell* liability, but ignores that Plaintiffs have alleged sufficient facts under the second option.

### B. Plaintiffs Allege that the City of Florissant—Not Only Its Municipal Court Judges—Committed the Constitutional Violations Alleged.

The City's only argument that Plaintiffs have not stated a claim for *Monell* liability is that "the municipal court is neither a municipal actor, nor a policymaker." Def.'s Mem. (Doc. 23) at 12. But Plaintiffs do not allege that the municipal court is a policymaker. Rather, Plaintiffs have properly alleged that (1) the City, through its various employees, has a widespread, persistent pattern of unconstitutionally arresting individuals on failure to appear warrants and jailing them without any inquiry into their ability to pay; (2) City officials are either deliberately indifferent to this practice or have tacitly authorized it by doing nothing to ensure individuals are not jailed unconstitutionally; and (3) Plaintiffs—who were themselves arrested, jailed, and forced to pay fines and fees they could not afford—were directly injured by the City's custom and practice. *Corwin*, 829 F.3d at 700 (listing these requirements for showing a municipality's unofficial custom or practice). Regardless of whether municipal court judges are the City's "final policymakers," their actions can contribute to "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct." *Corwin*, 829 F.3d at 700. And the City's official policymakers' actual or constructive knowledge of that persistent pattern can be inferred from open and longstanding practice. *See, e.g., Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (plaintiffs can establish municipal liability by showing official policymakers' "acquiescence in a longstanding practice or custom which constitutes the [municipality's] 'standard operating procedure'") (internal quotations omitted); *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (same).

Plaintiffs do not have to show, as the City argues, that the municipal judges themselves have final policymaking authority on the relevant matters. *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998) ("A plaintiff may establish municipal liability under § 1983 by proving that

his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive *among non-policymaking employees* of the municipality 'as to constitute a "custom or usage" with the force of law'") (emphasis added).[2]

The City has significant authority to supervise the municipal court and its judge, to pay the municipal court judge's and other court employees' salaries, and to control the municipal court's practices through municipal ordinances and executive control.[3] As such, the failure of the City to prevent the municipal court judge's open and longstanding unconstitutional practices amounts to "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).[4] Put differently, to the extent Defendant is not directly responsible for the constitutional violations alleged in the Amended Complaint (as described in Part II.B, *infra*), Defendant has acquiesced in such practices perpetrated by their municipal court judge. This acquiescence creates a separate and independent basis for finding municipal liability in this case.

Plaintiffs have properly alleged that the municipal court judge's actions reflect and contribute to a custom or practice that is attributable to the City, and for which the City is liable. *See Praprotnik*, 485 U.S. at 127 ("[E]gregious attempts by local governments to insulate themselves from liability for unconstitutional policies are precluded by a separate doctrine.

---

[2] *See also Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 817 (7th Cir. 2001); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Avery v. Burke Cnty.*, 660 F.2d 111, 114 (4th Cir. 1981); *and Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980).

[3] R.S.Mo. § 479.060.

[4] *cf. Coleman v. Watt*, 40 F.3d 255, 262 (8th Cir. 1994) ("We need not decide whether a municipal court judge acts as an official policymaker for the City of Little Rock because Coleman has alleged that both the City and its chief of police 'adopted' Judge Watt's general order as an official policy governing the conduct of the Little Rock Police Department.").

Relying on the language of §1983, the Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by express municipal policy is so permanent and well settled as to constitute a custom or usage with the force of law") (internal quotation marks omitted); *see also* Am. Compl. (Doc. 16) ¶¶ 35, 97, 131-132, 143.

Finally, Plaintiffs have pleaded facts for each count that "raise a reasonable expectation that discovery will reveal evidence to support their claim of municipal liability under § 1983." *Ferguson II*, 2016 WL 6696065 at *6 (a complaint "replete with allegations that each of the injuries alleged was caused by the City's own unconstitutional policies and by the continuing and pervasive unconstitutional practices of a wide range of City employees" was sufficient to survive a motion to dismiss and proceed to discovery); *see also Johnson v. City of Philadelphia*, No. 13-cv-02963, 2013 WL 4014565, at *3 (E.D. Pa. Aug. 7, 2013) (noting "fact-sensitive issues" like erroneous warrants in municipal liability case could be addressed in subsequent proceedings after proper discovery).

### 1.    Count I: Imprisonment for Inability to Pay.

Defendant contends that Count I should be dismissed because "the setting of fines and bonds were within the powers of the municipal judge operating the municipal court as a division of the St. Louis County, Missouri, Circuit Court." Def.'s Mem. (Doc. 23) at 17. Defendant's argument fails for at least two reasons.

First, Defendant again ignores key allegations in the Amended Complaint. Plaintiffs have alleged that the *Defendant City of Florissant*, not the judge alone, collected debts from money judgments by arresting and incarcerating people for failure to pay unless and until the arrestees paid off their debts to the Defendants. *See, e.g.*, Am. Compl. (Doc. 16) ¶¶ 1, 2. From the very first paragraphs, the Amended Complaint alleges that the Defendant City of Florissant's

"officials and employees—through their conduct, decisions, training and lack of training, rules, profit from low-income, predominantly minority drivers." *Id.* ¶ 7. The Amended Complaint implicates many different municipal employees and officials in every aspect of this scheme:

- municipal court clerks, city clerks, and the municipal prosecutor have instructed court attendees that failure to pay a fine or other costs will result in jail time (*id.* ¶¶ 143);

- police officers have issued citations for supposed traffic and municipal code violations, and stopped and arrested people for "Failure to Pay" and "Failure to Appear" warrants arising from alleged nonpayment of old debts (*id.* ¶¶ 10, 21, 23, 41, 42, 64, 69-70); and

- police and jail officers and court clerks have negotiated payments from inmates and their families using the threat of continued imprisonment (*id.* ¶¶ 12, 42, 71, 113-117, 143, 157).

