UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS BAKER, et al., | ) |
|     Plaintiffs, | )    Case No. 4:16-CV-1693 NAB |
| v. | ) |
| CITY OF FLORISSANT, | ) |
|     Defendant. | ) |

## **MEMORANDUM AND ORDER**[1]

Plaintiffs in this putative class action claim that they were repeatedly jailed by the City of Florissant (the "City") due to their inability to pay fines, fees and other costs arising from traffic tickets or other minor municipal offenses, without being offered legal representation or any inquiry into their ability to pay. The City has moved to dismiss Plaintiffs' first amended complaint for failure to state a claim, and has also moved for a more definite statement and to strike redundant or immaterial matter, or, in the alternative, that any counts not dismissed or struck be repleaded to comply with Rules 8(a) and 10(b). (Doc. No. 22). For the reasons set forth below, the City's motion shall be denied.

**BACKGROUND**

The named Plaintiffs are all purportedly impoverished Missourians who allege that they have been repeatedly jailed and held indefinitely by the City solely because they could not afford to pay for their release, a practice that they liken to a modern-day debtors' prison. They allege that they were never offered or afforded legal representation or any inquiry into their ability to pay, and were held in overcrowded, unsanitary, uncomfortably cold cells, where they were denied access to warm blankets, clean drinking water, and basic hygiene products such as

---
[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

toothbrushes and soap, that they were forced to wear the same dirty clothes for days without access to laundry, and were denied proper medical care. They filed this action pursuant to 42 U.S.C. § 1983, asserting claims under the Fourth, Sixth, Eighth, and Fourteenth Amendments, and are seeking declaratory, injunctive, and compensatory relief. They seek to represent two declaratory and injunctive classes of "[a]ll persons who currently owe or who will incur debts to the City . . . from fines, fees . . . costs, or surcharges arising from cases prosecuted by the City, as well as "all persons who, either because they owe debts to the City . . . or for any other reason, will . . . [be] subjected to its post-arrest wealth-based detention procedures." (Doc. No. 16 at 37). They also seek to represent two damages classes of "[a]ll persons, whether or not such person has ever been jailed, who have paid any amount to the City . . . to satisfy fines, fees. . . costs, or surcharges . . . and who have not been provided an opportunity to prove indigence," as well as "[a]ll persons who have been jailed by the City . . . for non-payment . . . and who (1) were not provided an opportunity to prove indigence prior to jailing; (2) were not considered a danger to the community by notation in the City's file; and (3) were not designated as a flight risk at the time of jailing."[2] (Doc. No. 16 at 37).

Count One of the amended complaint alleges that the City violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment by jailing Plaintiffs or threatening to imprison them for their inability to pay debts owed from minor offenses, without conducting any inquiry into their ability to pay and without considering alternatives to imprisonment. Plaintiffs allege that "[a]t any moment, a wealthier person in the Plaintiffs' position could have paid a sum of cash and been released from jail," yet Plaintiffs were forced to remain in jail due to the City's

---

[2] Plaintiffs exclude from the above referenced fees all "warrant recall fees", "letter fees", and/or "failure to appear fees," as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165, 21st Judicial Circuit Court (St. Louis Cnty. filed Jan. 2016).

policy and practice of holding them indefinitely until they could pay an "arbitrarily determined and constantly-shifting" sum of money. (Doc. No. 16 at 46).

Count Two alleges that the City violated Plaintiffs' Sixth and Fourteenth Amendment rights by imprisoning them without affording them the benefit of counsel or obtaining their knowing, intelligent, and voluntarily waiver of counsel. Plaintiffs allege that the City has a policy and practice of not informing people of their right to counsel and "not providing . . . counsel in proceedings in which indigent people are ordered to be imprisoned in the City jail for non-payment, which are, in turn, based on payment plans arising from traffic and other violations at which the person was also unrepresented." (Doc. No. 16 at 46-47).

