UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

THOMAS BAKER, SEAN BAILEY, NICOLE
BOLDEN, ALLISON NELSON, MEREDITH
WALKER, individually and on behalf of all
others similarly situated,

       Plaintiffs,

vs.

CITY OF FLORISSANT, MISSOURI,

       Defendant.

Case No.: 4:16-cv-1693

**MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION[1]**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................... iv

ARGUMENT ...............................................................................................................1

    I.      The Unpled Classes Cannot Be Certified ............................................................2

    II.     The Proposed Classes Fail for Lack of Standing ....................................................7

    III.    The Classes Are Not Ascertainable ....................................................................10

          A.  The Jailed Class, Second Declaratory and Injunctive Relief Class, and Classes

             1,3 and 5 Are Not Ascertainable....................................................................10

          B.  The Paid Fines Class, First Declaratory and Injunctive Relief Class, and Class

             4 Are Not Ascertainable.................................................................................17

          C.  The Pervasive Consequence of Indeterminable Classes ..................................18

---

[1] [ECF 167] (hereinafter sometimes "Motion")

i

IV.     The Jailed Class, Second Declaratory and Injunctive Relief Class, and Classes 1,3
        and 5 All Fail On Both Their Legal Theories and Under Rule 23........................19

        A.  Plaintiffs' Legal Theories and Corresponding Proposed Classes...................19

            1.  Precept #1 for Class 1: "conditioning an arrestee's release on the payment
                of a monetary sum without an individualized inquiry into ability to pay or
                consideration of non-financial alternatives."...........................................21

                Actual Indigence Must Be Proven .....................................................22

                *When* is an Indigence Analysis Required?..........................................27

            2.  Precept #2 for Class 3 – arresting individuals "on warrants and
                subsequently [failing] to bring the arrestee before a judge".....................28

            3.  Precept #3 for Class 5 – "Florissant must swiftly bring arrestees before a
                neutral judicial official for a probable cause determination"....................30

        B.  Failure of The Jailed Class, Second Declaratory and Injunctive Relief Class,
            and Classes 1, 3 and 5 to Satisfy Rule 23(a)....................................................31

            1.  Commonality – Rule 23(a)(2)....................................................................31

                Indigence v. Non-Indigence................................................................32

                No Distinction of Pre SB5 Versus Post SB5 ......................................33

                Damages................................................................................................34

                Plaintiffs' Arguments for Commonality Fail.......................................34

            2.  Typicality – Rule 23(a)(3); Adequacy – Rule 23(a)(4) ............................36

                The Named Plaintiffs Do Not Represent Typical Claims of the Jailed
                Class....................................................................................................36

                The Named Plaintiffs Are Not Typical Representative of the Jailed
                Class....................................................................................................37

                The Named Plaintiffs Are Not Typical Representative of the Modified
                Classes 1, 3 or 5 ................................................................................38

C.  Failure of The Jailed Class, Second Declaratory and Injunctive Relief Class, and Classes 1, 3 and 5 to Satisfy Rule 23(b)(3) – Predominance ...................42

D.  Failure of The Jailed Class, Second Declaratory and Injunctive Relief Class, and Classes 1, 3 and 5 to Satisfy Rule 23(b)(2) – Injunctive Relief...............43

V.  The Paid Fines Class, First Declaratory and Injunctive Relief Class, and Class 4 All Fail On Both Their Legal Theories and Under Rule 23 .................................44

A.  Failure of the Paid Fines Class, Class 4, and the First Declaratory and Injunctive Class on Commonality and Predominance ....................................47

B.  Failure of the Paid Fines Class, Class 4, and the First Declaratory and Injunctive Class on Typicality and Adequacy .................................................48

CONCLUSION..................................................................................................................50

# TABLE OF AUTHORITIES

## Cases

*Albright v. Oliver*, 510 U.S. 266 (1994) ..................................................................................29

*Alexander v. Johnson*, 742 F.2d 117 (4th Cir. 1984) ...............................................................46

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................42

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ...................................42

*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) ................................................7,8,9

*Ballard v. Rubin*, 284 F.3d 957 (8th Cir. 2002).........................................................................8

*Bearden v. Georgia*, 461 U.S. 660 (1983) .........................................................................25,26,46

*Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018)..............................................36,49

*Bridgeview Health Care Ctr. Ltd. v. Clark*, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011) .2,4,5,18

*Cain v. City of New Orleans*, 327 F.R.D. 111 (E.D. La. 2018) ....................................................25

*Califano v. Yamasaki,* 442 U.S. 682 (1979) .......................................................................8

*Chruby v. Global Tel Link Corporation*, 2017 WL 4320330 (W.D. Ark. Sept. 28, 2017)............47

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ...........................................................8

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991)................................................27,30,31,40

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) .....................................................36

*Ellis v. O'Hara*, 105 F.R.D. 556 (E.D. Mo. 1985).......................................................................35

*Fant v. City of Ferguson*, 107 F. Supp. 3d 1016 (E.D. Mo. 2015) .................................................29

*Farrar v. Hobby*, 506 U.S. 103 (1992) ......................................................................................34

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167 (2000).............7,8

*Fuller v. Oregon*, 417 U.S. 40 (1974).......................................................................................46

*Gerstein v. Pugh*, 420 U.S. 103 (1975)..................................................................20,27,30,34,40

*Hamilton v. City of Hayti, Missouri*, 948 F.3d 921 (8th Cir. 2020)................................................43

*HAMILTON, HENRY v. HAYTI, MO, ET AL.*, 2021 WL 78189 (U.S. Jan. 11, 2021) .................43

*Hammons v. Folger Coffee Co.*, 87 F.R.D. 600 (W.D. Mo. 1980)................................................44

*Hayes v. Faulkner County, Ark.*, 388 F.3d 669, 673 (8th Cir. 2004)......................................28,29

*Hollingsworth v. Perry*, 570 U.S. 693 (2013)...............................................................................8

*In re Aquila ERISA Litig.*, 237 F.R.D. 202 (W.D. Mo. 2006) ....................................................5,6

*Ireland v. Anderson*, 2016 WL 7324104 (D.N.D. August 29, 2016).........................................2,6

*James v. Strange*, 407 U.S. 128 (1972)..................................................................................45,46

*Lund v. Hennepin County*, 427 F.3d 1123 (8th Cir. 2005) .........................................................29

*McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017)...............................................................10

*Miller v. Thurston*, 967 F.3d 727 (8th Cir. 2020) .........................................................................7

*Mitchell v. Shearrer*, 4:10-CV-819 CEJ, 2012 WL 918803 (E.D. Mo. Mar. 19, 2012)...............29

*ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018)..........................................................23

*Olson v. James*, 603 F.2d 150 (10th Cir. 1979) ...........................................................................46

*Park v. Forest Serv. of U.S.*, 205 F.3d 1034 (8th Cir. 2000) .......................................................8,9

*Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) .......................................................42

*Pitman v. City of Columbia*, 309 S.W.3d 395 (Mo. App. W.D. 2010)...............................................

*Portis v. City of Chicago, Ill.*, 613 F.3d 702 (7th Cir. 2010) .............................................27,28,31

*Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978)......................................................20,23,24,25,26

*Reynolds v. United States*, 80 S. Ct. 30 (1959) ...........................................................................20

*Robinson v. Gillespie*, 219 F.R.D. 179 (D. Kan. 2003) ................................................................42

*Roubideaux v. N. Dakota Dept. of Corr. & Rehab.*, 523 F. Supp. 2d 952 (D.N.D. 2007) ...........24

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973) ...................................................20

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016)................10

*Scahill v. D.C.*, 909 F.3d 1177, 1183 (D.C. Cir. 2018)....................................................8

*Schulz v. Long*, 44 F.3d 643 (8th Cir. 1995) ..............................................................47

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ....................7

*Sioux Falls Cable Television v. State of S.D.*, 838 F.2d 249 (8th Cir. 1988)..................................7

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .............................................................8

*Sylvan Beach v. Koch*, 140 F.2d 852 (8th Cir. 1944)............................................3,5,7,22

*Taylor v. Universal Auto Group I, Inc.*, 2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ........33

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ...........................................42

*United States v. Bracewell*, 569 F.2d 1194, 1198-1200 (2d Cir. 1978)................................46

*United States v. Higgins*, 987 F.2d 543 (8th Cir. 1993)...................................................20

*U.S. ex rel. Kinney v. Stoltz*, 327 F.3d 671 (8th Cir. 2003)..............................................9

*Walker v. City of Calhoun, GA*, 901 F.3d 1245 (11th Cir. 2018) .......................23,24,26

*Walls v. Sagamore Ins. Co.*, 274 F.R.D. 243 (W.D. Ark. 2011) ...................................2,3,6

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..........................2,19,31,43,44,48

*Williams v. Cook County*, 2019 WL 952160 (N.D. Ill. Feb. 27, 2019) ...........................41

*Williams v. Dart*, 967 F.3d 625 (7th Cir. 2020)........................................................41

## **Rules**

Fed.R.Civ.P. 23 ................................................................................... *passim*

Fed.R.Civ.P. 23(a) ..............................................................................21,31

Fed.R.Civ.P. 23(a)(2)..............................................................................31

Fed.R.Civ.P. 23(a)(3)..............................................................................36

Fed.R.Civ.P. 23(a)(4) .................................................................................................. 36,42

Fed.R.Civ.P. 23(b)(2) .................................................................................................. 43,44

Fed.R.Civ.P. 23(b)(3) ...................................................................................................... 42

Fed.R.Civ.P. 23(c)(1) ........................................................................................................ 6

Mo. R. Crim. P. 37.43 (2003) ......................................................................................... 43


**Statutes**

28 USC § 2072(b) ............................................................................................................... 7

Mo. Rev. Stat. § 221.510 ................................................................................................. 39

Mo. Rev. Stat. § 479.100. ................................................................................................ 43

Mo. Rev. Stat. §479.360 (2016) ...................................................................................... 44


**Other Law**

U.S. Const. amend. IV ........................................................................ 20,22,29,30,37,39,47

U.S. Const. amend. VIII .................................................................................................. 26

U.S. Const. amend. XIV ................................................................................... 19,21,22,29

"Senate Bill 5" ............................................................................................................ 33,44

8th Circuit Jury Instruction 4.70 ..................................................................................... 34

**Secondary Sources**

2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-97 (5th ed. 2012) ......................... 42

Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97 (2009) ......... 32

**ARGUMENT**

For the better part of the last five years, the Plaintiffs have pursued claims against the City of Florissant for what they have dubbed a "modern debtors' prison scheme," which they contend has impacted the City's "poorest people."[2]  At the core of the Complaint is Plaintiffs' allegation that the City had a policy of "unlawfully jailing people if they are too poor to pay."[3]  Thus, the Plaintiffs, all claiming to be "impoverished Missourians," have throughout this litigation purported to seek relief not only for themselves, but also on behalf of others similarly situated, i.e., other purportedly "indigent" arrestees and judgment debtors.  To this end, the Plaintiffs pled on behalf of four putative classes, each comprised of either actual or putative judgment debtors, i.e., individuals owing or having paid "debts" arising from "fines, fees… costs or surcharges," with all damage classes explicitly limiting membership to those arising from cases in the municipal court.[4]

However, once years of voluminous discovery exposed a reality that did not align with the Plaintiffs' narrative, they attempted a pivot; instead of purporting to represent indigent *judgment debtors*, the Plaintiffs instead sought to expand their damage classes to include non-indigent, non-judgment debtors.  While this Court rightly rejected the Plaintiffs' unjustified, belated attempt to amend their Complaint to include various new classes, plaintiffs and claims,[5] the Plaintiffs' effort to re-orient their case persists, as they have effectively abandoned their pled "Original Classes" (by offering no argument in support of them) and instead moved to certify "Modified Classes" that are materially different from what is pled.  Yet, just as the Plaintiffs could not justify amendment to include these classes, they do not justify their certification effort for any proposed class.

---

[2] See the Complaint, filed October 31, 2016 [ECF 1], Amended Complaint, filed December 13, 2016 [ECF 166], and Second Amended Complaint [ECF 204], filed on March 8, 2021 (the final being the operative pleading).
[3] ECF 16 ¶ 3 (emphasis added).
[4] ECF 16 ¶ 151(a)-(d).
[5] See ECF 201.