By no means does the Amended Complaint charge the municipal judge with a decisive role in the decisions to arrest and incarcerate indigent persons for their inability to pay a debt. To the contrary, a central problem with the City's scheme is that it takes place largely outside of and evades any legitimate judicial process. *See, e.g.*, *id.* ¶¶ 22, 42, 62 (alleging that Plaintiffs were never brought before a judge while in custody). For example, Plaintiffs allege that Defendant's jailors and police departments themselves have used the coercive powers of arrest and detention to "negotiate" for payments to the Defendant Municipalities for purposes of enhancing municipal revenues. *Id*. ¶¶ 12, 42, 71, 113-117, 143, 157. The Amended Complaint lodges the responsibility for the relevant decisions about wealth-based detention and post-arrest procedure primarily with Defendant's officers and clerks, disconnected from any formal judicial proceeding.

Second, Count I, like each of the other Counts, describes Defendant's use of municipal court and jail to collect revenue as part of a larger rent-seeking municipal scheme. *See, e.g.*, *id.* ¶¶ 104; 105 109. This scheme penetrates every aspect of Defendant's law enforcement

operations, and officials of Defendant City of Florissant have openly implemented it every day.[5] The allegations in the Amended Complaint are more than sufficient to "draw an inference" that the unlawful scheme "resulted from an unconstitutional policy or custom" attributable to the Defendant City of Florissant (and not just to the municipal court judge). *See Crumpley-Patterson*, 388 F.3d at 591.

## 2. Count II: Failure to Provide Adequate Counsel

The City next argues that it is immune from suit for failure to provide adequate defense counsel to indigent defendants because appointing counsel is the responsibility of the municipal court judge. Def.'s Mem. (Doc. 23) at 19-20. This argument fails for the same reasons stated above. In particular, Plaintiffs have alleged a deliberate and coordinated municipal scheme designed to jail people without any legal process—and without access to adequate counsel—in violation of the Constitution. Am. Compl. (Doc. 16) ¶¶ 10, 134-135, 154, 176.

The City has tried to recast Plaintiffs' allegations about its widespread custom and practice as allegations against the Municipal Court by focusing on particular judicial decisions made by the municipal court judge and subject to judicial review in state court. But the City is responsible—independent of the municipal court/judge's conduct—to create and fund a system

---

[5] The Amended Complaint also directly establishes the link between the unlawful practices and unconstitutional policies by alleging: (1) City employees and officials knew about and were complicit in issuing warrants because of nonpayment of debts (Am. Compl. (Doc. 16) ¶¶ 135-136); (2) City employees and officials knew about and were complicit in holding arrestees in jail not until a court appearance, but until jail officials could coerce them to make additional payments (*id.* ¶¶ 12, 42, 71, 113-117, 143, 157); and (3) City employees and officials knew about and were complicit in releasing those arrestees without any formal judicial process, at such time as the police and jail staff saw fit, *id.* Defendant, through its prosecutors, police department, jail officers, and other municipal officials, sustained this scheme and reaped those benefits for years. Am. Compl. (Doc. 16) ¶¶ 10, 12, 21, 23, 41, 42, 64, 69-71, 113-117, 143, 157. And the money extracted from arrestees through this scheme went directly into Defendant's coffers. *See* R.S.Mo. § 470.080.

that provides counsel for indigent defendants in the proceedings the City initiates against them. Florissant fails to provide counsel at two critical points: First, through its city attorneys and prosecutors and in its own name, the City brings actions against Plaintiffs in the municipal court, wherein the City refuses to provide indigent defendants with counsel despite the potential of incarceration. Am. Compl. (Doc. 16) ¶ 134. Those prosecutions have resulted in people being jailed by the City's police officers in the City's jails. *Id.* ¶¶ 23, 41, 64, 71. Second, the City— through its police department and jail—has incarcerated Plaintiffs repeatedly for nonpayment of monetary debts without bringing Plaintiffs before a municipal court judge or providing them with counsel. Am. Compl. (Doc. 16) ¶¶ 10, 21, 23, 41, 42, 64, 69-70.

The City's argument that it is not responsible for failing to provide counsel to individuals facing confinement in the City's jail, for violations of the City's municipal laws, prosecuted in the City's municipal court, by the City's prosecutors and on behalf of the City ignores every foundational principle of municipal liability. *See, e.g.*, *Wilbur v. Cities of Mount Vernon*, 989 F. Supp. 2d 1122, 1132-33 (W.D. Wash. 2013) (holding cities liable for deprivations of plaintiffs' right to effective assistance of counsel caused by public defenders' case management practices); *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 612-13 (6th Cir. 2007) (holding that county public defender office acted under color of state law for purposes of municipal liability under § 1983 in maintaining a policy or custom of failing to seek indigency hearings on behalf of defendants facing jail for non-payment of fines); *Clay v. Friedman*, 541 F. Supp. 500, 502, 505-06 (N.D. Ill. 1982) (holding county potentially liable for policies or customs that may have caused constitutionally harmful administrative decisions by public defender).

### 3.       Count III: Indefinite and Arbitrary Detention

Count III alleges the City held Plaintiffs in its jail indefinitely because they could not

afford old debt from minor tickets. Plaintiffs allege they were jailed without appearing before a municipal court judge. Thus their detention has nothing to do with decisions of municipal court judges. And challenging that detention as a violation of their due process rights has nothing to do with a judge's right to set bail to secure a defendant's appearance. Def.'s Mem. (Doc. 23) at 17. Indeed ensuring a defendant's return to court should be a *judge's* reason for setting bail. But it was not the Florissant *jail officers'* reason for holding Plaintiffs until they paid enough money, or for attempting to collect cash bond from arrestees or their families for several days, or for unilaterally deciding to release them without payment. Am. Compl. (Doc. 16) ¶¶ 11, 12, 42, 75, 104, 109, 113-117.[6]

The Amended Complaint further alleges that officials and employees at every level of Florissant's government knew the City was misappropriating the cash bond system for purposes not recognized under Missouri law. Am. Compl. (Doc. 16) ¶¶ 105, 109, 113-117.

The Amended Complaint thus does not argue the municipal court is solely responsible for this system. On the contrary it alleges that the system resulted in part from a lack of proper judicial process. Plaintiffs have therefore properly alleged Count III against the City.