Count Three alleges that the City's use of indefinite and arbitrary detention violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Plaintiffs allege that the City has a policy and practice of jailing indigent persons "indefinitely and without any meaningful legal process through which they can challenge their detention . . . until they could make arbitrarily determined cash payments, or until City employees decided to release them for free." *Id*. at 47. Plaintiffs further allege that the City routinely held persons in jail for indeterminate amounts of time, without setting any future court dates or bringing Plaintiffs to court. *Id*. at 26. Plaintiffs allege that City jail staff have a practice of engaging in informal negotiations with prisoners, making it clear that payment would result in immediate release, and pressuring them to ask friends and family for cash; as it becomes apparent that the person cannot pay the initial cash amount requested, the amount required for release is incrementally reduced, all without resort to any formal court process. *Id*. at 26, 31.

Count Four alleges that the totality of conditions in the Florissant jail "constitute[s] impermissible punishment unrelated to serving any criminal judgment," in violation of the Due Process Clause of the Fourteenth Amendment. *Id*. at 33, 47. Plaintiffs allege that although they

were each held for varying amounts of time during different time periods, they were all exposed to the same "deplorable conditions," including overcrowded, filthy cells,[3] lack of basic hygiene products,[4] lack of access to clean water,[5] uncomfortably cold conditions,[6] denial of medical care, and insufficient food. *Id*. at 2, 9- 13, 15-16, 18, 33.

Count Five alleges that the City's use of jail and threats of jail to collect debts owed to the City violates the Equal Protection Clause because it imposes "unduly harsh and punitive restrictions on debtors whose creditor is the government compared to those who owe money to private creditors." *Id*. at 48. Plaintiffs allege that the City "takes advantage of its control over the machinery of the City jail and police systems to deny debtors the procedural and substantive statutory protections that every other Missouri debtor may invoke against a private creditor." *Id*.

Count Six alleges that the City has a "policy and practice of issuing and serving invalid warrants, including those solely based on nonpayment of monetary debt," in violation of the Fourth and Fourteenth Amendments. *Id*. Plaintiffs allege that the City routinely issues and serves arrest warrants against those who have not paid their traffic debt, and that these warrants are "sought, issued, and served without any finding of probable cause that the person has committed the elements of any offense," and "without any inquiry into the person's ability to pay." *Id*. at 48-49.

---

[3] Plaintiffs allege that cells reeked of visible excrement and the walls were smeared with blood and mucus. (Doc. No. 16 at 32-33).
[4] Plaintiffs allege that inmates were denied toothbrushes, toothpaste, deodorant, and soap, and were forced to wear the same "dirty orange jumpsuits for days and weeks without access to clean laundry or clean undergarments." (Doc. No. 16 at 32).
[5] Plaintiffs allege that inmates suffered from dehydration because the only source of water in the jail cell is a spout connected to a dirty toilet, and the "spout does not produce adequate water pressure to dispense water past the lip of the basin where the water is caught and drains . . . [t]hus, the only way for one to drink water is to press one's lips against the dirty toilet basin, which many inmates are unwilling to do." (Doc. No. 16 at 33).
[6] Plaintiffs allege that they had to "huddle in cold temperatures with a single thin blanket." (Doc. No. 16 at 33). When Plaintiff Sean Bailey arrived at the jail in November, the outside temperature was twenty-eight degrees, the air conditioner was running, and when he and fellow inmates complained of the cold and asked for more blankets, jail officials told them that they would not turn on the heat because they "wanted the jail to be uncomfortable so that inmates would not want to be there and would be motivated to pay their . . . fines." (Doc. No. 16 at 11).

Count Seven alleges that the City's "extended detention of warrantless arrestees without a neutral judicial finding of probable cause" violates the Fourth and Fourteenth Amendments. *Id*. at 49. Plaintiffs allege that the City "routinely fails as a matter of policy and practice to make a neutral finding of probable cause . . . and keeps people in jail for longer than 48 hours without a neutral finding of probable cause based on sworn evidence." *Id*. at 50. Plaintiffs further allege that because the City's policy is to hold people on cash bond and then to eventually release people for free if they cannot pay, these detentions are "unrelated to any legitimate government interest and entirely unconnected from any need to prepare for any . . . hearing because the City does not hold probable cause or preliminary hearings." *Id*. at 50.