In fact, the Plaintiffs' Motion does not flow from the causes of action pled in their Complaint, but instead on what the Plaintiffs have characterized as three (3) "well-established Constitutional precepts,"[6] which Plaintiffs even then only advance in support of three (3) of their four (4) proposed classes. The dissonance between what the Plaintiffs have pled and what they now seek to certify, and even the dissonance internal to the Plaintiffs' certification motion itself, requires this Court to scrutinize Plaintiffs' pleadings, "probe behind the pleadings," and rigorously analyze certification in light of the proposed classes, selected evidence, chosen articulation of the rights, and the relief sought. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (citations omitted).[7]   Such rigorous analysis in this case begins with the threshold issues of pleading, standing and ascertainability.

## I.    The Unpled Classes Cannot Be Certified

This Court correctly denied the Plaintiffs' effort to belatedly amend their Complaint to add parties, claims, and to redefine their classes for all of the reasons set forth in the Court's well-reasoned order. [ECF 200].  However, the Court also acknowledged authority previously submitted by the Plaintiffs for the proposition that a plaintiff *may* ask the Court to certify classes with alternate definitions or definitions that do not match the operative complaint.  *Id*. (citing *See, e.g., Walls v. Sagamore Ins. Co.*, 274 F.R.D. 243, 249 (W.D. Ark. 2011); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2011 WL 4628744, at *2 (N.D. Ill. Sept. 30, 2011); and *Ireland v. Anderson*, 2016 WL 7324104 (D.N.D. August 29, 2016)).  While the Court observed that the Defendant did not – at that stage - submit contrary legal or factual authority, it does so here, to dispositive effect.

---

[6] See Plaintiff's Memorandum In Support of Motion for Class Certification [ECF 167-1] (hereinafter sometimes "memorandum" or "Memorandum") at § I(B), pp. 4-6.
[7] As the Plaintiffs have elected to proceed through certification without an evidentiary hearing, they may rely on no further evidence than what has been appended to their Motion. [ECF 167].

The Court must begin with the longstanding, fundamental premise that, absent voluntary waiver by the opposing party, a party cannot obtain relief upon a claim that he has not pled:

> [T]he court can consider only the issues made by the pleadings, and the judgment may not extend beyond such issues nor beyond the scope of the relief demanded. A party is no more entitled to recover upon a claim not pleaded than he is to recover upon a claim pleaded but not proved.

*Sylvan Beach v. Koch*, 140 F.2d 852, 861–62 (8th Cir. 1944).  This requirement is not optional. Moreover, as discussed in more detail below, under the law of this Circuit, a plaintiff must also plead and prove his standing to bring a claim at the time of the commencement of suit, a requirement that ultimately extends to *every class member* in the case of class actions.  See §II, *infra*, *passim*.  Thus, while there is precedent for courts to allow *some* amendment of class definitions as a component of certification, such amendments are not a matter of right, not an opportunity to re-plead a failed case, and are necessarily bounded on all sides by the immovable principles of pleadings and standing.  The Plaintiffs' authorities cannot overcome these principles.

In *Walls v. Sagamore Ins. Co.*, the plaintiff was a putative class representative for insurance policyholders seeking to recover for breach of insurance contracts in Arkansas and nine other states.  The pled putative class in that case consisted of all persons having contracted with the defendant insurance company.[8]  The district court in that case allowed the plaintiffs to submit an alternative class of a subset of members solely from Arkansas, and further narrowed only to those members whose contracts were terminated and who paid a fee.  *Id*. at 249.  Thus, the alternative proposed class in *Walls* was an actual, narrowed subset of the original class.  *Id*.  Furthermore, the plaintiff *had pled an alternative class* of Arkansas-only residents in her complaint.  *Id*.  Unlike in *Wall*, the Plaintiffs here have not pled an alternative class.  Unlike *Wall*, they do not seek to narrow

---

[8] See U.S. District Court for the Western District of Arkansas case 1:07-cv-01020-RTD, ECF 81 at ¶ 44.

their classes to a legitimate, factual subset of those actually pled.  Rather, Plaintiffs seek *expansion*, evident on its face by, e.g., the inclusion of "bonds" alongside judgment debts in Class 1 when bonds were never a part of the pled Jailed Class.[9]

In *Bridgeview Health Care Ctr. Ltd. v. Clark*, the district court rejected the defendant's argument that the plaintiffs' proposed change in class definition from the Complaint precluded certification under the facts of that case.  *Bridgeview* is particularly distinct from this case.  In that case, the defendant relied on cases which "emphasized that a party's motion for class certification does not operate as a de facto amendment of a party's complaint."  *Id*. (citations omitted).  The court in *Bridgeview* simply declined to extend that logic to require a denial of certification under the circumstances, recognizing the possibility that "certification will be determined as originally defined and Plaintiff *may move* to alter or amend the class definition *and amended complaint* if they so choose."  *Id*. (emphasis added).  That is, the court in *Bridgeview* did not hold that a class action could be adjudicated with a certified class not pled in the complaint, because the court in *Bridgeview* specifically contemplated that the pleading would also be amended.

The facts of this case differ dramatically because amendment of the Complaint *is not available to the Plaintiffs in this case* because of their lack of diligence in seeking amendment, as *twice* recognized by this Court.  See ECF 200 at p. 5 (finding no reason to change order denying amendment to complaint to reconfigure and add classes upon finding that Plaintiffs were not diligent with respect to refining the original class definitions).  In *Bridgeview*, there was no such bar to amendment.  Rather, the court recognized that the motion for class certification did not operate as a *de facto* amendment to the Complaint – meaning that the plaintiffs in that case, unlike

---

[9] Defendant incorporates herein by reference its further arguments detailing the Plaintiffs efforts to expand their classes, as set forth in the Defendant's filings opposition to Plaintiffs' motion for leave to amend.  [ECF 146].

the Plaintiffs in this case, remained free to (and in fact must) seek such amendment to bring the pleadings into harmony with class certification.[10]  Indeed, that the motion for class certification cannot operate to amend the pleadings supports the Defendant, not the Plaintiffs.

Nothing in *Bridgeview* or any other authority offered by Plaintiffs endorses their tortured position that a motion for class certification *could* serve as a *de facto* amendment to the Complaint as part of a transparent end-run around a clear Order denying amendment.   The Plaintiffs are not entitled to use class certification to *de facto* gain an amendment to the Complaint that they were twice denied by this Court for their lack of diligence.  Moreover, nothing in *Bridgeview* endorses the Plaintiffs' errant notion that they can recover upon claims not stated on behalf of classes not pled; rather, *Bridgeview* supports the Defendant's position by recognizing the need for the pleadings and certified classes to align with one another.

Here, such alignment is not possible because the Plaintiffs failed to timely seek amendment to their Complaint, but nevertheless seek to certify replacement classes.   Moreover, that the Plaintiffs proceeded with their Motion after having already been denied amendment and filed an unauthorized "motion to reconsider" is their own failed gambit that should earn them no advantage here.  Plaintiffs knowingly pursued this gamble, as recognized in the first footnote of their own Memorandum. [ECF 167-1 at p. 1].  In an effort to mitigate the consequences of this gamble, the Plaintiffs passingly purport to "alternatively" revert back to the class definitions in their "operative First Amended Complaint,"[11] unfairly forcing the City to expend unnecessary effort in defending a hodgepodge of classes.  That the Plaintiffs have not briefed any argument in support of the classes that they have actually pled constitutes an effective abandonment of those classes and should result

---

[10] Such harmony is necessary in order to comply with the fundamental principle cited in *Sylvan Beach*, *supra*.
[11] "Alternatively, Plaintiffs seek certification of the Classes contained in the operative First Amended Complaint" [ECF 167-1 at p. 2].

in the summary denial of their Motion.  See, e.g., *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 213 (W.D. Mo. 2006) (unbriefed certification theory deemed abandoned).

Plaintiffs also cite the unreported North Dakota District Court case of *Ireland v. Anderson* for its verbiage to the effect that no authority was before the court that "a class definition must *mirror* the definition pled in the complaint" and that Rule 23(c)(1)(C) allows amendment of a certification order any time prior to final judgment.  *Id*.  Neither point aids the Plaintiffs in this case, as the issue is not one of perfectly "mirroring" the pleadings or the discretion available to the Court to amend an interlocutory order; rather it is one of unpled classes on unpled claims.  *Ireland* involved a challenge to North Dakota's system of commitment for sexually dangerous individuals. The complaint in that case included a *subclass* comprised of persons who were minors at the time of their commitment proceeding, while the class certification motion re-defined such *subclass* to include individuals whose underlying conduct was committed while they were minors, regardless of whether they were minors when the proceeding began.  *Id*. At FN11.  Again, as with *Walls*, the newly defined class was an explicit, actual subset of the class pled, not an expanded replacement class.  *Ireland* rejected only the argument that a class certification definition must "mirror" the complaint (i.e., copy the complaint verbatim); it did *not* excuse the requirement that the complaint have pled claims on behalf of those class members.  The Defendants do not attempt to hold the Plaintiffs to some impossible standard, but only insist on defending the case that the Plaintiffs actually pled on behalf of the classes that have persisted unchanged for most of the last half decade.

None of the cases cited by the Plaintiffs support their argument for certification of unpled classes.  None allows the Plaintiffs to litigate on behalf of a class that is not reflected in the Complaint, nor could be reflected in a future Complaint when these very amendments have now

twice been denied.[12]  As the Eighth Circuit has long recognized, allowing a party only to advance issues made in the pleadings is simply a fundamental rule that is among the "essentials of due process and of fair play." *Sylvan Beach v. Koch*, 140 F.2d at 862.  The class action mechanism, on the other hand, is borne out of a procedural rule (Rule 23) that, per the Rules Enabling Act, "shall not abridge, enlarge or modify any substantive right." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (quoting 28 USC § 2072(b)).  It cannot allow the Plaintiffs to bypass their failures of pleading, and there is no authority to justify holding otherwise.  This alone defeats certification.

## II.    The Proposed Classes Fail for Lack of Standing

The Plaintiffs' efforts to amend their Complaint and to certify unpled classes despite this Court's rejection of their amendment efforts has exposed deep flaws in their case, starting with the basic issue of the identity of the classes.  Each class is plagued with fatal standing issues that devastate the Plaintiffs' certification effort. Standing is jurisdictional and can be raised at any time. *Sioux Falls Cable Television v. State of S.D.*, 838 F.2d 249, 251 (8th Cir. 1988).  It is not a merits inquiry.  *Miller v. Thurston*, 967 F.3d 727, 735 (8th Cir. 2020).  It specifically impacts certification in this case.  *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010).

> To demonstrate constitutionally required Article III standing:
>
> a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693, 704, 145 L. Ed. 2d 610 (2000) (citations omitted).  "For an injury to be 'particularized,' it

---

[12] ECF 159, 200.

must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (cleaned up).  To be concrete, "it must actually exist." *Id*. at 1548.

Plaintiffs must demonstrate that standing existed *at the time suit commenced*.  See *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000).  Events taking place after filing suit are inapposite to the issue of standing.  *Id.*[13]  Standing must also persist throughout the case. *Hollingsworth v. Perry*, 570 U.S. 693, 693, 133 S. Ct. 2652, 2656, 186 L. Ed. 2d 768 (2013). Further, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. at 185.

While "the class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'"[14] it remains true that "the constitutional requirement of standing is equally applicable to class actions." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d at 1034 (citations omitted).  The standing requirement applies not only to the named parties, but *each member* of the class.  *Id*.[15]  Thus:

> Although federal courts do not require that each member of a class submit evidence of personal standing, **a class cannot be certified if it contains members who lack standing**…**A class must therefore be defined in such a way that anyone within it would have standing**…Or, to put it another way, **a named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves**.

*Id.* (cleaned up, emphasis added).

---

[13] The 8th Circuit is among those circuits that "have affirmed the dismissal of the original complaint for lack of jurisdiction even if subsequent events cured the standing deficiency, so that the plaintiff would have to file a new lawsuit to pursue the claims."  See *Scahill v. D.C.*, 909 F.3d 1177, 1183 (D.C. Cir. 2018) (indicating circuit split and citing relevant cases, including *Park v. Forest Serv. of U.S.*, 205 F.3d at 1037-38 (additional citations omitted).

[14] *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)).

[15] This is also consistent with the individual, personal nature of a civil rights claim.  See generally *Ballard v. Rubin*, 284 F.3d 957, 963 (8th Cir. 2002) (analogizing civil rights claims to personal injury claims).

In this case, each class purports to include members who did not have standing to seek damages on October 31, 2016, the date the original Complaint was filed. [ECF 1]. By their very definition, all of the classes include individuals lacking the requisite initial standing. This jurisdictional defect precludes class certification.