---

[6] Federal courts across the country have condemned and enjoined the practice of requiring the payment of money bond without first inquiring whether the person is able to pay the amount set (even when the municipalities were not allegedly using their bail scheme as a cash cow). *See, e.g., Walker v. City of Calhoun*, No. 4:15-CV-0170-HLM, 2016 WL 361612 (N.D. Ga. Jan. 28, 2016) (class-wide preliminary injunction against use of money bond to detain new arrestees without inquiring into ability to pay); *Rodriguez v. Providence Cmty. Corr., Inc.*, No. 3:15-CV-01048, 2015 WL 9239821, at *7-8 (M.D. Tenn. Dec. 17, 2015) (enjoining county from keeping misdemeanor probation arrestees in jail without an inquiry into their ability to pay the monetary bonds set); *Cooper v. City of Dothan*, 2015 WL 10013003 (M.D. Ala. 2015) (Temporary Restraining Order against using secured money bond without inquiring into ability to pay; *Jones v. City of Clanton*, 2015 WL 5387219 (M.D. Ala. 2015) (declaring secured money bond unconstitutional without an inquiry into ability to pay); *Thompson v. City of Moss Point*, 2015 WL 10322003 (S.D. Miss. 2015) (same); *Pierce et al. v. City of Velda City*, 2015 WL 10013006 (E.D. Mo. 2015) (same).

### 4. Count V: Threats of Incarceration to Collect Debts

Count V concerns the entire architecture of the Defendant's practice—developed by municipal officials and supervised and executed by Defendant's prosecutors—of seeking warrants and using the Defendants' police and jail systems to collect old debts stemming from closed municipal court cases. Plaintiffs allege that Defendant chose to exert its control over its police and jail functions to collect money judgments in a way not authorized for private creditors.

Defendant cites Missouri statutes and supreme court rules that authorize judges to assess and enforce fines to argue that detaining individuals without process in order to collect debts from them "cannot be attributed" to the City under *Monell*." Def.'s Mem. (Doc. 23) at 25.

As discussed Part II.B.3 *supra* the City arrested Plaintiffs on failure to appear warrants, and then held them in the jail *without* any process before a municipal court judge. Thus the challenged incarceration and bond was not the result of a municipal court's authorized decision making, but rather the City's unrestricted practice of extorting payments from indigent individuals through its jail officers. Defendant's efforts to redraft this claim into one focused solely on municipal judges fail for all of the reasons discussed above and the Court should not dismiss Count V.

### 5. Count VI: Issuance of Invalid Warrants

In Count VI Plaintiffs alleged the City's practice and execution of warrants violated their Fourth and Fourteenth Amendments rights.

An official violates the Fourth Amendment whenever he obtains a warrant on the basis of false or reckless assertions, or information, so lacking in probable cause, that no reasonable person would have believed it to be valid. *United States v. Leon*, 468 U.S. 897, 923 (1984);

*Malley v. Briggs*, 475 U.S. 335, 346 (1986). A municipality is liable for those Fourth

Amendment violations if they are made pursuant to a custom, pattern of conduct, or practice that

invalidates the issuance and execution of warrants across-the-board. *Monell*, 436 U.S. at 691.

The Amended Complaint contains numerous allegations that a wide range of City

Officials have sought and executed warrants that are based solely on non-payment of civil

judgment debt; even though the City prosecutors refer to them as "failure to appear" warrants.

Plaintiffs have also alleged these warrants are issued and executed without the constitutionally-

mandated inquiry into an individual's ability to satisfy the civil judgment. Am. Compl. (Doc. 16)

¶¶ 10, 21, 23, 41, 42, 64, 69-70. Defendant has also routinely issued arrest warrants for "failure

to pay" or "failure to appear" where they are entirely unjustified. *Id*. ¶¶ 24, 98, 99.

Defendant incorrectly glosses *Ledbetter v. City of Topeka*, 318 F.3d 1183 (10th Cir.

2003) as standing for the proposition that municipalities are never liable for invalidly issued

warrants. Def.'s Mot. (Doc. 23) at 25-36. In *Ledbetter* the Tenth Circuit rejected a pro se

plaintiff's argument that the city was responsible for the actions of a single judge who routinely

rubber stamped arrest warrants. *Ledbetter*, 318 F.3d at 1189. Municipal liability for a widespread

custom and practice like the one Plaintiffs have alleged here is *not* the same as municipal liability

under a theory of *respondeat superior*. In other words, the City cannot generally be held liable

for the unconstitutional acts of a single officer; particularly not where, as in *Ledbetter*, that

officer is actually a state official. Had Plaintiffs alleged that Florissant was liable for the warrant

stamping practice of a single judge *Ledbetter* would be persuasive authority. But as discussed in

Part II.B, *supra* Plaintiffs have alleged a widespread custom and practice. Nowhere in the

Amended Complaint have Plaintiffs alleged the city is vicariously liable for unconstitutional

conduct by an individual judge, or even the municipal court acting alone. In fact the Amended

Complaint makes clear no judge or magistrate even approves the "failure to appear" warrants before they are issued. The process is robotic: a computer generates the warrants automatically. Am. Compl. (Doc. 16) ¶ 36.

Even if the City's involvement in the warrant process is disputed the Court should allow Plaintiffs to proceed to additional discovery on this issue. *See Johnson*, 2013 WL 4014565, at *3 ("[W]hile the extent of the City's involvement in the warrant process may be disputed, and whether its procedures, or lack thereof, for preventing the issue of erroneous warrants may be challenged, those are fact-sensitive issues that can be addressed in later proceedings."). The Court should thus deny Defendants' motions to dismiss Count VI.

6.      **Count VII: Extended Detention Without Neutral Finding of Probable Cause.**

Defendant's arguments for dismissing Count VII, (Def.'s Mem. (Doc. 23) at 26-27), are based on their same, flawed reading of *Ledbetter* fail for the reasons stated in Part II.B.5, *supra*. Again, Plaintiffs allege violations of the Fourth and Fourteenth Amendments based on the City's policies and practices regarding the extended detention without a neutral finding of probable cause. These allegations are against the City, not a municipal court judge. The Court should deny Defendants' motions to dismiss Count VII.