Plaintiffs allege that the above described challenged actions often took place entirely outside of the judicial process[7] and were, in all cases, "caused by and representative of the City's policies and practices concerning collecting unpaid fines, fees, costs, and surcharges arising from traffic tickets and other minor offenses over at least the past five years. *Id*. at 24. Plaintiffs further allege that "[i]t is the policy and practice of the City of Florissant to use its municipal court and its jail as significant sources of revenue generation for the City."[8] *Id*. at 23. Plaintiffs also allege that they still owe money to the City and live with the fear that they will again be detained and jailed due to nothing more than their inability to pay these debts. *Id*. at 11, 19, 21, 27, and 36.

---

[7] For example, the amended complaint alleges that Plaintiff Baker "has never been brought before a judge while in custody." (Doc. No. 16 at 7). Plaintiff Bailey alleges that he "never saw or appeared before a judge while he was in custody." *Id*. at 12. Additionally, Plaintiff Bolden alleges that she "was never taken before a judge." *Id*. at 16.

[8] The City of Florissant has approximately 52,000 residents, and in 2015 issued 28,436 arrest warrants. More than 20,000 of these warrants were for minor offenses such as traffic citations. Also in 2015, the City collected more than $2,300,000 in court fines and fees, an amount surpassed only by sales and utility taxes as a source of revenue for the City. Over the past five years, the City has earned more than $12,000,000 from municipal court fines, fees, costs, and surcharges. (Doc. No. 22 at 23-24).

As relief, Plaintiffs request a declaration that the City's policies and practices violate their Constitutional rights; a permanent injunction preventing the City from enforcing these policies and practices; and an award of compensatory damages, attorneys' fees, and costs.

The City moves to dismiss, or alternatively to strike and for a more definite statement of, Plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 8(a), 10(b), 12(b)(6), 12(e), and 12(f). (Doc. No. 22).

**DEFENDANT'S ARGUMENTS**

Defendant argues that all Counts of the amended complaint should be dismissed "on the basis that it fundamentally fails to comply with the applicable rules of pleading, disadvantaging the Defendant in its ability to provide a meaningful answer." (Doc. No. 23 at 2). Specifically, the City argues that the amended complaint does not comply with Rule 8(a), as "it is not a short and plain statement of claims," and that it also fails to comply with Rule 10(b) because its numbered allegations are not limited "as far as practicable to a single set of circumstances." *Id*. at 7. Defendant also alleges that the amended complaint should be stricken or repleaded because it "utilizes scandalous verbiage unrelated to any claim actually stated, serving only to vilify the Defendant and portray it in a derogatory light." *Id*. at 9.

The City also argues that Counts One through Three and Five through Seven should be dismissed for failure to state a claim, because the City cannot be liable under 42 U.S.C. § 1983 for the actions of "the separate and distinct municipal court," which Defendant argues is outside of the City's control. (Doc. No. 22 at 2). Defendant argues that Count Four should be dismissed because Plaintiffs have failed to state a claim based upon conditions of confinement, asserting that Plaintiffs have not pleaded sufficient exposure to conditions that could be found to be unconstitutionally punitive. (Doc. No. 23 at 27-28). The City asserts an alternative basis for the dismissal of Count Five, arguing that Plaintiffs are not similarly situated to private debtors, and

thus there can be no Equal Protection violation. *Id*. at 29-30. Finally, Defendant asserts that Plaintiffs "are not entitled to injunctive relief, as Plaintiffs lack Article III standing, prudential standing, . . . ripeness, [and] failure to sufficiently allege all elements required for injunctive relief." *Id*. at 31.

**RULE 12(E) MOTION FOR A MORE DEFINITE STATEMENT AND 12(F) MOTION TO STRIKE**

The federal pleading rules provide that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and that such a statement "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 512-13 (2002) (internal quotes omitted). Fed. R. Civ. P. 10(b) requires that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." "The remedy of repleader based on violation of Rules 8 and 10 has generally been reserved for egregious cases where a defendant does not know the basic facts that constitute the claim for relief against it." *Superior Edge, Inc., v. Monsanto Co*., 44 F. Supp. 3d 890,898 (D. Minn. 2014).