For instance, all of the Modified Classes purport to include individuals either held or subjected to fines or fees under various circumstances "from October 31, 2011 to present." Memorandum at p. 2. Thus, each of the Modified Class definitions on its face fails to restrict membership to individuals having standing at the time of the filing of the Complaint. The Classes are unlimited by definition and include scores of putative class members that had no interactions with Florissant prior to filing. See, e.g., Olsen Report, Plaintiffs' Ex. 26, ECF 167-31 at pp. 47/164-106/164 and 127/164-164/164, purporting to show all classes and containing members whose arrests followed the filing of this suit. The fact that a putative class member interacted with the City of Florissant *after the filing of this suit* is immaterial to their lack standing at the time of the initiation of suit; and, under the law of this circuit, no amended or supplemental pleading can cure this jurisdictional defect. See *Park v. Forest Serv. of U.S.*, 205 F.3d at 1037-38 (a plaintiff having no standing at commencement of litigation could not pursue injunction despite possible then-current standing).[16]

Membership in each class should have included only individuals having purported to have claims accruing before the filing of this suit. Individuals not meeting this standing requirement cannot simply "ride the coattails" of those having standing as part of some allegation of ongoing conduct, since it is not the class at large that must have standing, but its *individual members*. See *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d at 1034. Because each Modified Class and Original

---

[16] Plaintiffs cannot cure this jurisdictional deficiency through amendment. *U.S. ex rel. Kinney v. Stoltz*, 327 F.3d 671, 673 (8th Cir. 2003).

9

Class necessarily includes individuals having no standing, none can be certified.  *Id.* at 1034. "[A] class cannot be certified if it contains members who lack standing." *Id.*

## III.    The Proposed Classes Are Not Ascertainable

Ascertainability is an implied, indispensable component of Rule 23 that the 8th Circuit regards as "elementary."  *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citation omitted). "Though ascertainability is an implicit requirement that our court enforces through 'a rigorous analysis of the Rule 23 requirements,' **a dispute regarding the method for identifying class members calls for an independent discussion of whether a class is ascertainable**."  *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017) (citations omitted, emphasis added).  The lack of ascertainability pervades the analysis of Plaintiffs' Motion.

### A.  The Jailed Class, Second Declaratory and Injunctive Relief Class and Classes 1, 3 and 5 Are Not Ascertainable

The Original "Jailed Class" is defined as follows:

> **Jailed Class**: All persons who have been jailed by the City of Florissant for non-payment of fines, fees (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)), costs, or surcharges arising from cases in the City court and who (1) were not provided an opportunity to prove indigence prior to jailing; (2) were not considered a danger to the community by notation in the City's file; and (3) were not designated as a flight risk at the time of jailing.

Memorandum at p. 3.   The Plaintiffs have attempted to replace this class with a combination of the "Modified Classes" 1, 3 and 5, defined as:

> **Class 1**: All persons held in the City of Florissant jail on behalf of the City of Florissant for failure to satisfy a bond, fine, fee, (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)), surcharge, and/or costs without (1) an indigency hearing, (2) a finding that they were a flight risk, or (3) a finding that they were a danger to the community from October 31, 2011 to present (excluding individuals jailed pursuant to a domestic violence hold).

> **Class 3**: All persons held in the City of Florissant jail, between October 31, 2011 to present, on a Failure to Appear warrant for the City of Florissant who were not brought before a judge for a first appearance or arraignment (excluding individuals jailed pursuant to a domestic violence hold).
>
> **Class 5**: All persons held past booking and assignment of bail in the City of Florissant jail on behalf of the City of Florissant without a warrant from October 31, 2011 to present. (excluding individuals jailed pursuant to a domestic violence hold).

*Id.* at p. 2.

In order to claim membership in the Jailed Class, one must have been jailed for nonpayment of debts *and* not provided an opportunity to prove indigence before jailing. That is, as a threshold for inclusion in this class, one must have been a *judgment debtor* who was *jailed for failure to pay* that judgment debt. Even then, that judgment debtor must have also been denied an opportunity to prove indigence. The Plaintiffs cannot ascertain the members of such a class.

The only place in their Motion where the Plaintiffs make any attempt to demonstrate the ability to identify *any* class is in section III(C)(i) of their memorandum, where they claim, *inter alia*, that "Florissant's own records can be used to identify the members of the Classes…" (pp. 24-26). This claim is disproven by the Plaintiffs' own proffered evidence, the report and testimony of Plaintiff's "data expert,"[17] Arthur Olsen. Contrary to Plaintiffs' assertion that Olsen "proposes a methodology for identifying Class members," he *expressly* does no such thing.

First, Olsen makes no attempt whatsoever to identify the members of the pled Jailed Class, the Second Declaratory and Injunctive Relief Class, or *any* of the pled so-called Original Classes. Those classes are found <u>nowhere</u> in his assignment; rather, the Plaintiffs specifically tasked Olsen with identifying the members of the seven *unpled* classes, including the so-called "Modified Classes" that populated the Plaintiffs' rejected amended Complaint.[18] The Plaintiffs have made

---

[17] ECF 167-1 at p.24.
[18] See the Olsen Report, Exhibit 26 to Plaintiff's Motion, at p. 5 ¶10

no effort to demonstrate how, from the records or Olsen's analysis of those records, which putative class members were judgment debtors, jailed for nonpayment, and denied an indigence inquiry. In fact, *it cannot be done* from the data, as there is no way to distinguish between judgment debtors (those allegedly arrested for nonpayment of a previously adjudicated fine) and those who have been arrested on a pre-judgment warrant for failure to appear – both of which are identified the same way in the aggregate data.[19]   The Jailed Class is not ascertainable.  Likewise, the Plaintiffs offer no explanation for how every person who may ever be arrested in Florissant in the future (i.e., the "Second Declaratory and Injunctive Relief Class") is ascertainable.  It is not.

Unlike the Original Jailed Class, members of Class 1 need not be judgment debtors at all, since a "bond" is not a judgment debt.  The unpled Class 1 therefore necessarily, by definition, casts a broader net than the pled Jailed Class.  Likewise, Class 3 and Class 5 members need not be judgment debtors, but only people held "past booking and assignment of bail" or not provided a first appearance or arraignment on *any* charge except a domestic violence hold.  Again, Plaintiffs attempt to expand the case beyond their pleadings.  Yet, even in undertaking Plaintiffs' directive for him to identify the members of the substitute Class 1, Class 3 and Class 5, Olsen fails.

To identify members of Class 1, Olsen took data on *every* arrest within the City of Florissant, excluding only individuals held *solely* on warrants for other municipalities, those held on domestic violence holds, and those held on misdemeanor or felony charges.[20]   This is the sum total of Olsen's efforts to identify the members of Class 1, serving nothing more than to identify *all individuals held on Florissant municipal charges*.  Conspicuously missing from Olsen's analysis

---

[19] Both are identified as "Failure to Appear" because, as discussed later, the basis for arrest of both groups is failing to appear in court (not failure to pay a judgment debt).  This also explains the Plaintiffs' need to pivot to their unpled classes.  The new inclusion of "bonds" ensures that the Plaintiffs need not make the distinction *that they are unable to make*.

[20] Plaintiffs' Memorandum at p. 26.  See Olsen Report at ¶¶ 16-18.

or Plaintiffs' Motion is any methodology for identifying which of these arrestees were held for failure to pay a bond; held for failure to satisfy a judgment debt; or denied an indigence hearing. What the Plaintiffs' purport to ascertain is not "Class 1."

Olsen admits that he did not develop a methodology to ensure that all putative class members met the requirements for membership in Class 1; instead, he simply acted at the direction of Plaintiffs' counsel to locate a set of individuals that the Plaintiffs' counsel instructed him to identify as Class 1.  Olsen testified to this directive at length.  In fact, when specifically asked how he ascertained the putative class members who were arrested for "failure to satisfy a bond, fine, fee, surcharge, and/or cost," Olsen disclaimed any such effort at all.  The salient exchange follows:

> Q. All right. So presumably, your work is intended to develop a list of people that were held on behalf of Florissant and they failed to satisfy a bond, fine, fee, surcharge, and/or cost, correct?
>
> A. Yes.
>
> Q. How did you go about figuring out which of the 121,230[21] records fit the definition of the class having to do with the portion that says, "failure to satisfy a bond, fine, fee, surcharge, and/or cost"?
>
> A. **I'm not sure**.
>
> Q. Does that relate to any of the work that was described in paragraphs 16 and 17? Do you know?
>
> A. Again, I -- **I'm not the fit person to determine whether or not the calculations fit the class definition or not**, but I can tell you that the calculations that were described are the ones that were performed based upon the assumptions that were provided, and those are the results.
>
> Q. All right. Is there -- looking at the arrest data spreadsheet, is there anything that you can identify there where you could figure out which of the people listed had failed to satisfy a bond, fine, fee, surcharge, and/or cost?
>
> A. Again, it's the same answer as before.  **I'm not sure if some of those fields answer that question or not or if the analysis answered that question or not**.

---

[21] (representing the total of all *charges* in the data)

See Exhibit III, Deposition of Arthur Olsen, excerpts ("Olsen Deposition"), at 74:20 - 75:21.

In fact, Olsen's effort to so thoroughly disclaim responsibility for identifying the actual

classes by their actual definition pervaded every meaningful portion of his deposition:

> Q… Can you state with a reasonable degree of certainty that each one of these
> 16,733 arrestees actually fit the definition of Class 1?
> …
> A. Again, I'm not -- that's not my expertise, to talk about the fit. So my expertise is
> to say that these are the calculations that were performed based upon the data that
> was produced and the assumptions that were given, and here are the results. And
> the result is that there were 16,733 arrestees.

See Olsen Deposition at 76:19-77:5. Again, clearly Olsen did nothing more than attempt to

indiscriminately identify all Florissant municipal arrestees.  Which of those arrestees was denied

an indigency hearing – another prerequisite of Class 1 membership – was also beyond the scope

of Olsen's efforts:

> Q. And, in fact, in doing your work, you didn't do any work to determine whether
> any of the arrestees were provided an indigency hearing, correct?
> …
> A. I don't know if that was part of the calculation or not.
>
> Q. You've given me all the work you did for the calculation?
>
> A. Yes.
>
> Q. It's described in paragraphs 16 and 17?
>
> A. Yes.
>
> Q. All right. And you simply don't know one way or the other whether there was
> any -- any of the description of the work that you did encompasses the question of
> whether any of these folks received an indigency hearing, correct?
> …
> A. Correct.

See Olsen Deposition at 77:7-78:3 and the Olsen Report (Pl. Ex. 26) at ¶¶16-17.  To suggest that Olsen or the Plaintiffs have submitted evidence sufficient to ascertain "Class 1" is a fallacy that this Court should not accept.  Class 1 is not ascertainable.

Likewise, the Plaintiffs' only effort to ascertain Class 3 members involved directing Olsen to assemble a list of all arrestees who were charged with any variant of "failure to appear," excluding only those which Plaintiffs' counsel speculated to have resulted from a domestic violence hold.  Memorandum at p. 26; Olsen Report at ¶¶ 21-22.  However, membership in Class 3 requires not only having been charged for a failure to appear unrelated to a domestic violence hold, but also having not been "brought before a judge for a first appearance or arraignment." Memorandum at p. 2.  Yet, again, there is no attempt to identify such persons:

> Q. …[D]id you do any work to exclude any one of the arrests -- did you do anything to exclude anyone who was – to figure out who were not brought before a judge for a first appearance or arraignment?
> …
> A. So the calculation that I did, as you know, is described in paragraph 21 and 22 for a Class 3, and insofar as those calculations do what you're asking, meaning that they account for who were not brought before a judge for first appearance or arraignment, I mean, I -- **I couldn't say**. I don't know if it answers that question or not. I don't know if it's inherent in the assumptions that were given to me or not. **That would be a question for someone else, I think**.

See Olsen Deposition at 54:22-54:12 (emphasis added) and the Olsen Report (Pl. Ex. 26) at ¶¶21-22.  Olsen did not identify Class 3, and that class is not ascertainable.

Class 5 is not ascertainable for the same reasons, with an added element of unreliability. This class purports to include all persons "held past booking and assignment of bail in the City of Florissant jail on behalf of the City of Florissant without a warrant."  Memorandum at p. 2.  Yet, Plaintiffs make no effort to demonstrate how this class was identified, beyond a single sentence where they state that Olsen excluded individuals held for other municipalities, failure to appear

charges, and what Plaintiffs' counsel speculated to include domestic violence holds.  *Id.* at p. 27. There is no mention of the methodology they used to identify those held "past assignment of bail," and for good reason – it is pure guesswork.