C.      **Plaintiffs' Allegations Regarding Punitive Conditions of Confinement State a Claim for Constitutional Violations.**

Plaintiffs have alleged that Florissant detained them in county jails for indeterminate periods of time and conditioned their release on repayment of bonds and fees. Because Plaintiffs were not held in jail after an adjudication, their conditions of confinement must conform to the requirements of the due process clause of the Fourteenth Amendment: specifically, the conditions cannot be punitive. *Green v. Baron*, 879 F.2d 305, 309 (8th Cir. 1989) ("Unlike

convicted inmates, pretrial detainees [in jails] cannot be punished. The due process clause forbids it"); *Davis v. Dorsey*, 167 F.3d 411, 412 (8th Cir. 1999) (reversing the District Court's grant of summary judgment to the St. Louis County jail because construing facts in the light most favorable to the Plaintiff could lead to an inference of an intent to punish Plaintiff); *Boswell v. Sherburne Cnty.*, 849 F.2d 1117, 1120 (8th Cir. 1988) ("Pretrial detainees have not received a formal adjudication of the charges against them and as such are beyond the power of the state to punish"); *Owens v. Scott Cnty. Jail*, F.3d 1026, 1027 (8th Cir. 2003) (noting question of whether jail's conditions were unconstitutional depended on whether they constituted punishment).

Plaintiffs have successfully plead punitive conditions in the Amended Complaint by alleging Florissant deprived jailed civil judgment debtors of basic hygienic necessities, medical and mental health care, adequate food, water, and housed them in overcrowded cells with walls and toilets covered in blood, mucus, and feces. *Cf. Davis*, 167 F.3d at 412 (jail's refusal to provide Plaintiff with the medical treatment he requested including medication created an inference of an intent to punish him) (citing *Green v. Baron*, 879 F.2d 305, 309 (8th Cir.1989) (jury may infer intent to punish if deprivations were not reasonably related to legitimate governmental purpose); *see also Session v. Clements*, No. 14-CV-02406-PAB-KLM, 2016 WL 814715, at *2 (D. Colo. Mar. 1, 2016) (inferring intent to punish).

Not only do these alleged conditions give rise to an *inference* of an intent to punish Plaintiffs, Plaintiffs have also specifically alleged that jail officials told them they would not turn on the heat during a twenty-eight degree day in November because they wanted prisoners to be so uncomfortable they would pay up to leave. *See* Am. Compl. (Doc. 16) ¶ 39.

Defendant's only argument that Plaintiffs have failed to allege punitive conditions is that their exposure to these conditions did not last long enough. Def.'s Mot. (Doc. 23) at 27 (citing

*Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013)). The duration of the harm is a factual determination that is not appropriate for adjudication at the motion to dismiss stage. *See id.* And *Stickley* only supports a rule that *unsanitary conditions* must last for a considerable period of time before they rise to the level of unconstitutional. 703 F.3d at 423. Neither *Stickley*, nor Defendant's argument that Plaintiffs have plead insufficient facts to show the jail conditions were punitive, addresses Plaintiffs' allegations in the Amended Complaint that go *beyond* just unsanitary conditions.

Unlike the sole allegation of unconstitutional conditions of confinement in *Stickley* (deprivation of toilet paper), 703 F.3d at 422-23, Plaintiffs here alleged the City denied them and deprived them of hygiene materials including toothbrush, toothpaste, soap, deodorant, and showers (Am. Compl. (Doc. 16) ¶ 4); adequate food (*id.* ¶ 4); drinkable water (*id.* ¶ 29); medical care, such as untreated infected Staph infection wounds no products for menstruation; denial of prescription medication; refusal to take a car accident victim to the hospital; and failure to treat extreme drug withdrawal symptoms, including those experienced by a confined pregnant woman (*id.* ¶¶ 4, 10, 13, 14, 15, 18, 31, 48, 54, 60, 73); and mental health care including denial of plaintiff's depression and anxiety medication (*id.* ¶ 27). Plaintiffs also complained of cell overcrowding (*id.* ¶¶ 13, 30, 48) and uninhabitable cell conditions (e.g. walls and toilets covered with blood and mucus and feces) (*id.* ¶¶ 32, 76, 137).

Taken together, Plaintiffs' allegations—that they languished without adequate food, water, and healthcare; in the City's overcrowded, filthy cells; during repeated, indefinite detentions; without any process before a judge; all so the City could extort bond money they could not afford to pay—state a claim at this early pleading stage that the City's jail conditions were wielded as punishment in violation of Plaintiffs' due process rights as pre-trial detainees.

*See Fant v. City of Ferguson*, 107 F. Supp. 3d 1016, 1036 (E.D. Mo. 2015) (denying motion to dismiss similar claims "at this early stage" on similar grounds).

D.      **Plaintiffs Stated a Proper Claim for Relief under the Equal Protection Clause.**

Plaintiffs in this case—indigent municipal defendants who cannot afford the accumulating cost of failure to appear judgments—are civil judgment debtors for whom Florissant's current scheme denies all the protections Missouri law otherwise guarantees to civil judgment debtors unable to afford costs imposed on them. This facially supports an equal protection claim.

When an indigent defendant is charged for nonpayment of a fine or fee he becomes liable for a *civil* judgment. *See State ex rel. Kansas City v. Meyers*, 513 S.W.2d 414, 416 (Mo. 1974) ("Proceedings in municipal courts against persons for violations of city ordinances are civil actions . . ..") (internal citation omitted); *see also City of Dexter v. McClain*, 345 S.W.3d 883 (Mo. App. S.D. 2011) ("[V]iolations of municipal ordinances are civil matters but, because of the quasi-criminal nature of an ordinance, are subject to the criminal standard of proof beyond a reasonable doubt"); *City of Strafford v. Croxdale*, 272 S.W.3d 401, 404 (Mo. App. S.D. 2008) (same); *City of Kansas City v. Oxley*, 579 S.W.2d 113, 114 (Mo. 1979) (same).