A party may also move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although courts enjoy "broad discretion" in deciding whether to strike a party's pleadings, motions to strike under Fed. R. Civ. P. 12(f) are "viewed with disfavor and are infrequently granted." *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977) (citations omitted).

Rule 8 "speaks of a short and plain statement of each claim, not a short and plain pleading." *See* 21 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

1217 (3d ed. 1998). Indeed, a multiparty, multiclaim complaint is often "long and complicated by virtue of the number of parties and claims." *Id*. The Court has reviewed Plaintiffs' amended complaint and finds that it satisfies the requirements of Rules 8 and 10. The background information provided at the beginning of the amended complaint presents sufficient, yet not unduly superfluous, information that helps place the allegations against Defendant in context. Moreover, Plaintiffs' allegations in the individual paragraphs are limited, as far as practicable, to discrete sets of circumstances, which should allow Defendant to frame a responsive pleading. Finally, the Court does not find any of the language in the amended complaint to be so redundant, immaterial, impertinent, or scandalous as to warrant striking sections of the pleading. The Court will deny the City's motions for repleading or striking under Rules 12(e) and 12(f).

**MOTION татт DISMISS FOR FAILURE TO STATE A CLAIM**

## I. Legal Standard

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## II.     1983 Municipal Liability

Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); (2) an unofficial "custom," *id.*; or (3) a deliberately indifferent failure to train or supervise, *see City of Canton v. Harris*, 489 U.S. 378, 389 (1989). The Supreme Court has rejected any heightened pleading requirement for claims alleging municipal liability under § 1983. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 165-66 (1993). To survive a motion to dismiss, a complaint need only allege facts sufficient "to draw an inference that the conduct complained of resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

Policy and custom are not the same thing. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, MO.*, 829 F.3d 695, 699-700 (8th Cir.

2015) (quoting *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials . . .; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom.'" *Corwin*, 829 F.3d at 700 (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014). "*Monell*'s 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective." *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 39 (2010).

The City argues that Counts One through Three and Counts Five through Seven of the amended complaint fail to state a claim because Plaintiffs challenge only the actions of the municipal court and its judges, which Defendant contends is an insufficient basis to establish municipal policy or custom.[9] However, Plaintiffs' claims are not so limited. The complaint clearly alleges that the conduct complained of was driven by the policies and practices implemented by the City for the purpose of increasing City revenue. Indeed, Plaintiffs' amended complaint is awash with allegations that their alleged injuries resulted from the City's own unconstitutional policies and the continuing and pervasive unconstitutional customs and practices of a wide range of City departments and employees, including police officers, jail staff and supervisors, and municipal judges, among others. Additionally, Plaintiffs assert that many of the alleged constitutional deprivations took place entirely outside of any judicial process whatsoever.

---

[9] Defendant relies on a line of cases in which courts have held that a municipal judge does not act as a final policymaker of the municipality for purposes of municipal liability when making decisions under the authority of state law and appealable to the state's higher courts. *See, e.g. Granda v. City of St. Louis*, 472 F.3d 565, 569 (8th Cir. 2007); *Ledbetter v. City of Topeka, Kan*., 318 F.3d 1183, 1189-90 (10th Cir. 2003); *Eggar v. City of Livingston*, 40 F.3d 312-16 (9th Cir. 1994); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Woods v. City of Michigan City, Ind.*, 940 F.2d 275, 277-78 (7th Cir. 1991).

The Court finds that Plaintiffs have pleaded facts sufficient to raise a reasonable expectation that discovery will reveal evidence to support their claim of municipal liability under § 1983, which is all that is required at this early stage in the proceedings. *See Fant v. The City of Ferguson*, No. 4:15-cv-00253-AGF, 2016 WL 6696065, at *6 (E.D. Mo. Nov. 15, 2016) (citing *Johnson v. City of Philadelphia*, No. 13-cv-02963, 2013 WL 4014565, at *3 (E.D. Pa. Aug. 7, 2013) (city's policies and procedures, or lack thereof, are fact-sensitive issues that can be addressed in later proceedings)).