Olsen reports that all he did was calculate an average: "For Class 5, I determined that the average time spent in jail by arrestees for booking and assignment of bail was 773 minutes. Therefore, I excluded arrests where the defendant spent 773 minutes or less in jail."  Olsen Report at ¶27.  Once again, Olsen made no determination of what this calculation purported to represent, but was instructed by the Plaintiffs' counsel what to *say* what it represented; in Olsen's own words:

> Q. And what did you do to determine the 773 minutes with those?
>
> A. So for each arrestee that was arrested and had a release code of BND,[22] the difference between the booking date and time and the release date and time was calculated in minutes. And then I figured out what the average was per arrest, and it was 773 minutes.
>
> Q. I'm thinking that you're misspeaking because if you compare booking date and time with release date and time, that's going to give you the total amount of time they spent in jail.  That's what you were doing on some of these other ones, correct?
>
> A. Yes. Yes. So –
>
> Q. My understanding is here you were -- you were determining a average time spent in the booking and assignment of bail process. Am I misunderstanding that?
>
> A. Again, it -- it's paragraph 27, the average time spent in jail by arrestees for booking and assignment of bail, and **the way I was instructed to determine that was to say what was the time spent in jail, i.e. the difference between the booking date and time and the release date and time for folks that were released with a code of BND**. So if you take the universe of arrests with a code of BND as the release and look at the average amount of time spent in jail, which we defined as the difference between booking and release, it was 773 minutes.

---

[22] (indicating a release on bond)

See Olsen Deposition at 112:20-113:25. Plaintiffs offer no explanation why their class definition includes a person "held past booking and assignment of bail," and yet their expert calculated the difference between booking and **release from jail**.

Plaintiffs may well suggest that their calculation is a charitable one since release from jail necessarily comes later than the assignment of bond.  But this evades the salient point – that Plaintiffs' methodology does not match the class definition.  More fundamentally, Plaintiffs offer no support for their hypothesis that the average jail time of those having posted bond comports with any legal standard (e.g., "reasonableness").[23]  Olsen served no function beyond a calculator, otherwise simply parroting Plaintiffs' counsel's direction to suggest correlations that are not supported by the data.

### B. The Paid Fines Class, the First Declaratory and Injunctive Relief Class, and Class 4 Are Not Ascertainable

As with the other "Original Classes," the Plaintiffs offer no support for ascertainability. The Paid Fines Class and First Declaratory and Injunctive Relief Class make no appearance in Olsen's report, and are not ascertainable.  Moreover, as with the Second Declaratory and Injunctive Relief Class, it is impossible to ascertain the identity of any putative class member of the First Declaratory and Injunctive Relief Class who will, in the future, incur a debt to the City.

Moreover, like the "Original Jailed Class" and "Class 1," membership in the "Paid Fines Class" and "Class 4" is restricted to individuals denied opportunity to prove indigence.  Yet it is exceedingly clear from the Plaintiffs' own expert that their calculation of Class 4 includes no more analysis than to identify *every person who ever paid any fine or fee* (excluding only warrant recall fees, letter fees, and failure to appear fees), regardless of any of the underlying reasons without

---

[23] The suggested correlation is also fundamentally flawed on its face, since an "average" of time will necessarily include in the class individuals at the high end of the average and exclude those on the low end.

any evidence whatsoever of whether or not that person received an indigence analysis.  Olsen Report at ¶¶23-25.  The Plaintiffs simply declare, without any support whatsoever, that **"[a]ll of the members of Class 4 paid fines to Florissant under the threat of unconstitutional detention and without any inquiry into their indigence."** See Memorandum at p.  27 (emphasis added).

Yet Plaintiffs identify no proof that all such class members paid under "threat" (as opposed to voluntary payments), or that every single putative class member was denied an indigence analysis.[24]  Instead, the Plaintiffs are simply offering the Court their own speculation from incomplete data in a bid to identify an actionable class.  They have failed, not only for their lack of proof, but also because, fundamentally, the circumstances of each and every payor's payment is not amenable to class-wide determination.  None of the classes is ascertainable.

### C.  The Pervasive Consequence of Indeterminable Classes

Plaintiffs' tangled mixture of proposed classes, rejected pleadings and incomplete Motion make impossible the task of identifying the proper parties in interest.  Not only are the classes indeterminable, but also the counts of the Complaint under which these proffered classes propose to pursue redress have been abandoned and replaced by a general restatement of "constitutional precepts."  That is, despite the recognition that a motion for class certification cannot serve as a *de facto* amendment of the pleadings (per *Bridgeview*), the Motion makes no effort to identify the actual claims pled or explain how the proposed classes satisfy Rule 23, particularly in light of the basic notion that the entire point of a class is *to pursue the pled claims*.  Plaintiffs' reliance on platitudes and generalized statements of rights instead of articulating the claims in the operative pleading enhances the rigor with which a Rule 23 analysis must be undertaken in this case.

---

[24] As explained later, there are many individuals in this class who, in fact, received an indigence analysis.

**IV.**    **The Jailed Class, Second Declaratory and Injunctive Relief Class, and Classes 1, 3 and 5 All Fail On Both Their Legal Theories and Under Rule 23**

Again, the Jailed Class is omitted from any discussion in the Plaintiffs' Motion, and Classes 1, 3 and 5 are in no way valid substitutes for that class.  Moreover, each is premised on incorrect and unsupported legal and factual assumptions, including that every putative class member is entitled to an indigence analysis; that the "reasonableness" standard applicable to pretrial detentions is amenable to formulaic application; that no class member received an indigence analysis; and that damages can be calculated class-wide without individual proof.  A proper analysis of the viability of the proposed classes in light of Rule 23 requires a review of the Plaintiffs' legal theories – both as presented in the Motion and as actually pled in the Complaint.  This is where the Court must "probe behind the pleadings."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350.

**A.  Plaintiffs' Legal Theories and Corresponding Proposed Classes**

In their Memorandum, Plaintiffs set forth the three "constitutional precepts" on which they attempt to justify their proposed classes.  The first is offered in support of Class 1 and is articulated as "conditioning an arrestee's release on the payment of a monetary sum without an individualized inquiry into ability to pay or consideration of non-financial alternatives," in violation of "both the Due Process and Equal Protection Clauses of the Fourteenth Amendment."  Memorandum at p. 4.  The second is offered in support of Class 3 and is articulated as arresting individuals "on warrants and subsequently [failing] to bring the arrestee before a judge," which Plaintiffs contend "violated their substantive due process rights" only "if" such detention "shocks the conscience given the totality of the circumstances."[25] Memorandum at p. 5.  And the third is offered in support of Class 5 and is articulated as a requirement that Florissant "swiftly bring [warrantless] arrestees before a

---

[25] It is immediately clear that this standard is not amenable to class wide treatment, as discussed further below.

neutral judicial official for a probable cause determination," and while the Plaintiffs do not identify the constitutional provision undergirding this precept, their reference to *Gerstein v. Pugh*, 420 U.S. 103, 113, 95 S. Ct. 854, 862, 43 L. Ed. 2d 54 (1975) reveals that this is a Fourth Amendment claim.

The error in Plaintiffs' articulations of each of the foregoing three "precepts" and their incompatibility with both the claims pled in the Complaint and the proposed corresponding classes are each addressed in turn below.  However, it first bears considering the definitions of the terms "indigence" and "bond," as the Plaintiffs have confused each of these definitions in their Motion.

Unquestionably, "indigence" is at the forefront of Plaintiffs' case.  The concept is invoked by Plaintiffs in the opening paragraphs of their Complaint and incorporated in the very definition of each of their damage classes, even if without any consistent or functional definition.[26]  "By definition an indigent is incapable of meeting *any* money bail requirement."  *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (emphasis added).  This definition must be recalled each time indigence is invoked by Plaintiffs.

A "bond" refers to the setting of money bail, which purpose is "to insure the defendant's appearance and submission to the judgment of the court."  See *Reynolds v. United States*, 80 S. Ct. 30, 32, 4 L. Ed. 2d 46 (1959).  Once that purpose is served, bonds are released to the arrestee or, per the *court's* discretion, disbursed to "those with superior claims on the funds."  See *United States v. Higgins*, 987 F.2d 543, 548 (8th Cir. 1993).  The bond is not a "fine" or "fee" or "surcharge" or "cost" or "debt."  With this in mind, Defendant turns to the Plaintiffs' "precepts."

---

[26] For instance, Plaintiffs use the term "poor" throughout their complaint alongside the term "indigence," but "have not defined the term 'poor' with reference to any absolute or functional level of impecunity."  *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 20, 93 S. Ct. 1278, 1290, 36 L. Ed. 2d 16 (1973).

1.  **Precept #1 for Class 1: "conditioning an arrestee's release on the payment of a monetary sum without an individualized inquiry into ability to pay or consideration of non-financial alternatives."**

The Plaintiffs' first mechanism for expanding their classes was the inclusion of "bonds" in their Class 1 definition where it is absent in their pled Jailed Class definition. The inclusion of "bonds" necessarily expanded the threshold for class membership beyond purely judgment debtors, to anyone held pursuant to a bond – virtually any arrestee. The second mechanism for expanding their classes involves an effort to reframe the claims in the Complaint to include non-indigent members, notwithstanding that every count of the Complaint is asserted on behalf of allegedly indigent plaintiffs. Therefore, *the classes that Plaintiffs now seek to certify include putative plaintiffs who have no claim articulated in the Complaint*. The net effect of these twin expansion efforts is the creation of an expansive class replete with fundamentally different claims based on a virtually unlimited variety of circumstances (clearly failing Rules 23(a) and (b)).

Count I, which purports to seek redress for jailing for an inability to pay, comports with the "Original Jailed Class." It is directed solely toward "money *owed* to the government" and "*debts* allegedly *owed* for traffic and other minor offenses." [ECF 204 at p. 43 ¶¶168]. These are not bonds. The Plaintiffs as alleged in Count I are clearly judgment debtors. Since substitute Class 1 now includes bonds, it necessarily includes non-judgment-debtors, and its membership cannot pursue the claims set forth in Count I.

Furthermore, Count I is directed *solely* at the rights of the allegedly indigent and *not* the non-indigent. In fact, the Plaintiffs expressly *excluded* the non-indigent from this count, to-wit: "At any moment, a *wealthier person in the Plaintiffs' position* could have paid a sum of cash and been released from jail. Defendant's policy and practice of keeping Plaintiffs in its jail *unless and until they are able to pay* arbitrarily determined and constantly-shifting sums of money violates

the Fourteenth Amendment." *Id*. (emphasis added).  Count I is clearly directed to the rights of the indigent under the equal protection and due process clauses.  Since Class 1 is not limited to indigent plaintiffs, its membership cannot pursue the claims set forth in Count I.

Count III is likewise expressly directed at vindicating the rights of the indigent under the Fourth and Fourteenth Amendment, with its chief complaint being the use of a "pre-fixed bail schedule" that benefited only those able to pay it; Plaintiffs allege in pertinent part:

> The Equal Protection and Due Process Clauses prohibit the City's arbitrary and indeterminate post-arrest detention *as a result of the City's use of a pre-fixed cash bail schedule whereby initial cash release amounts were arbitrarily set without any inquiry into a person's ability to pay*. As a result, *those arrestees able to pay are released immediately while those who cannot pay are detained indefinitely without any meaningful legal process to inquire into their ability to pay* the amounts demanded by the City.

[ECF 204 at p. 43 ¶¶172] (emphasis added).  Again, the focus of this Count, and throughout the Complaint, is on those *unable to pay*.  Likewise, Count V is also specifically directed at the equal protection rights of the indigent.  Again, since Class 1 is not limited to indigent plaintiffs, its membership cannot pursue the claims set forth in Counts III or V.  Counts II and IV are abandoned.

Thus, Counts I, III and V are the only counts which the proposed Class 1 *could* even attempt to pursue, and yet no such class can be certified because each claim requires the Plaintiffs to prove the indigence of each person.  First, such a restriction is necessitated by the Complaint itself, alleged *on behalf of the allegedly indigent* and therefore necessarily limiting relief to indigents. See *Sylvan Beach v. Koch*, 140 F.2d at 861.  Secondly, the indigence of *each class member* must be proven to determine whether they belong in the class *and* the nature of their claims.

### Actual Indigence Must Be Proven

In their Motion, Plaintiffs argue that the right to an ability-to-pay-inquiry upon initial detention does not require actual indigence. [ECF 167-1 at p. 5].  However, the law that the

22

Plaintiffs cite does not support this proposition.  In fact, as the case law bears out, actual indigence is a critical part of the adjudication of these claims, particularly in the context of a claim for class-wide damages based on equal protection and due process.  The universe of factors related to indigence determination renders class certification inappropriate and, in fact, impossible.