That Plaintiffs' civil debt judgments arose from underlying prosecutions for municipal ordinance violations does not distinguish them from other civil judgment debtors. In fact, the Supreme Court has expressly rejected this distinction, which Defendants also attempt to draw between civil judgment debtors and indigent defendants. *See James v. Strange*, 407 U.S. 128, 137 (1972) (holding an indigent criminal defendant forced to reimburse their appointed counsel was liable for a civil debt and thus similarly situated to any other civil judgment debtor).

In *James v. Strange*, 407 U.S. 128 (1972), the Supreme Court struck down a Kansas' recoupment law, which the state used to debt collect from indigent defendants to cover the cost of their appointed counsel. In finding this debt-collection scheme violated indigent defendants equal protection rights, the Court noted that Kansas state law protected all *other* civil judgment debtors from wage garnishment that exceeded twenty-five percent of their weekly disposable earnings. *Strange*, 407 U.S. at 136. Kansas, the Court noted, was wielding its governmental status to impose stringent debt-collection methods that would not be available to private creditors. *Id.* at 139. And while the Court acknowledged that the State may in some instances have special claims to reimbursement that justified different treatment of debtors than claims by private creditors, a State could still not "impose unduly harsh or discriminatory terms merely *because* the obligation [was] to the public treasury" and not a private creditor." *Id.* at 138.

The Court concluded that denying this group of "once criminally accused" civil judgment debtors the same protection from wage garnishment received by other civil judgment debtors "risk[ed] denying him the means needed to keep himself and his family afloat." *Id.* at 136.

Florissant's unlawful municipal revenue-generation scheme imposes exactly this type of burden on Plaintiffs and others similarly situated. Plaintiffs' Amended Complaint describes the draconian features of this system that a private creditor could never impose, including jail, threats of jail, repeated monthly court appearances for years, extra fees and surcharges, suspended drivers' licenses, reset debts after missed appearances, ignored exemptions, and more. Under *Strange*, Defendants cannot collect debts from the Plaintiffs in a manner so wildly out of line with the limits state law imposes on the collection of judgments from other debtors. The Equal Protection Clause requires "more even treatment of indigent criminal defendants with other classes of debtors." *Strange*, 407 U.S. at 141. The Supreme Court was unequivocal that

"[s]tate recoupment laws, notwithstanding the state interests they may serve, need not blight in such discriminatory fashion the hopes of indigents for self-sufficiency and self-respect." *Id.* at 141-42. The Kansas statute, the Court found, "embodies elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law." *Id.*; *see also, e.g.*, *Fuller v. Oregon*, 417 U.S. 40, 47 (1974) (upholding Oregon scheme when "[t]he convicted person from whom recoupment is sought thus retains all the exemptions accorded other judgment debtors, in addition to the opportunity to show at any time that recovery of the costs of his legal defense will impose 'manifest hardship'"); *Olson v. James*, 603 F.2d 150, 154 (10th Cir. 1979) ("[T]he Court held that indigent defendants were entitled to evenhanded treatment in relationship to other classes of debtors."); *United States v. Bracewell*, 569 F.2d 1194, 1198-1200 (2d Cir. 1978) (discussing the need for individualized consideration of repayment so as not to require repayment that creates hardship in violation of *Strange* and *Fuller*); *Alexander v. Johnson*, 742 F.2d 117, 124 (4th Cir. 1984) (upholding scheme of payments for appointed counsel costs as long as the indigent defendant is not "exposed to more severe collection practices than the ordinary civil debtor").

Missouri also has a law nearly identical to the anti-garnishment provision in *Strange* that protects civil judgment debtors from excessive wage garnishment, and another that exempts public assistance benefits from attachment and execution. *See* R.S.Mo. § 525.030.1(2)(1) (courts cannot order garnishment of more than 25% of a person's aggregate weekly earnings); *see also* R.S.Mo. § 513.430 (exempting public assistance benefits from attachment and execution). The garnishment protection was modeled after a provision in the federal Consumer Credit Protection Act, 15 U.S.C. § 1673(a), which also states not more than twenty-five percent of that an individual's weekly wages may be garnished to satisfy a civil judgment against him owed to a

third-party judgment creditor. *See Dyche v. Dyche*, 570 S.W.2d 293, 296 (Mo. 1978) (en banc) ("After the enactment in 1968 of the federal Consumer Protection Act containing restrictions on garnishment . . . the legislature of Missouri amended § 525.030, the wage garnishment statute to incorporate the limitations specified in 15 U.S.C. § 1673(a)); *see also In re Parsons*, 437 B.R. 854, 856-57 (Bankr. E.D. Mo. 2010) (noting the Missouri Garnishment Statute should be read to have the same purpose of § 1673(a), which was to "regulate garnishments so that the judgment debtor may still have sufficient resources to support themselves and their family."). Thus, the purpose of the Missouri statutory provision is thus to protect civil judgment debtors' resources so that they are not in the position of being unable to support themselves and dependents. And yet under Defendant's extortionate scheme, a class of similarly situated civil judgment debtors are completely denied this protection. *See* Am. Compl. (Doc. 16) ¶¶ 9, 32, 126, 131, 135, 141, 154.[7]

Moreover, while Missouri law does authorize some means by which money judgments may be collected, it limits them too. The provisions of Missouri law cited above that prevent excessive garnishment of wages are one such example of the substantive limitations Missouri has placed on how a creditor is "authorized" to enforce a money judgment. In other words, Plaintiffs' challenge is against not whether fines or fees "may be collected" in what the Defendants describe as the "criminal realm" (Def.'s Mot. (Doc. 23) at 29), but rather against the repeated practice of jailing individuals with unpaid fines without any inquiry into their actual ability to pay. *Cf.*

---

[7] Defendant cites R.S.Mo. §§ 560.031 and 560.031.1 as examples of Missouri law that provide for the collection of fines and fees for a criminal defendant who defaults on a money judgment against him. *See* Def.'s Mot. (Doc. 23) at 29. But Defendant ignores that those statutes also state a civil judgment "may be collected by any means *authorized* for the enforcement of money judgments" does not and cannot include jailing someone because he cannot afford a fine – which is never an "authorized" means of enforcing money judgments. *Fant v. City of Ferguson*, 107 F. Supp. 3d 1016, 1031 (E.D. Mo. 2015) (citing *Tate v. Short*, 401 U.S. at 400-01 and *Bearden v. Georgia*, 461 U.S. at 674).