### III. Conditions of Confinement

Because Plaintiffs were pretrial detainees at the time of the alleged violation of their constitutional rights, the Court analyzes their claims under the Fourteenth Amendment, rather than the Eighth Amendment. *See Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). When evaluating the constitutionality of conditions of confinement that are alleged to violate due process, the "proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Under the Due Process Clause of the Fourteenth Amendment, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id. See also Owens*, 328 F.3d at 1027 (whether jail conditions are unconstitutional depend on whether they constitute punishment); *Boswell v. Sherburne Cnty.*, 849 F.2d 1117, 1120 (8th Cir. 1988) ("Pretrial detainees have not received a formal adjudication of the charges against them and as such are beyond the power of the state to punish").

While the Eighth Circuit has suggested that "the burden of showing a constitutional violation is lighter for a pretrial detainee under the Fourteenth Amendment than for a post-conviction prisoner under the Eighth Amendment," it has also "repeatedly . . . applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted

inmates." *Morris v. Zefferi*, 601 F. 3d 805, 809 (8th Cir. 2010). Thus, pretrial detainees are "entitled to at least as great protection" as convicted prisoners are entitled under the Eighth Amendment. *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013). "The Eighth Amendment prohibits penalties 'that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity and decency.' " *Morris,* 601 F. 3d at 809 (quoting *Hutto v. Finney*, 437 U.S. 678, 685 (1976). "Punishment that deprives inmates of the minimal civilized measures of life's necessities is unconstitutional." *Owens*, 328 F.3d at 1027 (internal quotations omitted). "Hence, pretrial detainees are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Stickley*, 703 F.3d at 423. "Conditions of confinement, however, constitute cruel and unusual punishment only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994).

"In considering whether the conditions of pretrial detention are unconstitutionally punitive, [the Court] review[s] the totality of the circumstances of a pretrial detainee's confinement." *Morris*, 601 F.3d at 810 (citing *Owens*, 328 F.3d at 1027). While reviewing the totality of the circumstances of Plaintiffs' confinement, the Court focuses on the nature of the conditions and the length of Plaintiffs' exposure to these conditions. *See Owens*, 328 F.3d at 1027. "Conditions, such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months." *Whitnack*, 16 F.3d at 958 (citations omitted). Plaintiffs allege that although they were each held for varying amounts of time during different time periods, they were all exposed to the same "deplorable conditions," including overcrowded, filthy cells, lack of basic hygiene products, lack of access to clean water, uncomfortably cold conditions, denial of medical care, and insufficient food.

Because the length of exposure did vary among Plaintiffs,[10] these differences could impact the merits of each Plaintiff's claim, since the determination as to whether a constitutional violation has occurred in this context is highly fact sensitive. *Compare Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (no constitutional violation when inmate was placed in cell for four days and deprived of clothes, running water, blanket, pillow, mattress, toothbrush, toothpaste, and soap) with *Morris*, 601 F.3d at 811 (transporting pretrial detainee in small, unsanitary dog cage for ninety minute drive "with no compelling urgency" to do so gave rise to inference that conduct amounted to unconstitutional punishment). Plaintiffs allege that they were held for up to several days at a time during which they were exposed to conditions that had "a mutually enforcing effect that produce[d] the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Whitnack*, 16 F.3d at 957. Plaintiffs also allege that on at least one occasion jail officials explicitly stated that they were keeping the jail uncomfortably cold in order to make prisoners so uncomfortable that they would want to pay up and leave. At this early stage of the proceedings, the Court finds Plaintiffs' allegations are sufficient to state a plausible claim for a due process violation attributable to the City.