Rainwater recognizes that "imprisonment *solely because of indigent status* is invidious discrimination and not constitutionally permissible."  *Pugh v. Rainwater*, 572 F.2d at 1056 (citations omitted, emphasis added).  Likewise, "the incarceration of those *who cannot meet* a master bond schedule's requirements, without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements."  *Walker v. City of Calhoun, GA*, 901 F.3d 1245, 1258 (11th Cir. 2018) (cleaned up) (emphasis added).  Despite Plaintiffs' argument, the government is *not* procedurally required to determine indigence *before* an individual is jailed and his initial bond is set by the Court, nor is it prohibited from adopting a bond schedule.  What *is* required is "meaningful consideration" of alternatives to bond *when faced with an arrestee's indigent status* (i.e., one "*who cannot meet*" bond requirements), in order to prevent the invidious discrimination of detention *solely because of* indigence.  Moreover, critical to the issues raised here is how courts have construed what constitutes such "meaningful consideration" and at what point in the process such consideration must occur.

Bond schedules are not themselves unconstitutional, nor do they trigger "heightened scrutiny."  *Walker v. City of Calhoun, GA*, 901 F.3d at 1258.  The government has a "vital" and "compelling interest in assuring the presence at trial of persons charged with crime," tempered by the constitutional guarantees of the presumption of innocence, equal protection, and due process.  *Id*.  Those competing interests are both *presumed served* when conditions of bond are reviewed within 48 hours of arrest.  *Id*.; see also *ODonnell v. Harris County*, 892 F.3d 147, 160 (5th Cir.

2018).    Still, *depending on individual circumstances*, a greater or lesser time may be constitutionally permissible or not. *Walker v. City of Calhoun, GA*, 901 F.3d at 1258 FN 13.

Either way, when Plaintiffs argue that bond conditions are prohibited for the indigent without allowing a permissible (even presumptively reasonable) period of pretrial detention in advance of an individual bond review, they misstate the law and the rights afforded to any proposed class.   As discussed further in the next section, they ignore the 48-hour presumption of reasonableness and the necessarily individual inquiry required to rebut that presumption.  Plaintiffs likewise misstate the law when they assert that the *actual* indigence of a putative class member is immaterial to whether *or what* constitutional rights have been denied.  In fact, actual indigence determines the specific protections implicated and the right to recover damages. If a putative class member is not indigent, then he/she has no right to recover damages based on the alleged failure to take steps to determine that fact.

The equal protection and due process protections at issue in this case (i.e., protecting against the invidious discrimination of imprisonment solely for indigence) are implicated when the incarcerated arrestee cannot meet *any* money bail requirement.  *Pugh v. Rainwater*, 572 F.2d at 1057.  By definition, the equal protection guarantee afforded *to indigent arrestees* concerning the imposition of bond are not implicated when the arrestee is not, in fact, indigent.  "The first step in an equal protection analysis is determining whether the plaintiffs have demonstrated that they were treated differently than others who were similarly situated simply *because they belong to a particular protected class*."  *Roubideaux v. N. Dakota Dept. of Corr. & Rehab.*, 523 F. Supp. 2d 952, 966 (D.N.D. 2007), *aff'd,* 570 F.3d 966 (8th Cir. 2009) (emphasis added).  If a putative class member *is* capable of meeting *some* money bail requirement, then he cannot be said to have been jailed "*solely* because of indigent status."

In the Complaint, the Plaintiffs expressly bring their due process and equal protection claims on behalf of a proposed indigent class related to the collection of debts.  The Motion then adds bonds, expanding the class to non judgment-debtors.  Then, after having so expanded the class, Plaintiffs attempt to expand further through a selective quotation of law, citing *Cain v. City of New Orleans*, 327 F.R.D. 111, 124 (E.D. La. 2018) as stating that "a putative class member's right to an ability-to-pay inquiry does not depend on indigence; the ***procedural protections required by the Supreme Court***… apply equally to indigent and non-indigent individuals." [ECF 167-1 at p. 5] (noting an omitted citation) (emphasis added)].

Despite pleading their case solely on behalf of indigents and invoking the equal protection and due process rights of indigent individuals, Plaintiffs invoke the foregoing quote from *Cain* to now suggest that the actual indigence of the putative class members is immaterial in this case; however, they omit *Cain's* citation to *Bearden v. Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983), in which the Supreme Court stated:  "We hold, therefore, that *in revocation proceedings for failure to pay a fine or restitution*, a sentencing court must inquire into the reasons for the failure to pay."  *Id*. at 672 ((emphasis added)).  Thus, the "procedural protections" contemplated in *Bearden* (and extending to the non-indigent) involved judgment debtors facing probation revocation proceedings and incarceration solely for failure to pay a fine; not the imposition of a bond.  *Beardon* does not support Plaintiffs' position that a non-indigent has a procedural due process right to an indigence hearing in connection with the imposition of a bond, particularly in light of other process providing a means to secure release, i.e., a bond schedule.

Plaintiffs cite no authority for such right.  As recognized in *Rainwater*, "utilization of a master bond schedule provides speedy and convenient release for those who have no difficulty in meetings its requirements."  *Pugh v. Rainwater*, 572 F.2d at 1057.  *Rainwater* does not require that

the non-indigent be provided an indigence hearing in connection with the imposition of a bond; the bond schedule itself provides the process by which a moneyed person can secure her virtually immediate release. She requires no hearing and, in fact, may not desire a hearing. She has posted a refundable security assuring her appearance in court. She owes the government no debt. Not having the hearing that she did not need (or want), involved no debt collection, and served no purpose, violated no right and caused no damage. The mere academic possibility that she *might* have been indigent (which is definitionally disproven by her payment), does not implicate the procedural protections articulated by the Supreme Court in *Bearden*.

Plaintiffs' argument to the contrary ignores the thrust of their actual claims, which is the protection of the indigent who, per Plaintiffs' own repeated allegations, seek relief arising from their "imprisonment for *inability to pay*." This *requires*, without exception, a determination of which putative class members are actually indigent. As the Eleventh Circuit recognized:

> The *sine qua non* of a *Bearden*- or *Rainwater*-style claim, then, is that the State is treating the indigent and the non-indigent categorically differently. Only someone who can show that the indigent are being treated systematically worse solely because of [their] lack of financial resources—and not for some legitimate State interest—will be able to make out such a claim. *Those who simply find their own bail conditions too onerous must proceed under the Eighth Amendment's Excessive Bail Clause unless they can point to a separate due process violation.*

*Walker v. City of Calhoun, GA*, 901 F.3d at 1260 (emphasis added). Plaintiffs' efforts to suddenly seek to add non-indigent class members smacks of an unpled 8th Amendment claim. Plaintiffs cannot simply allege some constitutional wrong and call it "due process."[27] The foregoing law makes clear that the resolution of any claim to be pursued by Class 1 (including but not limited to Counts I, III, and V) requires a determination of *actual* indigence. Plaintiffs make no attempt to make this identification, and from the evidence cannot do so.

---

[27] Though they certainly attempt to do so in connection to Class 3, as discussed further below.

## ***When* is an Indigence Analysis Required?**

The Jailed Class requires that its members have not been provided an opportunity to prove indigence "prior to jailing," and Class 1 shares this requirement [ECF 167-1 at pp. 2-3].  This is not the legal standard.  Indeed, in virtually all instances (e.g., warrantless arrest or arrest pursuant to a failure to appear warrant) it is literally not possible for the municipal court to inquire into ability to pay before detention because the judge has not had any interaction with the individual. The appropriate legal question is the reasonable promptness of the review of the bond following detention - which is presumed reasonable, such as to provide **immunity from systemic attack** (e.g., a class action), if had within 48 hours.  See *Id.* at 1266 ("Indigency determinations for purposes of setting bail are presumptively constitutional if made within 48 hours of arrest.").  The reasonableness standard derives from *Gerstein v. Pugh*, 420 U.S. 103, 113, 95 S. Ct. 854, 862, 43 L. Ed. 2d 54 (1975) in which the Supreme Court specifically also rejected as an "intolerable handicap" any requirement of pre-arrest magistrate review of probable cause.  Any pre-jailing requirement for indigence hearings would be no less intolerable.

Plaintiffs ignore this critical issue because the "reasonableness" standard is, by definition, not amenable to formulaic, class wide determination.  The 7th Circuit recognized this reality in *Portis v. City of Chicago, Ill.*, 613 F.3d 702 (7th Cir. 2010) when it decertified a class of arrestees seeking a bright-line rule limiting detention of individuals arrested on non-jailable ordinance violations to two hours after completion of administrative steps necessary for release.  Citing *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the court in *Portis* observed that the reasonableness standard in *Gerstein* was not amenable to inflexible bright-line, numerical definitions of "reasonable detention."  *Id.* At 704.  Moreover, that justifying such a rule was "impossible." *Id.*  "The premise of the class certification is that one rule applies to all members…

27

Because reasonableness is a standard rather than a rule, and because one detainee's circumstances differ from another's, common questions do not predominate and class certification is inappropriate." *Id.* at 705 (citing Rule 23). *Portis* is virtually dispositive of this motion.

### 2. Precept #2 for Class 3 – arresting individuals "on warrants and subsequently [failing] to bring the arrestee before a judge"

In their Motion, the Plaintiffs argue that "Florissant arrested thousands of members of Class 3 each year on warrants and subsequently failed to bring the arrestees before a judge." Memorandum at p. 5.  Plaintiffs attempt to articulate this precept as a matter of substantive due process, relying on the suggestion that "if" this alleged practice "shocks the conscience given the totality of the circumstances," then it violates substantive due process under *Hayes v. Faulkner County, Ark.*, 388 F.3d 669, 673 (8th Cir. 2004).  Yet Plaintiffs lodge this generic statement without any reference whatsoever to the time these individuals were held or the individual circumstances impacting that timeframe for each class member.  Plaintiffs offer no parameters whereby the Court can determine if Class 3 is an effective mechanism for pursuing a substantive due process claim based on each individual's "totality of the circumstances" relating to any pretrial detention.  This standard simply is not amenable to class treatment.

Moreover, this claim differs from what the Plaintiffs alleged in the Complaint. Presumably, the Plaintiffs attempt to invoke Count VI, which is the only count in the Complaint that pays a fleeting reference to "not presenting arrestees in court or unreasonably delaying presentment for days for no legitimate reason." Complaint at ¶178.  However, Count VI is actually directed toward the alleged practice of "issuing and serving invalid warrants."[28]  *Now*, the Plaintiffs raise no argument here concerning the validity of any warrants.  In fact, Plaintiffs appear to tacitly

---

[28] Complaint at 46, ¶¶177-178.

concede the validity of warrants in their reliance on issues in *Hayes*, including, *inter alia*, "whether the Due Process Clause prohibits an extended detention, without an initial appearance, following arrest by a *valid warrant.*" *Hayes v. Faulkner County, Ark.*, 388 F.3d 669, 673 (8th Cir. 2004) (emphasis added). This about-face is not inconsequential, as "the Fourth Amendment, not due process, provides the proper standard for reviewing whether the length of plaintiff's *warrantless* detention amounted to a constitutional violation." *Mitchell v. Shearrer*, 4:10-CV-819 CEJ, 2012 WL 918803, at *8 (E.D. Mo. Mar. 19, 2012). An unreasonable seizure claim in the face of a validly issued warrant based on probable cause is not viable. See, e.g., *Lund v. Hennepin County*, 427 F.3d 1123, 1126 (8th Cir. 2005) (citing *Hayes v. Faulkner County, Ark.*, 388 F.3d at 674). By now acknowledging the validity of the City's warrants, Plaintiffs attempt to convert their doomed Fourth Amendment unreasonable seizure claim into a Fourteenth Amendment substantive due process claim, despite making no allegation in the Complaint that any pretrial detention pursuant to a valid warrant "shocks the conscience," as required to state such claim.

Plaintiffs' have retreated to the "generalized notion of 'substantive due process'"[29] in place of the explicit protections of their unreasonable seizure claim in a bid to sustain a class; yet that claim is no more amenable to class treatment. Whether the length of a pretrial detention can be held to "shock the conscience" requires a case-by-case analysis that the class mechanism is not able to provide, particularly since "[t]he Eighth Circuit has not delineated with precision 'the duration and circumstances of detention that might result in a substantive due process violation.'"[30] The very nature of this claim defeats commonality and typicality.

---

[29] *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 813, 127 L. Ed. 2d 114 (1994).
[30] *Fant v. City of Ferguson*, 107 F. Supp. 3d 1016, 1035 (E.D. Mo. 2015), *on reconsideration,* 4:15-CV-00253-AGF, 2015 WL 4232917 (E.D. Mo. July 13, 2015) (citations omitted).