*Fuller v. Oregon*, 417 U.S. 40, 46-47 (1974) ("[T]he offending aspect of the Kansas statute [in *Strange*] was its provision . . . which stripped from indigent defendants the array of protective exemptions Kansas has erected for other civil judgment debtors . . ..").

Even if some question remains whether Plaintiffs are similarly situated to other civil judgment debtors protected under Missouri law the court should still deny Defendant's motion to dismiss this count. The Eastern District of Missouri recently granted a motion to reconsider its previous dismissal of an identical claim in *Fant v. Ferguson*, because even though the complaint did not describe plaintiffs' underlying offenses, nor allege that the nature of the fines they were charged were civil, it was a "better practice" to allow Plaintiffs to develop the record on these issues rather than dismiss the claim entirely at such an early stage in the litigation. *Fant v. Ferguson*, No. 4:15–CV–00253, 2015 WL 4232917, *3 (E.D. Mo. July 13, 2015). Here Plaintiffs' Amended Complaint does describe Plaintiffs' underlying offenses (Am. Compl. (Doc. 16) ¶¶ 23, 38, 41, 55, 64, 69), and also alleges that fines they were charged were civil in nature (*id*. ¶¶ 119, 122, n.11, n.13).

Finally, Defendant argues that even if Florissant's extortionate scheme treats Plaintiffs differently from other similarly situated civil judgment debtors it nonetheless satisfies rational basis review. *See* Def.'s Mot. (Doc. 23) at 29 (citing *U.S. v. Cunningham*, 866 F. Supp. 2d 1050, 1058 (S.D. Iowa 2012)). But *Cunningham* states only that ordering *criminal* judgment debtors to pay restitution was rationally related to a legitimate governmental interest in making victims whole and punishing criminals. *Cunningham*, 866 F. Supp. 2d at 1058 (distinguishing between the *civil* judgments for appointed counsel's fees in *Strange,* and restitution, which was a part of a criminal defendant's sentence and thus a *criminal* judgment). As stated above, a municipal court violation is not a criminal offense. A municipal court fine is a civil debt. Moreover,

notwithstanding this distinction, *Cunningham* does not and cannot support the proposition that a convicted criminal defendant (let alone a civil debtor) may be imprisoned because of their inability to pay a monetary punishment (let alone a civil debt). *See Tate v. Short*, 401 U.S. at 400-01; *Bearden v. Georgia*, 461 U.S. at 674.

Plaintiffs have thus sufficiently alleged they are similarly situated to other civil judgment debtors. By claiming Florissant has jailed them for unpaid civil judgments and then demanded large bond amounts without inquiring about their ability to pay - even though Missouri law specifically protects civil judgment debtors' income from excessive garnishment - Florissant has violated plaintiffs equal protection rights.

**III.     Plaintiffs are Entitled to Injunctive Relief.**

The City argues that Plaintiffs lack sufficient constitutional and prudential standing for injunctive relief, and failed to sufficiently allege the elements required for such relief. Def.'s Mot. (Doc. 23) at 31-49. In so doing, the City ignores the universe of §1983 case law finding that plaintiffs have established standing at early stages of litigation by alleging the challenged conduct was taken pursuant to a practice or custom.

**A.     Plaintiffs Alleged Sufficient Facts Demonstrating Constitutional Standing.**

Plaintiffs have suffered an injury in fact caused by Florissant's practice or custom that this Court could redress by enjoining the City from continuing to arrest individuals on failure to appear warrants, imprison them without process, and then extort them for civil judgment debts they cannot afford. *See Park v. Forest Service of U.S.* 205 F.3d 1034, 1037 (8th Cir. 2000) (listing the three standing requirements).

**i.     Injury in Fact**

Defendant argues that Plaintiffs have not shown they suffered an injury in fact and thus

cannot show that it was caused by the City's custom and practice, or that it could be redressed with an injunction. Def.'s Mot. (Doc. 23) at 34-37.

Plaintiffs have shown a concrete, actual, and imminent injury in fact by alleging: 1) the City has jailed them repeatedly because they cannot afford the fines and fees that have accumulated against them; 2) that action was taken pursuant to City custom, policy, and practice; and 3) because that action was taken pursuant to a City custom, and because the class is composed of individuals who cannot afford to pay the outstanding debts assessed against them, any future interaction with the police by any member of the class, has a substantial likelihood of resulting in their arrest and jailing without consideration of ability to pay. Am. Compl. (Doc. 16) ¶¶ 10, 12, 21, 23, 41, 42, 64, 69-71, 113-117, 143, 157.

Plaintiffs have alleged a municipal policy has deprived them—and because it is an ongoing policy will continue to deprive them—their constitutional rights. *See Church v. City of Huntsville*, 30 F.3d 1332, 1338-39 (11th Cir. 1994) (class of homeless individuals had standing to seek injunction in §1983 action against the city's policy and practice of harassment, arrest, and detention to relocate and remove them); *Armstrong v. Davis*, 275 F.3d 849, 861-62 (9th Cir. 2001) (finding plaintiff class had established harm was likely to recur and thus an injury in fact exists by alleging it was "traceable" to both a written policy and part of a pattern of "officially sanctioned conduct" that violated plaintiff's federal rights); *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 342, 344-45 (2d Cir. 1998) (class of children arrested on delinquency charges had standing to sue the Family Court Detective Squad under §1983 for a policy and pattern of using coercive interrogation techniques that elicited involuntary Miranda waivers and involved questioning without counsel); *cf. Does I Through III v. District of Columbia*, 216 F.R.D 5, 11

(D.D.C. 2003) (finding plaintiff class did not have standing where the challenged action did not occur pursuant to a current policy).