**EQUAL PROTECTION OF PLAINTIFFS AS COMPARED TO PRIVATE JUDGMENT DEBTORS**

"[T]he Equal Protection Clause requires that state actors treat similarly situated people alike." *See Habhab v. Hon*, 536 F.3d 963, 967 (8th Cir. 2008) (citing *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000). "State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause." *Id*. Thus, "the first step in an equal protection case is determining whether the plaintiff has demonstrated that she

---

[10] Plaintiffs allege that they have attempted, through a Freedom of Information Act request, to gain more detailed information about the exact amount of time each Plaintiff was held, but have not received any information from the Defendant. (Doc. No. 16 at 7). Therefore, the amended complaint contains incomplete information concerning the exact amount of time each Plaintiff was held. Plaintiff Baker states that he was jailed fifteen times, and that he has been held for up to three to four days at a time. Plaintiff Bailey was jailed five or six times, for up to three days at a time. Plaintiff Bolden was held for over 48 hours during her first arrest. Plaintiff Nelson was held for at least two days.

was treated differently than others who were similarly situated to her." *See Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994).

In order to state an equal protection claim based on being treated differently than private judgment debtors, Plaintiffs bear the burden of demonstrating that they are similarly situated to private civil judgment debtors. *Id.* Here, the City contends that Plaintiffs cannot meet this burden, asserting that they are not similarly situated to individuals owing money to private creditors because Plaintiffs' fines are in the "criminal realm" and a "fine levied by a municipality is . . . not similar to a debt owed to a private creditor." (Doc. No. 23 at 29-30). Plaintiffs allege that the fines and fees they owe the City are all civil in nature, as they arise from minor offenses such as traffic violations.[11] (Doc. No. 31 at 22). *See State ex rel. Kansas City v. Meyers*, 513 S.W.2d 414,416 (Mo. 1974) ("Proceedings in municipal courts against persons for violations of city ordinances are civil actions . . ..") (internal citation omitted). Plaintiffs also assert that in Missouri, private civil judgment debtors are privy to an array of protections unavailable to Plaintiffs, such as freedom from excess garnishment of wages,[12] and that while such private judgment debtors are not subject to imprisonment for inability to pay a debt, Plaintiffs have repeatedly been jailed for their inability to pay the City.

In *James v. Strange*, 407 U.S. 128 (1972), the Supreme Court held that a Kansas statute that permitted state recoupment from indigent criminal defendants without affording the defendants the protections granted to civil judgment debtors violated equal protection. *James*, 407 U.S. at 141-42 (equal protection clause requires "more even treatment of indigent criminal defendants with other classes of debtors"). The Equal Protection Clause "imposes a requirement

---

[11] Plaintiff Baker's fines arise from minor traffic violations, including cutting through a parking lot, driving with a defective muffler, driving with no seat belt, speeding, and improper tags. Plaintiff Bailey's fines arise from speeding tickets and driving with a suspended license. Plaintiff Bolden's fines arise from similarly minor violations such as driving with expired registration and a suspended license. Plaintiff Nelson was jailed for not paying fines related to traffic tickets and driving a vehicle with expired registration.
[12] *See* R.S. Mo. § 525.030.1(2)(1) (courts cannot order garnishment of more than 25% of a person's aggregate weekly earnings).

of some rationality in the nature of the class singled out" and such rationality "is lacking where, as in the instant case, the State has subjected indigent defendants to such discriminatory conditions of repayment" not imposed on other judgment debtors. *James*, 407 U.S. at 140. *See also Olson v. James*, 603 F.2d 150, 154 (10th Cir. 1979) (explaining that the essence of the holding in *James* was that "indigent defendants were entitled to evenhanded treatment in relationship to other classes of debtors."). Additionally, in *Tate v. Short*, 401 U.S. 395 (1971) the Supreme Court held that a Texas court violated the Equal Protection Clause by ordering the imprisonment of an indigent person based on his failure to pay traffic fines. *Tate*, 401 at 399 (the Constitution "prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.") Plaintiffs have alleged that the fines and fees they owe are all civil in nature, yet, they have clearly been subjected to debt-collection efforts that would never be tolerated if utilized against a private civil judgment debtor whose creditor is not the government. Consequently, the Court finds that at this early stage of the proceedings, Plaintiffs have adequately alleged an equal protection violation.