### 3. Precept #3 for Class 5 – "Florissant must swiftly bring arrestees before a neutral judicial official for a probable cause determination"

This precept itself is straightforward, relying on *Gerstein* and its progeny concerning the application of the Fourth Amendment to warrantless arrests.  Even in the Complaint (Count VII) the Plaintiffs invoke the Fourth Amendment in connection with a claim concerning pretrial detention of warrantless arrestees.  Complaint at p. 47.  Further, while the Plaintiffs do not articulate the *reasonableness* standard of *Gerstein*, they clearly acknowledge the 48-hour threshold recognized in *McLaughlin*,[31] pleading that the City "keeps people in jail for *longer than 48 hours* without a neutral finding of probable cause based on sworn evidence." Complaint at ¶ 180 (emphasis added).  However, no class pled, certainly not the Jailed Class, limits its membership to warrantless arrestees.  Although Plaintiffs attempt to correct this failed definition with replacement Class 5, that class is no more amenable to certification than the failed Jailed Class.

Again, the standard under *Gerstein* is "reasonableness."  A detainee generally has a right to a probable cause determination within a "reasonable" time after arrest; likewise, an indigent detainee has a right to bond review within a "reasonable" period.  By definition, a "reasonableness" determination is individual and fact-driven.  For example, as recognized in *McLaughlin*, on weekends arrests are higher and resources are limited.   Because individual circumstances necessarily differ, "the Fourth Amendment permits a reasonable postponement of a probable cause determination while the police cope with the everyday problems of processing suspects through an overly burdened criminal justice system."  *County of Riverside v. McLaughlin*, 500 U.S. at 55. Stated simply, "[b]ecause reasonableness is a standard rather than a rule, and because one

---

[31] *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S. Ct. 1661, 1670, 114 L. Ed. 2d 49 (1991)

detainee's circumstances differ from another's, common questions do not predominate and class certification is inappropriate". *Portis v. City of Chicago, Illinois,* 613 F.3d at 705.

In Class 5, Plaintiffs propose to essentially define "reasonableness" as those individuals "held past booking and assignment of bail."  There are two glaring problems with this approach: First, none of the data available in this case can demonstrate that measure on a class wide basis. Plaintiffs' expert Olsen merely supplies an average length of time of *detention* for those released on bond, and the Plaintiffs, without basis, offer that time period as a presumption (to which they are not entitled).  Second, in offering that the Class should be comprised of those having been held past the average 773 minutes calculated by Olsen, the Plaintiffs are substituting their own 12.8-hour reasonableness presumption in place of that 48-hour presumption discussed in *McLaughlin*. Again, "reasonableness" is simply not susceptible to determination on a class-wide basis. *Portis*.

### B. Failure of The Jailed Class, Second Declaratory and Injunctive Relief Class, and Classes 1, 3 and 5 to Satisfy Rule 23(a)

#### 1. Commonality - Rule 23(a)(2)

Commonality requires that all class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 349-50 (citation omitted).  "This does not mean *merely* that they have all suffered a violation of the same provision of law." *Id*.  at 350 (emphasis added).  Rather, that the claims be founded upon a common contention such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.  Each of the Plaintiffs' proposed classes (pled and unpled) contains putative members whose potential claims arise under different constitutional clauses and amendments.  This presents an incurable defect in commonality (as well as typicality).  *Id*. at 349 (recognizing, by way of

example, that all Plaintiffs claiming Title VII injury may nevertheless lack commonality because the separate claims available under the same title may lack a common contention).

Plaintiffs argue that there are multiple questions of law and fact common to the class, but this alone is insufficient: "**What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.**" *Id*. (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 131–132 (2009) (emphasis in original)).  Dissimilarities among the putative class members "have the potential to impede the generation of common answers." *Id*.   In this case, the impediment is staggering.  There are myriad reasons that Plaintiffs cannot establish commonality:

### Indigence vs. Non-Indigence

Plaintiffs' argument assumes that everyone in the class is entitled to recover damages for having been denied an indigence analysis, regardless of the proceeding at issue, regardless of the claim at issue, and regardless of *whether or not he/she was actually indigent*.  As discussed above, this is not correct. A fundamental element of the claim of anyone who seeks damages based on *discrimination because of indigence* is proof that he/she was, in fact, indigent. If he is not indigent, he has no right to recover.

The Plaintiffs' proposed classes which are directed toward claims based on discrimination against the indigent (most obviously under the equal protection clause) actually make no effort to determine and differentiate class members that are actually indigent from those who are not.  The reason for this is clear - such a determination is not possible on a class-wide basis.  It is fundamental that indigence must be determined on a case-by-case basis, yet the proposed class is comprised of no more than a speculative pool including *possible* indigents and non-indigents.  One group may

assert viable claims for discrimination based on their indigence, while the other cannot.  Such uncommon claims simply cannot generate common answers.

### No Distinction of Pre SB5 Versus Post SB5

Plaintiffs assert that *none* of the various putative class members at any time received an indigency analysis or were taken before a Judge for a first appearance. [32] They offer no support whatsoever for this conclusion. In fact, this bald contention is demonstrably incorrect. In August 2015, the Missouri legislature passed Senate Bill 5 ("SB 5") and thereafter the Missouri Supreme Court enacted wide-ranging changes to the municipal court system. To comply with the new laws, on Dec. 13, 2016, the Florissant Municipal Court set forth a new Operating Order that included, *inter alia,* (1) a mandate that a defendant's ability to pay be considered at the time a fine is imposed; (2) a requirement that prisoners not be held for longer than 24 hours without having the opportunity to be heard by a judge in person, by telephone, or video conferencing; and, (3) a mandate that warrantless arrestee be released within 24 hours if a warrant has not been issued by the Court. (Exhibit I, Declaration of Debra Mills, ¶ 5; Exhibit PPP attached to such Declaration). Both Debra Mills and Assistant Chief Randy Boden affirm that these procedures were followed thereafter.[33] (*Id*., and Boden/Mills Declaration, para VIII) and Plaintiffs offer no evidence to the contrary.[34] Accordingly, it is beyond dispute that anyone arrested (or fined) after Dec. 23, 2016 does **not** belong in this litigation. Moreover, Plaintiffs cannot demonstrate why SB5 does not moot their claims for injunctive relief, as discussed further below.

---

[32] As defined, Class 3 presents a "failsafe class" wherein members who are adjudicated to have received such analysis or hearing are excluded from the class and unbound by judgment.  See *Taylor v. Universal Auto Group I, Inc.*, 2014 WL 6654270, at *21 (W.D. Wash. Nov. 24, 2014) (denying certification of TCPA class defined to require receipt of prohibited calls).  This fatal flaw also defeats all of the remaining pled and unpled classes.

[33] This is not to suggest that no one received an ability to pay inquiry before this time frame, as many municipal court defendants were given payment plans and permitted to pay their fines over time. These individuals necessarily received an ability to pay inquiry.

[34] Indeed, Plaintiffs ignore the major changes that all Missouri Municipal Courts underwent in this time period.

**Damages**

Finally, there is no avenue by which actual damages can be determined on a class-wide basis. Just as with the "reasonableness" standard of liability, damages to any particular class member are legally and factually unique to that individual and must be based on actual injury.[35] It is self-evident that damages to compensate for one person's (presumably unconstitutional) incarceration is qualitatively and quantitatively not the same as the next.  In order to salvage their class action, Plaintiffs seek to homogenize each person's injury through their damages expert, William Rogers, the subject of the City's pending motion to disqualify, which is incorporated herein by reference.[36]  As thoroughly briefed therein, the damages of each class member are unique and individual and, for this reason as well, the class lacks commonality.

**Plaintiffs' Arguments for Commonality Fail**

Plaintiffs merely state that "the members of the Classes were injured by Florissant's same four unconstitutional practices," and then assign what they brand "among the most important, but not only, common questions of fact," without regard to which claim or "four unconstitutional practices" the alleged fact speaks, or how they support a viable claim on behalf of an identifiable class. [ECF 167-1 at p. 15].  For instance, "whether Florissant has a custom and practice of failing to conduct meaningful inquiries into ability to pay *before keeping arrestees in jail*" does not raise a question which answer resolves any claim that can be advanced by any class, since there is no viable claim for failing to provide an indigence inquiry "before keeping arrestees in jail."  Plaintiffs have proffered a supposedly "common question of fact" that ignores an allowable pre-hearing detention period subject to the *reasonableness* standard emanating from *Gerstein*.

---

[35] See generally 8th Circuit Jury Instruction 4.70; and *Farrar v. Hobby*, 506 U.S. 103, 112 (1992).
[36] ECF194, 195, and 199.

The same is true of Plaintiffs' proffered "most important common questions of law." [ECF 167-1 at p. 15]. "Whether keeping people in jail solely because *they cannot afford* to make a monetary payment is lawful," "whether people are entitled to a meaningful inquiry *into their ability to pay* before being jailed by Florissant for non-payment," "whether it is lawful for Florissant to keep arrestees in jail after arrest pursuant to a predetermined fixed cash bail schedule that does not take into account *ability to pay* before releasing arrestees after indeterminate periods of detention," and "whether Florissant can lawfully impose fines and/or fees on arrestees under the threat of incarceration and without inquiring into arrestee's *indigency*"[37] are all questions that need not be resolved for the non-indigent putative class member whose release was readily secured through the payment of bond. *Id*.

Plaintiffs' attempt to excuse the striking disparity in circumstances and questions of law among their putative class members by arguing that "although Class members may have entered Florissant's system through different charges, paid different fee amounts, and experienced different lengths of confinement that does not diminish the commonality among them." Memorandum at p. 15. In fact, it does. The putative class members were not merely affected in a *less-than-identical* fashion by common claims; rather, they are a patchwork of individuals with differing and disparate claims under equally disparate and differing circumstances. Plaintiffs argue that a mere allegation of a pattern of bad faith enforcement of law is sufficient to meet commonality despite factual differences in the class, citing *Ellis v. O'Hara*, 105 F.R.D. 556, 561 (E.D. Mo. 1985). However, *Ellis* did not turn on a mere allegation of a pattern of bad faith enforcement, but also expressly relied on the common fact that every member of the proposed class shared a distinct common situation. *Id*. None of the Plaintiffs' classes in this case enjoy such commonality.

---

[37] *Id*. (emphasis added)

## 2.  Typicality - Rule 23(a)(3); Adequacy – Rule 23(a)(4)

Typicality under Rule 23(a)(3) requires that "claims arise from the same events or course of conduct that gives rise to the putative class members' claims. The individual claims may feature some factual variations *as long as they have the same essential characteristic*s." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (citation, quotes omitted, emphasis added).  "The burden of demonstrating typicality is fairly easily met *so long as* other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (citations omitted, emphasis added.  The lack of typicality is therefore perhaps best exemplified by examination of the named Plaintiffs.

### The Named Plaintiffs Do Not Not Represent Typical Claims of the Classes

According to Plaintiffs, the proposed representatives present claims "typical" of Classes 1, 3, 4 and 5 because:

> Each was subjected to detention without an indigency inquiry (Class 1), indefinite detention without a first appearance (Class 3), and paid sums of money to Florissant under threat of being subjected to these unconstitutional practices (Class 4)… [and] held on a warrantless arrest without ever being brought before the Municipal Judge for a finding of probable cause [(Class5)] …

Memorandum at p. 17.  Plaintiffs simply gloss over critical distinctions like the fact that some of the Plaintiffs simply paid their bond or were represented by counsel, in some cases even by the very counsel bringing this lawsuit. That is, the named Plaintiffs, the majority of whom were represented by counsel in their proceedings before the municipal court in Florissant, purport to represent, *e.g.,* a class in which they have alleged that the "vast majority of those jailed for violating a payment plan condition imposed by the City court *were not represented by an attorney at any time* on the underlying traffic or minor charge, because of the City's policy and practice not to appoint counsel for the indigent." Complaint at ¶ 128.  The Plaintiffs are most atypical.

### The Named Plaintiffs Are Not Typical Representatives of the Jailed Class

A member of this class must have been (1) "jailed by the City of Florissant *for the non-payment of fines, fees* [with certain fees excluded], *costs, or surcharges* arising from cases in the City court" **and** (2) "*who were not provided an opportunity to prove indigence prior to jailing"* Memorandum at p. 3 (Emphasis added). None of the named Plaintiffs fit both criteria.