These foregoing pattern, policy, and practice cases distinguished their facts from *City of Los Angeles v. Lyons* 461 U.S. 95 (1983), the case on which Defendant stakes its argument against standing. Def.'s Mot. (Doc. 23) at 35. The *Lyons* Plaintiff brought suit challenging the Los Angeles police department's "policy" of using excessive force during routine traffic stops after he was put in a chokehold by an officer during a traffic stop. 461 U.S. at 95. The Court found that this single, past injury did not by itself establish a case or controversy that would justify granting an injunction because the plaintiff had not shown any real and immediate threat that he would be stopped for a traffic violation and illegally choked again. *Id.* at 108 ("[I]t is no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen the police will … inflict injury without provocation."). *Lyons* itself even notes that the plaintiff would have established standing had he alleged that either "*all* police officers in Los Angeles *always* choke any citizen with who they happen to have an encounter" *or* that "the City ordered or authorized police officers to act in such a manner." *Lyons*, 461 U.S. at 106 (emphasis in original).

Unlike in *Lyons,* Plaintiffs here do not allege a one-time abuse by a few individual officers. Instead Plaintiffs properly allege an ongoing policy of the municipality as a whole, like those for whom the post-*Lyons* Circuits found to establish standing. *Cf. City of Huntsville*, 30 F.3d at 1338-39 (distinguishing an alleged policy that did authorize the challenged conduct from the policy in *Lyons* that did *not* authorize the challenged conduct).

Moreover, unlike the criminal defendant plaintiffs in *Lyons* who could avoid future "exposure to the challenged course of conduct" (racially discriminatory bond proceedings, trials,

or sentencing) simply by not breaking the criminal law, 414 U.S. at 496, Plaintiffs' involuntary indigence here subjects them to arrest, re-arrest, and incarceration based solely on their inability—not their unwillingness—to pay the fines and fees. *Cf. City of Hunstville*, 30 F.2d at 1338 (distinguishing the involuntarily homeless individuals affected by a city policy from criminal defendants who could prevent their future "exposure to the challenged course of conduct" by not breaking the criminal law); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1041-42 (9th Cir. 1999) (finding subclass of individuals of Latin, Hispanic, or Mexican appearance who drove in certain Arizona counties had standing to seek an injunction against Border Patrol's pattern and practice of making stops without articulable suspicion).

### ii. Plaintiffs' Injuries are Directly Traceable to Florissant's Conduct and are Redressable through an Injunction.

As discussed in Part II.A-B, *supra*, Plaintiffs allege the City has a policy and custom of using arrest and incarceration to extort unpaid municipal civil judgments. By pleading that the debtor's prison scheme by which Plaintiffs have been injured derives from an official City-wide policy or unofficial City-wide custom, Plaintiffs have properly alleged that it is directly attributable to the Defendant municipality. *Los Angeles Cty., Cal. v. Humphries,* 562 U.S. 29, 39, 131 S. Ct. 447, 453–54, 178 L. Ed. 2d 460 (2010) ("*Monell'*s policy or custom requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective") (internal quotation marks omitted); *see also MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 596 (S.D.N.Y. 2011) ("So long as the plaintiff has proved municipal liability under *Monell*, it is within the power and discretion of the court to remedy the constitutional deprivation by awarding monetary damages or equitable relief or both, depending on its assessment of what the particularities of the case require").

An injunction ordering the City to stop arresting and jailing individuals who cannot afford the mountain of the City's own fines and fees they find themselves under will redress Plaintiffs' injuries. This is evidenced in recent history when the City of Ferguson—mere miles away from Florissant—entered into a Consent Decree with the Department of Justice. *See Ferguson II*, 2016 WL 6696065 at *8. Florissant's absurd assertion that it otherwise is constitutionally and statutorily powerless to change its own practices (Def.'s Mot. (Doc. 23) at 41) is an irresponsible and flippant ploy that absolve the City from redressing Plaintiffs' and the putative class members' harms.

**B.     Plaintiffs Meet Prudential Standing Requirements because their Grievances with the City are Based on Specific, Repeated Events.**

Plaintiffs have alleged a grievance common to a class of similarly situated indigent civil judgment debtors, not a "generalized" one. A generalized grievance that fails prudential standing requirements is one that is "common to all members of the public." *United States v. Richardson*, 418 U.S. 166, 177 (1974). The same cannot be said of Plaintiffs' allegations here that detail specific, personal, repeated experiences with City law enforcement, courts, and jail officials, and which assert Plaintiffs individual rights and interests. *See* Am. Compl. (Doc. 16) ¶¶ 20-101.

As discussed Part II.A-B, *supra*, this injury is ongoing because there is a substantial likelihood any one of the Plaintiffs who cannot afford the fines and fees assessed against them—which they have alleged they still owe (Am. Compl. (Doc. 16) ¶ 99)—could be stopped by police, arrested, and imprisoned as a result of their inability to pay.

**C.     Plaintiffs' Claims are Ripe for Adjudication.**

Defendant asserts that Plaintiffs' claims for equitable relief are not ripe because they turn on "contingent future events that may not occur as anticipated." Def.'s Mot. (Doc. 23) at 43. This argument is similarly off-base. In order for a case to be ripe, it must have a claim of a "specific

present objective harm" or "threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972). As discussed above, Plaintiffs have alleged a pervasive, long-standing municipal-revenue generation scheme that has directly injured Plaintiffs in the past and is overwhelmingly likely to injure them in the future absent relief from this Court. As such, Defendants' half-hearted suggestion that this case is not ripe is meritless.