### STANDING FOR INJUNCTIVE RELIEF

The United States Constitution vests federal courts with jurisdiction over disputes only if there is a "case" or "controversy." U.S. Const. art. III, § 2; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). One element of the case or controversy requirement is that the plaintiff must establish that she has standing to sue. *Raines*, 521 U.S. at 818. "To establish standing, a party must, at a minimum, have suffered an "injury-in-fact," fairly traceable to the defendant's conduct, which is likely to be redressed by a favorable decision." *Johnson v. Missouri*, 142 F.3d 1087, 1088 (8th Cir. 1998) (quoting *Brouhard v. Lee*, 125 F.3d 656, 661 (8th Cir. 1997)). "In the case of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that

the plaintiff faces a threat of ongoing or future harm." *Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000).

Defendant argues that Plaintiffs cannot establish any such threat. However, at this stage of the proceedings and based on the facts alleged in the amended complaint, the Court finds that Plaintiffs have adequately pleaded a reasonable likelihood of future harm, as they have stated that they still owe debts to the City and live with the constant fear that they will again be arrested and jailed because they cannot pay those debts. See *Fant*, No. 4:15-cv-00253-AGF, 2016 WL 6696065, at *6, (E.D. Mo. Nov. 15, 2016) (citing *Ray v. Judicial Corr. Servs*., No. 2-12-CV-02819-RDP, 2013 WL 5428360, at *13 (N.D. Ala. Sept. 26, 2013) (holding that the plaintiffs' allegations that they "still owe[d] various fines and fees," demonstrated that they were "under the present and constant threat of being subject to the allegedly illegal methods and procedures utilized . . . to collect municipal fines," and their request for "prospective injunctive relief" was therefore appropriate)).

Defendant also asserts that Plaintiffs' claims are not yet ripe. The ripeness doctrine is grounded in Article III's jurisdictional limit to deciding actual cases and controversies. *Pub. Water Supply Dist. No. 8 of Clay Cnty., Mo. v. City of Kearney, Mo.,* 401 F.3d 930, 932 (8th Cir. 2005). The doctrine exists to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967). A federal court may not address a dispute unless it is definite and concrete, rather than hypothetical or abstract. *Nebraska Pub. Power Dist. v. MidAmerican Energy Co*., 234 F.3d 1032, 1037-38 (8th Cir. 2000).

"The touchstone of a ripeness inquiry is whether the harm asserted has matured enough to warrant judicial intervention." *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (citations omitted). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may

not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). However, a plaintiff does not have to wait until a threatened harm has materialized before she can seek preventive relief; "[i]f the injury is certainly impending, that is enough." *Parrish*, 761 F.3d at 876 (internal quotations omitted). The City argues that whether Plaintiffs will ever again suffer from the alleged unconstitutional practices is "far too speculative to warrant an equitable remedy." (Doc. No. 23 at 43). To the contrary, and as discussed *supra*, Plaintiffs allege that they continue to owe debts to the City, and live with the very real fear that they can at any time be arrested and jailed for that reason. At this stage of the proceedings, the Court finds that the facts in the amended complaint sufficiently allege injury to Plaintiffs that is certainly impending.

The City also argues that Plaintiffs' "claims for equitable relief are abstract questions of wide significance, amounting to a general grievance with Defendant" and thus implicate prudential concerns that bear on the question of standing. (Doc. No. 23 at 42). Plaintiffs here have satisfied any such "prudential" concerns, since they have "assert[ed] their own legal rights and interests," and not merely a "generalized grievance[ ]" of the public at large. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75 (1982). Whether Plaintiffs will be able to demonstrate that the factors governing injunctive relief definitively weigh in their favor can be determined at a later stage in the proceedings.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that defendant City of Florissant's motion to dismiss, or alternatively to strike or for a more definite statement via repleading is **DENIED**. (Doc. No. 22).

/s/Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

**SO ORDERED** this 11th day of December, 2017.