Thomas Baker's first two arrests resulted from warrants that were issued because he failed to appear in Court to address nonpayment of fines that he had previously agreed to pay.  Ex. II, Bolden/Mills Declaration, ¶ III(A) (1 & 2). Specifically, in both of the first two arrests, Baker had previously pled guilty to certain charges and been given a period of time to make payment. (*Id*.) If he could not make payment in the agreed time period, he was to appear in Court in order to advise the Judge and secure new payment arrangements.  He failed to pay as agreed and, more importantly, failed to appear in court. It is the failure to appear in court that led to the issuance of an arrest warrant, *not* a failure to pay the fine. Accordingly, he does not satisfy the first criteria of the Jailed Class of being incarcerated "for failing to pay fines."  Even had he satisfied this criteria, the fact that he was given time to make payment by the municipal judge necessarily means that his ability to pay was considered by the court. Again, he fails to meet the class criteria.

Baker's third and fourth arrests resulted from warrants issued because he simply never went to court in the first place to answer for other traffic citations (hereinafter referred to as a "FTA Warrant"). Again, this does not qualify as incarceration for the "non-payment of a fine, fee, cost or surcharge." *Id.*, ¶. III(A) (3 & 4). No such fine or fee had ever been assessed. Accordingly, any claim that Plaintiff Baker might have is not typical of the Jailed Class as defined.

Similarly, the arrests of the four other proffered class representatives do not fit the class definition: Nelson's lone arrest also resulted from an FTA Warrant (*Id*. ¶ IV); Bolden had two

arrests, one resulting from an FTA Warrant (*Id*., ¶ V(A) (2)) and the other because of outstanding warrants in other jurisdictions (*Id*., ¶ V(A) (1)); Walker also had two arrests, one resulting from an FTA Warrant (*Id*., ¶ VI(A) (1)) and the other because of outstanding warrants in other jurisdictions (*Id*., ¶ VI(A) (2)); finally, Bailey's two arrests resulted from multiple FTA Warrants on traffic charges that he failed to answer dating back to 2006. None of these individuals were even assessed fines prior to being arrested, and therefore certainly were not jailed for "non-payment of a fine, fee, cost or surcharge." Their claims, if any, simply do not fall within the class definition. No doubt this is another reason that Plaintiffs seek to pivot from their pled Jailed Class.

There is another, fundamental problem with this class: As mentioned above, Plaintiffs' expert did not even bother to identify the members of this class – for good reason. It is not possible to identify class members who were jailed "for failure to pay a fine." As noted above, no one was incarcerated for that reason. Rather, with respect to individuals who failed to pay fines, warrants were issued and arrests made <u>because such individuals did not come to court after the fine was assessed</u>.[38] Second, even if certain individuals are considered to have been arrested "for failing to pay a fine," in the REJIS aggregate data (used by Plaintiffs' expert to identify class members), these individuals are categorized as "FTA". This is the same description used for warrants issued to individuals who simply never came to Court in the first place. Accordingly, it is impossible to distinguish between those who were assessed fines and later did not pay and those who simply never came to Court. For this reason as well, this class cannot be certified.

### The Named Plaintiffs Are Not Typical Representatives of the Modified Classes 1, 3 or 5

As discussed above, with their "Modified Class 1" Plaintiffs seek to add the crucial word "bond" to the definition (i.e., the class would now purportedly include those who failed to "satisfy

---

[38] Defendant's Exhibit V, Deposition of former municipal judge Daniel Boyle ("Boyle Depo" at 214:24-218:10).

a bond, fine, fee, surcharge, or cost"). Of course, they seek to add "bond" to the definition because, as described above, the named-Plaintiffs do not fit the pled Jailed Class.  Plaintiffs fare no better with their proposed, unpled "Modified Classes".

Plaintiff Baker does not fit within this "Modified Class 1" with respect to three of his four incarcerations because he received an indigency analysis prior to the jailing in the first two instances (discussed above) and, in his third incarceration, he posted a modest $100 bond and was released (i.e. he cannot be said to have been held for failing to satisfy a bond when, in fact, he posted such bond). Ex. II, Boden/Mills Declaration, ¶ III(A) (1, 2, and 3)). Baker's fourth arrest also does not fit the class definition because he had outstanding warrants with St. Louis County. (Exhibit J to the Boden/Mills Declaration). Pursuant to § 221.510 R.S.Mo., Florissant was obligated to hold Baker until he was picked-up by St. Louis County.  This instance reveals another systematic problem with Plaintiffs' proposed class: their expert did not account for individuals being held for other municipalities.[39] Given that Florissant had a statutory obligation to hold such individuals, it cannot be concluded that they were "held for failing to satisfy bond."

Bolden's two arrests do not fit the Class 1 definition: Her first arrest resulted from outstanding warrants in other municipalities, and she was in touch with her attorney, Michael-John Voss of Arch City Defenders, while at the scene of the arrest.  (*Id*., ¶ V(A) (1)) (Ex. IV, Bolden deposition excerpts, p. 54).  Likewise, Bolden's second arrest does not qualify because again she was represented by Arch City Defenders. (*Id.*, ¶ V(A) (2)).  A central premise of Plaintiffs' case is that the indigent cannot afford legal counsel; an individual who had legal representation certainly

---

[39] As explained in his report, Olsen only tried to exclude "*charges* associated with warrants from other municipalities." Olsen Report at ¶16 (emphasis added).  Olsen therefore failed to exclude the *arrests* where an individual was subject to both a charge in Florissant and another municipality, leading to the errant inclusion of individuals in the class whom Florissant was statutorily obligated to hold pursuant to §221.510 R.S.Mo.

cannot be typical of the class Plaintiffs seek to certify. Moreover, in her second arrest, Bolden posted bond within 6 hours. One who was represented by counsel and posted bond is not typical of individuals incarcerated for failing to post bond.

Similarly, Walker's first arrest stemmed from warrants from other jurisdictions and in her second arrest she had to be held due to an outstanding warrant with Normandy. (*Id.*, ¶ VI(A) (1 & 2)). Bailey was also held because of outstanding warrants with other jurisdictions. (Ex. II, Boden/Mills Declaration, ¶ VII (A & B) and Exhibits XX, YY, ZZ, and AAA attached thereto). He was also represented by counsel at the time of each arrest. *Id*. Finally, Nelson posted a $200 bond after being booked and held just over 4 hours. (Ex. II, ¶ V).

None of the Plaintiffs are typical of those described in the class definition. Moreover, their inadequacy exposes further fundamental flaws with the Plaintiffs' methodology in identifying the purported members of this class. Accordingly, "Modified Class 1" should not be certified.

The named-Plaintiffs also do not satisfy the typicality element as to "Modified Class 3" (persons held on a warrant and not brought before a judge for a first appearance). Plaintiffs rely on the substantive due process clause in their claim related to this class. As discussed above, determination of whether the length of incarceration without a first appearance "shocks the conscience" is necessarily one that must be made on a case-by-case basis and is not amenable to class-wide treatment.  If this claim could be pursued on a class-wide basis, it would most certainly fall under the *Gerstein/County of Riverside* rubric. Any systematic challenge would have to employ the presumed 48-hour "reasonableness" test. (i.e., at best, only a class of persons held in excess of the presumptively reasonable period of 48-hours could be certified). No named-Plaintiff fits that criteria. The longest that any of the named Plaintiffs was held was 34 hours (Bailey's

4/16/12 detention. (*Id*. ¶ VII(A)). Indeed, Bailey is the only named Plaintiff who was held in excess of 24 hours. With no class representative, Plaintiffs obviously cannot proceed on this class.

Finally, Plaintiffs' "Modified Class 5" is doomed from the start. None of the Plaintiffs fit the class definition. Plaintiffs admit that four of the five named-Plaintiffs cannot represent the class but contend that Nicole Bolden can represent the class because of her first.  Memorandum at pp. 4, 12.  However, their expert, Arthur Olsen, *does not identify Bolden as a class member*.[40]

The absence of typicality in this case is not unlike that found by the Northern District of Illinois in *Williams v. Cook County*.[41]   In that case, the court was asked to certify a class of plaintiffs claiming that prolonged post-bond detention was unconstitutional.  *Id*.  Despite finding commonality in a class comprised of individuals who had all posted bond raising questions of "standardized wrongful conduct," the court found typicality lacking.  *Id*. Even recognizing that typicality is a liberal standard, the court specifically noted:

> [W]hile all the members of the proposed class were granted bond and then subsequently denied release, the specific facts surrounding each individual detention might warrant a different outcome. In other words, the constitutionality of each individual Plaintiff's detention—namely, whether Sheriff Dart violated his or her procedural due process right—is a question of fact requiring independent analysis and likely resulting in independent and varying outcomes.

*Id*.  Further, recognizing the fact that that some putative class members were provided independent assessments of whether they would be further detained or enrolled in a program, the court acknowledged the necessity of case-specific determination of constitutionality: "Such a case-by-case determination will require this Court to conduct a case by case analysis over whether that individual Plaintiff's prolonged detention was unlawful. Accordingly, Plaintiffs have failed to

---

[40] (Comparison of the tracking number on Bolden's booking sheet, Plaintiffs' Ex. X, with Olsen's purported list of Class 5 members, Ex. I to his report (Plaintiff's Exhibit 26), reveals that Bolden's arrest is not on such list).

[41] 2019 WL 952160, at *9 (N.D. Ill. Feb. 27, 2019), *aff'd in part, rev'd in part and remanded sub nom. Williams v. Dart*, 967 F.3d 625 (7th Cir. 2020), *reh'g denied* (Aug. 21, 2020).

show typicality." *Id. See also Robinson v. Gillespie*, 219 F.R.D. 179, 183 (D. Kan. 2003) (class definition was untenable because the "promptness" of a probable cause determination is necessarily a case-by-case determination).

Plaintiffs have failed to show typicality among any of their classes.  This lack of typicality also impacts the adequacy of the named Plaintiffs as class representatives under Rule 23(a)(4), in part because a "proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." *Id*. at 437 (citations omitted).  There is simply no feasible, right or just way for this Court to resolve the bevy of atypical claims before it without individual review.

### C.  Failure of The Jailed Class, Second Declaratory and Injunctive Relief Class, and Classes 1, 3 and 5 to Satisfy Rule 23(b)(3) – Predominance

The requirement of predominance under Rule 23(b)(3) is not satisfied if "individual questions . . . overwhelm the questions common to the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-97 (5th ed. 2012)). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,"[42] and "goes to the efficiency of a class action as an alternative to individual suits." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).  As discussed *supra*, individual inquiries dominate each issue presented.  Plaintiffs

---

[42] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249, 138 L. Ed. 2d 689 (1997)

have not proposed any cohesive damages class, but instead a disparate assemblage of unique individuals with unique experiences and circumstances giving rise to separate possible claims. Plaintiffs have not demonstrated predominance.

### D.   Failure of The Jailed Class, Second Declaratory and Injunctive Relief Class, and Classes 1, 3 and 5 to Satisfy Rule 23(b)(2) – Injunctive Relief

While the foregoing classes are clearly intended by Plaintiffs as a damages class, the Plaintiffs also glancingly purport to seek injunctive relief for every class.[43]  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Plaintiffs have failed to demonstrate any such refusal by the Defendant, even assuming *arguendo* that any of the injunctive relief sought by Plaintiffs was within control of the City and not the separate municipal court division.[44] Further, their Memorandum offers nothing more than an errant proposition that "Plaintiffs challenge the constitutionality of Florissant's schemes and demand relief that would apply to every member of the Classes, thus Rule 23(b)(2) certification is appropriate an necessary." Memorandum at p. 20.  This is plainly incorrect.

The Plaintiffs attempt to support their errant proposition with a misreading of the Supreme Court's observation *Dukes* that an "*indivisible injunction*" benefitting an entire class requires no individualized predominance inquiry.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 360.  Plaintiffs conclude this statement to mean that the mere fact that they seek "injunctive relief compelling Florissant to comply with the Constitution" will essentially protect *everybody*, and therefore justify the certification of these classes to pursue such an injunction.  *Dukes* supports no such conclusion,

---

[43] This is another clear and admitted departure from the Plaintiffs pled classes. [ECF 167-1 at pp. 2 and 19 FN5].  .
[44] See *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925-929 (8th Cir. 2020), *cert. denied sub nom. HAMILTON, HENRY v. HAYTI, MO, ET AL.*, 20-653, 2021 WL 78189 (U.S. Jan. 11, 2021) (citing § 479.100 R.S.Mo. and Missouri Rule of Criminal Procedure 37.43 (2003)).

as the Plaintiffs pay no attention to what constitutes an "indivisible injunction" and clearly ignore

what the Supreme Court calls the "key" to Rule 23(b)(2):

> The **key** to the (b)(2) class is **the indivisible nature of the injunctive or declaratory remedy warranted**—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them… In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. **It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.** Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 360 (citations and quotes omitted, emphasis added).