## IV.    Defendant Prematurely Contends that Plaintiffs Have Not Satisfied the Elements for a Permanent Injunction.

Defendant contends that Plaintiffs have not satisfied the requirements for a permanent injunction. Def.'s Mot. (Doc. 23) at 44-49. Injunctive relief is a remedy, not a cause of action. *See, e.g.*, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) ("It goes without saying that an injunction is an equitable *remedy*") (emphasis added). As the Court held in the *Ferguson* case, it is premature at the motion to dismiss stage to address whether a permanent injunction is appropriate. *Ferguson I*, 107 F. Supp. 3d at 1038 ("Whether Plaintiffs can demonstrate that the factors governing injunctive relief weigh in their favor may be determined at a later stage."); *see also Webb v. Exxon Mobil Corp.*, No. 4:13-cv-00232, 2013 WL 11374518, at *1 (E.D. Ark. Oct. 31, 2013) ("The motion to dismiss as to the remedy of specific performance is denied because, whether a plaintiff obtains equitable relief is left to the discretion of the court after the verdict has been rendered. Consequently, this is an argument that should be taken up if plaintiffs are successful at trial.").

As described in Part II.A-B, *supra*, Plaintiffs have established standing to obtain injunctive relief by pleading that they still owe debts to the Defendant and are still subject to the Defendant's continuing unconstitutional debt-collection and post-arrest policies and procedures. The question whether a permanent injunction is an appropriate remedy in this case will be determined after a trial on the merits and is premature at the motion to dismiss stage.

**V.      Granting Plaintiffs' Injunctive Relief Does Not Violate Principles of Federalism.**

Finally, Defendant, relying on *Rizzo v. Goode*, 423 U.S. 362 (1976), argues that principles of federalism prohibit Plaintiffs' request for injunctive relief. Def.'s Mot. (Doc. 23) at 49-52. This argument, too, is meritless. In *Rizzo*, the Supreme Court found that a novel claim for preventative, generalized relief implicated federalism concerns. But here, Plaintiffs do not assert a general right held by the citizenry, and seek preventative injunctive relief to ensure those general rights are protected; they assert their own constitutional rights and simply seek an injunction to enjoin Defendant from violating specific constitutional rights and the constitutional rights of others similarly situated. Am. Compl. (Doc. 16), Request for Relief, at 50-51. This type of preventative injunction does not implicate federalism concerns. In *Lyons*, for example, the Supreme Court found that a proposed injunction prohibiting use of "chokeholds" in certain situations did not implicate federalism concerns. In so holding, the Court explained that "[t]his limited ban takes the form of a preventive injunction, which has traditionally been regarded as the least intrusive form of equitable relief" and as such "simply does not implicate the federalism concerns." 461 U.S. at 132-33. The same is true here. Accordingly, Plaintiff's well-established right to equitable relief does not implicate the federalism concerns raised in *Rizzo*.

**VI.      The Plaintiffs Properly Seek Declaratory Relief.**

Similarly, Defendant argues that Plaintiffs are not entitled to declaratory relief. The City presents two arguments against Plaintiffs' request for declaratory relief, both of which are meritless. Def.'s Mem. (Doc. 23) at 30.

First, Defendant asserts that the Amended Complaint does not present an Article III case or controversy as the Declaratory Judgment Act requires. *Id*. An Article III case or controversy is "a concrete dispute between parties having adverse legal interests . . .." *Maytag Corp. v. Int'l*

*Union, United Auto., Aerospace & Agricultural Implement Workers of America*, 687 F.3d 1076, 1081 (8th Cir. 2012). The Amended Complaint plainly alleges facts demonstrating that Defendant's past and *ongoing* constitutional violations have caused, and are causing, real harm to specific people. The controversy is substantial, immediate, and real, and the relief requested is concrete and necessary under Article III. *See id*.

Second, Defendant contends that damages actions under 28 U.S.C. § 1983 necessarily subsume declaratory relief, citing *Lyons* and *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005). Def.'s Mem. (Doc. 23) at 31. These cases do not aid Defendant. Instead, they merely hold that the inquiries for damages and declaratory relief are distinct, and recognize that past harm can grant standing to seek damages, but prospective harm is required for declaratory relief. As described above, however, Plaintiffs do not seek declaratory relief that Defendant's past acts or prior policies *alone* are unlawful and unconstitutional. Rather, Plaintiffs have alleged that they have been and *continue to be* subject to unconstitutional debt-collection and post-arrest policies and procedures carried out by the Defendant. Indeed, Plaintiffs *still owe* debts to the City that the it is currently attempting to collect. *See* Part II.A-B, *supra*. As such, Defendant's arguments are entirely without merit.

## CONCLUSION

Based on the foregoing, Plaintiffs' Amended Complaint readily satisfies the pleading and standing requirements to proceed at this early stage. Furthermore, the Court in the *Ferguson* case considered and rejected virtually all of the arguments Defendant attempts here. Like the *Ferguson* defendant, the City of Florissant simply ignores the allegations of the Amended Complaint that refute the City's meritless contentions. The motion to dismiss should therefore be denied.

Dated: February 19, 2017                    Respectfully submitted,

By:/s/ *Nathaniel R. Carroll*
      Thomas B. Harvey (MBE #61734MO)
      Michael-John Voss (MBE #61742MO)
      Blake A. Strode (MBE #68422MO)
      Nathaniel R. Carroll (MBE #67988MO)
      Edward J. Hall (MBE #0012692IA)
      **ARCHCITY DEFENDERS, INC.**
      1210 Locust Street, 2nd Floor
      Saint Louis, MO 63103
      Tel: (855) 724-2489
      Fax: (314) 925-1307
      tharvey@archcitydefenders.org
      mjvoss@archcitydefenders.org
      bstrode@archcitydefenders.org
      ncarroll@archcitydefenders.org
      ehall@archcitydefenders.org

      Jeffrey Kaliel (*pro hac vice*)
      Lauren Kelleher (*pro hac vice*)
      **TYCKO & ZAVAREEI LLP**
      1828 L Street, N.W., Suite 1000
      Washington, D.C. 20036
      Telephone: (202) 973-0900
      Facsimile: (202) 973-0950
      jkaliel@tzlegal.com
      lkelleher@tzlegal.com

      *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all parties of record will receive notice and a copy

of the foregoing via this Court's electronic filing system on this 19th day of February, 2017.

      /s/ *Nathaniel R. Carroll*