That is, the Plaintiffs obviously purport to seek relief enjoining a variety of alleged unconstitutional

practices in a variety of way, impacting a variety of Plaintiffs under a variety of circumstances.

The relief that the Plaintiffs seek is not "indivisible" in any sense of the word and does not become

so simply because the Plaintiffs repeatedly call it a "scheme."

In none of the Plaintiffs classes has there been a cohesive request for injunction that could

uniformly and consistently provide any relief to the class.  In addition, the Plaintiffs seek injunctive

relief that has been made moot by the implementation of reforms following the passage of Senate

Bill 5.[45]  When injunctive relief is moot or futile, it is appropriate not to certify the proposed class.

See, e.g., *Hammons v. Folger Coffee Co.*, 87 F.R.D. 600, 602 (W.D. Mo. 1980).

### V.     The Paid Fines Class, First Declaratory and Injunctive Relief Class, and Class 4 All Fail On Both Their Legal Theories and Under Rule 23

Plaintiffs argue that "Florissant uniformly failed to conduct an indigency inquiry when

imposing and collecting significant fines and fees on arrestees," and that such failure constitutes a

constitutional violation based on "well-established Supreme Court precedent that the government

---

[45] See §479.360 R.S.Mo. and revisions to Mo. Rule Crim. Proc. 37, *passim*; and Defendant's Ex. I ¶ 5.

cannot collect debts in a manner that deprives government debtors of debt-collection protections available to all other judgment debtors under state law." Memorandum at p. 9.  Plaintiffs invoke the equal protection clause. *Id*. at pp. 3, 10; ECF 204 at ¶ 176. However, Plaintiffs' statements of the law are simultaneously overbroad and incomplete and conflate the *imposition* of fines with their *collection*, as demonstrated by their own authorities.

In *James v. Strange*, 407 U.S. 128, 92 S. Ct. 2027, 32 L. Ed. 2d 600 (1972), the primary case on which Plaintiffs rely, the Plaintiff, an indigent criminal defendant who was provided counsel via the public defender's office, sought a declaration that a statute providing for the recoupment of expenses for state-provided counsel from an indigent criminal defendant was unconstitutional, as it *specifically applied only to persons who had been found indigent and provided counsel or defense services by the state.  James v. Strange*, 407 U.S. at 128 -129, FN 3. The Supreme Court found that the statute violated the Constitutional guarantee of Equal Protection because it specifically stripped indigent debtors who availed themselves to the constitutional right to counsel of the exemptions otherwise provided by rule.  *Id*. at 135.  In a key observation, the Supreme Court recognized that many states had such statutes providing for the recoupment of fees and expenditures paid on behalf of indigent defendants.  *Id*.  at 132.  The Court, observing that "state recoupment laws and procedures differ significantly in their particulars," recognized that "any broadside pronouncement on their general validity would be inappropriate."  *Id*. at 133.  The Court therefore specifically limited its review.  *Id. Strange* did not involve scrutinizing an "opportunity to prove indigence" or any proscription of governmental debt-collection efforts without the provision of such opportunity, but the denial of Equal Protection to actual indigents resulting from a specific state statute that actively targeted those indigent.  It did not justify a

wholesale avoidance of any payment of expenses or preferential treatment to judgment debtors merely because of indigence.

Nowhere does *Strange* support the Plaintiffs' underlying thesis that it is unconstitutional to impose or collect fines, fees, costs or surcharges from indigent defendants.  Nowhere in this case can Plaintiffs distinguish between the indigent and non-indigent individuals.  Nowhere does Plaintiffs class distinguish between individuals who either waived or specifically avoided any indigency inquiry, whether through the retention of private counsel or the simple uncontested payment of a fine or fee without appearance.

All of the cases cited by Plaintiff on this point are similarly distinguishable, [46] chiefly involving the rights of actually indigent people subjected to an often facially discriminatory recoupment procedure.  None prohibits the imposition or *threat* of the imposition of a fine, fee, cost, or surcharge as violative of equal protection.  In fact, the Supreme Court has specifically recognized the State's "fundamental interest in appropriately punishing persons-rich and poor-who violate its criminal laws," and a judge is not precluded from "imposing on an indigent, as on any defendant, the maximum penalty prescribed by law."  *Bearden v. Georgia*, 461 U.S. at 670 (citation omitted).  Plaintiffs' extraordinary relief of "restitution" of every single dollar ever paid to the municipal court over nearly a decade is unsupported at law and cannot sustain a class.

Even if the Plaintiffs advanced a viable theory for any such restitution, the Plaintiffs cannot prove through common, class-wide evidence that; (a) each putative class member experienced discrimination based on indigence; (b) each such class member is, in fact, indigent; and (c) each

---

[46] *Fuller v. Oregon*, 417 U.S. 40, 44, 94 S. Ct. 2116, 2120, 40 L. Ed. 2d 642 (1974); *Olson v. James*, 603 F.2d 150, 154 (10th Cir. 1979); *United States v. Bracewell*, 569 F.2d 1194 (2d Cir. 1978) and *Alexander v. Johnson*, 742 F.2d 117 (4th Cir. 1984).

class member did not receive an opportunity to prove that indigence. This facially impossible undertaking cannot support a class.

Plaintiffs rely on a factually unprovable (and legally unsound) assumption that every person paid every fine, fee, cost or bond because they were "under threat of being subjected to these unconstitutional practices." Memorandum at p. 17. Yet, the mere "threat" that someone may be subject to an unconstitutional practice is not itself an unconstitutional practice. For instance, a "threat of incarceration" does not support a viable constitutional claim because a "threatened seizure" is not colorable under the Fourth Amendment. *Schulz v. Long*, 44 F.3d 643, 647 (8th Cir. 1995). Even were such a claim viable, the determination of underlying facts is individualized and not amenable to class treatment. Many bonds, fines and fees, are paid perfectly voluntarily, and Plaintiffs cannot separate those payments from any allegedly coerced payments. Moreover, the voluntariness of payments is an inherently individualized inquiry.[47]

### A. Failure of the Paid Fines Class, Class 4, and the First Declaratory and Injunctive Class on Commonality and Predominance

Plaintiffs cannot meet their burden to demonstrate predominance, particularly because they cannot demonstrate commonality in the first place. This is evident upon analysis of the Plaintiffs' core contention that the City should not be permitted to retain the fines and fees collected because the putative class members were somehow coerced to pay them in way that private debtors are not subjected to. They fail to cite a single case certifying a class on a claim involving such a clearly subjective determination. The class action vehicle simply does not allow for such multiple, unique factual issues to be effectively litigated as it would require mini-trials as to all class members to

---

[47] See, e.g., *Chruby v. Global Tel Link Corporation*, 2017 WL 4320330 (W.D. Ark. Sept. 28, 2017) and *Endres v. Wells Fargo Bank*, 2008 WL 344204 (N.D. Cal. Feb. 6, 2008).

determine any right to recoupment, or whether refunds are precluded by, e.g., their own voluntary payment.  No determination of any issue pertaining to these payments can adjudicate the validity of the claims of each putative class member "in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 349-50.  No set of data or evidence presented by Plaintiffs can identify an actionable common denominator.  Commonality and Predominance fail.

### B. Failure of the Paid Fines Class, Class 4 and the First Declaratory and Injunctive Relief Classes on Typicality and Adequacy

The proposed "Paid Fines Class" includes individuals who paid various fines, fees and bonds under uniquely individual circumstances. Debra Mills, the Court Administrator for the Florissant Division identifies ten (10) different paths that defendants take through the court process.[48]  Some simply pled guilty and paid a fine through the Traffic Violations Bureau; others engaged an attorney and negotiated a plea deal through their attorney (in both scenarios the individual had no interaction whatsoever with the City or the court).  Some were found guilty at trial, while others had their charges dismissed and paid only court costs. With respect to the indigency component of Plaintiffs' class, many putative class members received payment dates and had those dates extended multiple times in multiple different court appearances in which they necessarily did receive an inquiry into their ability to pay. Finally, of course, there were the individuals who only paid their fines after being arrested, posting bond, and having that bond applied to their debt.

These are not mere factual variations among the putative class, but outcome-determinative, disparate circumstances and characteristics that govern which putative class members have standing to assert which claims and which are subject to the City's affirmative defenses.  The

---

[48] These ten (10) likely represent the overwhelming majority of cases, but do <u>not</u> include the many, many other scenarios in which defendants experienced two or three or four of the scenarios with respect to one charge. Ex. I, Mills Declaration, ¶ 3(i).

putative class simply lacks claims featuring the same essential characteristics. *Beaton v. SpeedyPC Software*, 907 F.3d at 1026 (citation, quotes omitted, emphasis added).  This lack of typicality and adequacy is particularly evident in review of the proffered class representatives.

There is one overriding glaring fallacy in the named-Plaintiffs' argument that they are typical of the putative class members and adequately represent them.  Plaintiffs complain of "trying to navigate this system for years without financial resources and without the assistance of a lawyer who understands the process." [ECF 2014 ¶139].  Yet, of the 17 traffic stops that resulted in fines being paid by the four named-Plaintiffs, 15 of them were resolved by way of plea agreements **negotiated by attorneys on behalf of the Plaintiffs**. Indeed, in the overwhelming majority of those instances, the attorneys were Arch City Defenders, the same firm that represents the Plaintiffs in this action.  See generally Ex. II, Boden/Mills Declaration.

It is virtually beyond comprehension as to how the named-Plaintiffs can complain about not receiving an inquiry into their ability to pay when (a) they were able to retain an attorney; and (b) that attorney presumably knows the law and is perfectly able to negotiate plea agreements involving reduced or dismissed charges, payment plans, and even community service. This is exactly what occurred here. For example, Arch City attorneys negotiated a plea agreement on behalf of Thomas Baker disposing of at least 6 charges that arose out of four different traffic stops with an Order of Probation and Community Service – no payment whatsoever.[49] Ex. II, Boden/Mills Declaration, ¶ III(B) (4, 5, 6, & 7). Beyond this example, the attorneys representing the named-Plaintiffs negotiated dismissal of many charges as well as payment plans (which necessarily include the component of "ability to pay") on their behalf. Simply stated, the named-

---

[49] Baker subsequently defaulted on the agreement (failing to complete the community service) and Arch City subsequently negotiated a payment plan and Baker has likewise wholly failed to make any payment pursuant to that agreement. All of these fines and costs remain unpaid. (*Id.*).

Plaintiffs represented by counsel either received an indigency hearing or had the ability to do so. They are in no way typical of the "impoverished" persons who do not have attorneys.

There are only two instances in which a named-Plaintiff paid a fine without representation of legal counsel: (1) Thomas Baker's May 17, 2012 ticket. In this instance, Baker pled guilty without counsel. However, he was given time to pay the fine. (*Id*. ¶ III(A) (1) and (B) (1)). As mentioned above, this obviously involved an inquiry into his ability to pay; and, (2) Allison Nelson's March 1, 2012 ticket. She failed to appear for Court; had an arrest warrant issued; and was arrested on Jan. 22, 2013. She posted $200 bond; pled guilty to the offense and was fined $150, which she paid by applying her bond. (*Id*. sec. IV). [50] By definition, if Ms. Nelson could afford to post bond, she was not indigent.

The proposed Paid Fines Class, Class 4 and the First Declaratory and Injunctive Relief Class also suffer from the same fatal deficiencies in both pleading and compliance with Rule 23 as identified with the Jailed Class and remaining Modified Classes as discussed *supra*. Those arguments are incorporated herein by reference.

## CONCLUSION

None of the classes proposed by Plaintiffs, pled and unpled, are ascertainable; each includes members who lack standing; all contain members with uncommon claims, differing circumstances and unique damages; and each presents claims involving fact-intensive inquiries which must be resolved on an individual basis.  The City of Florissant therefore respectfully requests that Plaintiffs' motion for class certification be denied.

---

[50] The remainder of her bond was refunded to her. (*Id*.).

Respectfully Submitted,

HELLMICH, HILL & RETTER, LLC

By:    */s/ Blake D. Hill*
          Blake D. Hill, #58926MO
          1049 North Clay Avenue
          Kirkwood, MO  63122
          Phone: 314-646-1110
          Fax:    314-646-1122
          E-mail: blake@hellmichhillretter.com
          *Attorneys for Defendant City of Florissant*

### Certificate of Service

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court this 12th day of April 2021 with an accompanying MOTION FOR LEAVE TO FILE SEALED DOCUMENT; further that on this same day I have separately served this document and all attachments upon opposing counsel via electronic mail as required by local rule.

          */s/ Blake D. Hill*