**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

THOMAS BAKER, et al.,                    )
                                         )
          Plaintiffs,                    )
                                         )
     v.                                  )          Case No. 4:16-CV-1693 NAB
                                         )
CITY OF FLORISSANT,                      )
                                         )
          Defendant.                     )

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Plaintiffs' Motion for Class Certification (ECF No. 167). The motion has been fully briefed, the parties presented oral argument, and the issues are ripe for consideration. For the reasons that follow, I will grant in part and deny in part Plaintiffs' motion, as described below.

**I.      Procedural Background**

Plaintiffs filed this "debtors' prison" action as a putative class action under Rule 23. Plaintiffs allege that their constitutional rights were violated by Defendant City of Florissant's ("the City" or "Florissant") policies and practices of arresting and jailing individuals in inhumane conditions when these individuals could not pay bonds or other fines or fees, without inquiring into their ability to pay or considering alternatives to detention, without a neutral determination of probable cause to justify their continued confinement (in the case of warrantless arrests) or an initial appearance before a judge (in the case of arrests on warrants), and without affording them counsel.

Plaintiffs' original complaint was filed on October 31, 2016.  The First Amended Complaint was filed on December 13, 2016.  After significant discovery and over the opposition

of Defendant, the Second Amended Complaint was filed on March 8, 2021. Plaintiffs moved for leave to file a second amended complaint that proposed seven modified classes which reconfigured and added to the four original classes in the original and First Amended Complaint. On May 6, 2020, the Court granted in part and denied in part Plaintiffs' motion for leave to file a second amended complaint, granting leave to correct information but denying leave to add a new plaintiff, reconfigure and add class categories. (ECF No. 159.) On May 7, 2020, Plaintiffs filed a motion to reconsider and correct record, asking the Court to reconsider a finding and to include five of Plaintiffs' seven modified classes previously rejected by the Court. (ECF No. 160.)

Rather than seek an amendment to the deadline to move for class certification, on May 21, 2020, Plaintiffs filed the present motion for class certification while Plaintiffs' motion to reconsider was pending. (ECF Nos. 166-167.) In their motion, Plaintiffs seek certification of four of the seven modified classes[1] that were the subject of Plaintiffs' motion for leave to file a Second Amended Complaint, stating they believe the Court's ruling as to the requested modified classes was based on factual error. Plaintiffs further assert that "at the certification stage, Plaintiffs (and the Court) are permitted to seek certification of modified versions of the class definitions in their original Complaint, which Plaintiffs seek to do here." (ECF No. 167-1, at n.1.) Accordingly, Plaintiffs submitted alternate class definitions to the Court for certification, termed "Modified" and "Original" Classes, allegedly consisting of the same groups of individuals subject to Florissant's unconstitutional treatment. Plaintiffs assert that the only difference between the proposed classes is that the Modified Classes include smaller classes for each different jailing-based constitutional deprivation, whereas the Original Classes group the jailing violations together.

---

[1] Plaintiffs' amendments in the proposed second amended complaint included seven classes titled Class 1 through Class 7. In the motion for class certification, Plaintiffs abandon Classes 2, 6, and 7, and seek certification of four modified classes—Classes 1, 3, 4, and 5.

In response to the  motion to reconsider, Defendant filed a motion for contempt and sought an order that Plaintiffs may not seek certification of classes they were denied leave to include in their proposed second amended complaint. (ECF No. 173.) The Court ultimately denied Plaintiffs' motion to reconsider with respect to adding to and reconfiguring the original classes. The Court also denied Defendant's motion for contempt, finding they failed to establish a legal basis for the proposition that Plaintiffs cannot seek certification of classes they were denied leave to include in their complaint. (ECF No. 200.)

Defendant filed its opposition to the motion to certify on April 12, 2021, and Plaintiffs filed a reply on May 14, 2021. (ECF Nos. 217, 228.) On August 13, 2021, the undersigned heard oral argument from both sides on the motion. (ECF No. 239.)

## II.    FACTUAL BACKGROUND

Named Plaintiffs Thomas Baker, Sean Bailey, Nicole Bolden, Allison Nelson, and Meredith Walker were arrested and detained in the Florissant jail at various times. The following facts are taken from the Second Amended Complaint and evidence attached to the current motion.

### Thomas Baker

Baker was jailed in Florissant at least five times from 2010 through 2016, each time for failure to pay fines on minor municipal ordinance violations and for failure-to-appear charges. Baker has been arrested, charged, assessed bonds and fines, and imprisoned based on minor traffic offenses on at least the following occasions:

On January 17, 2013, Baker was taken into custody by Florissant police at the police station in Creve Coeur based on a warrant issued on September 12, 2012. The warrant was for an alleged traffic violation for which Baker was charged with cutting through a parking lot to avoid an

intersection, a violation which carries a maximum penalty of a $300 fine, and for failure to appear at a court date related to it, assigning a $200 bond, plus $125 in fees and costs.

On September 5, 2013, Florissant issued an arrest warrant for Baker for operating a vehicle with a defective muffler, a municipal code violation which carries a maximum penalty of a $300 fine and no jail time, and for failure to appear at a related court date. The warrant carried a $700 bond, and noted four charges for failures to appear, and an outstanding debt to Florissant of $625.50.

On December 19, 2013, Baker was arrested when he was stopped for allegedly speeding and driving without a seatbelt fastened. He was arrested on the September 5, 2013 warrant and for warrants outstanding in Berkley and Ferguson, Missouri.

On April 16, 2014, Florissant issued an arrest warrant for Baker based on the alleged December 19, 2013 speeding violation and another failure to appear charge. The April 2014 warrant carried a new $200 bond. On May 11, 2014, Florissant police took Baker into custody on the warrant. The narrative description of the arrest states Baker was held only on the failure to appear charge, and for charges in the Berkley and Ferguson jurisdictions. A new court date issued for September 3, 2014.

On July 17, 2014, Florissant issued yet another arrest warrant for Baker for allegedly improper vehicle registration tags, a municipal violation which carries a maximum penalty of a $300 fine and no jail time, and for two failures to appear. The July 2014 warrant carried a $400 bond. On February 20, 2015, Florissant police arrested Baker when he was pulled over for allegedly speeding and possessing improper vehicle registration. He was held for the speeding charge, the improper registration charge, and the four outstanding failure to appear warrants issued

by Florissant, St. Louis County, and the City of St. Louis. At no time did Florissant perform an inquiry into Baker's indigence or ability to pay.

## Sean Bailey

In February 2006, Bailey was pulled over, ticketed, and arrested in Florissant for allegedly speeding and driving with a suspended driver's license. At his initial court date for the traffic violations, the Florissant municipal judge announced that everyone was expected to make a payment against their traffic fines and anyone who was unable should prepare themselves to go to jail that evening. Bailey secured his release by entering a guilty plea and agreeing to a payment plan even though he could not afford to keep up with it. At his next court date, Bailey did not have enough money to make the required payment and did not return to court. As a result, a warrant issued for his arrest. Bailey has been jailed at least four times by Florissant based on warrants stemming from the original 2006 violations.

In November 2013, Florissant took Bailey into custody from the St. Louis City Justice Center, where Bailey had spent two months in the St. Louis City Medium Security Institution as a pre-trial detainee based on failure to pay a bond issued by St. Louis City. Bailey was given a $500 bond, which he was unable to pay.

Bailey was arrested on failure to appear charges stemming from the 2006 arrest on at least two occasions. On April 16, 2013, Bailey was arrested on a failure to appear charge stemming from the same traffic arrest issued in 2006 and on an outstanding warrant from the City of Ferguson. The Florissant warrant carried a $500 bond. Florissant police held Bailey at the city jail for thirty-six hours, then transferred him to the custody of the Ferguson police department with a Florissant court date 120 days later on August 15, 2013.

On August 15, 2013, a warrant issued for Bailey's arrest for failure to appear for the court date. The warrant carried another $500 bond. On November 15, 2013, Florissant police executed the warrant and arrested Bailey on the failure to appear charge while he was in custody of the St. Louis City police department.

During some of his stays in Florissant jail, the jail staff would attempt to negotiate with Bailey to pay various amounts of bonds, decreasing the amounts requested the longer he was held, until he was finally released either after payment or on his own recognizance if he was unable to pay any amount. Bailey never saw or appeared before a judge while he was in custody. At no time did Florissant perform an inquiry into Bailey's indigence or ability to pay.

**Nicole Bolden**

On March 20, 2014, Bolden was involved in a traffic accident and after a responding officer discovered Bolden had outstanding arrest warrants in three jurisdictions (Dellwood, Hazelwood, and Foristell) for unpaid traffic tickets, Bolden was arrested and taken to the Florissant jail. The arresting officer told her that she would have to stay in jail until she could pay her bond. Bolden was assigned a $400 bond on traffic charges issued after Florissant officers responded to the accident. The charges were for driving with a suspended driver's license and driving a vehicle with expired registration. Bolden told the jail staff she could not afford the bond and jail staff told her she would be released to Hazelwood sooner if she paid the bond.

On April 27, 2015, Bolden was arrested and jailed in Florissant on a warrant for failure to appear. She was assessed two $200 bonds and using funds from her late mother's life insurance policy she paid the bonds to be released. At no time did Florissant perform an inquiry into Bolden's indigence or ability to pay or take Bolden before a judge.

**Allison Nelson**

Nelson was jailed on at least one occasion for inability to pay fines and costs from traffic tickets. On January 22, 2013, Nelson was taken into custody on a June 26, 2012 warrant for failure to appear. The failure to appear stemmed from a citation for allegedly driving with expired registration, a municipal violation carrying a maximum penalty of $300 and no jail time. The warrant carried a $200 bond. Florissant released Nelson after her family paid her bond. At no time did Florissant perform an inquiry into Nelson's indigence or ability to pay.

**Meredith Walker**

Walker was jailed in Florissant at least twice. Her outstanding warrants stemmed from unpaid traffic tickets and failure to pay or failure to appear charges in connection with the traffic infractions. At no time did Florissant perform an inquiry into Walker's indigence or ability to pay.

Walker appeared in Florissant municipal court on multiple occasions. The municipal court judge never informed her of her right to an attorney, afforded her an attorney, or propose alternatives to payment of a fine. Over the past decade, Walker has paid more than a thousand dollars in fines to Florissant. When Walker has been unable to make payments, additional fines have been assessed against her, even when she has appeared in court.

On March 26, 2016, Walker appeared in the Florissant Municipal Court and stated she could not make a payment because she was unable to work and earn income while recovering from a torn ACL. The court gave Walker a one-month continuance even though she would be unable to work for ten weeks. When she appeared in court on April 21, 2016, still unable to make a payment, the court assessed additional fines against her.

**Second Amended Complaint**

Plaintiffs claim they have been jailed by the City of Florissant and denied access to its municipal court because they were unable to pay cash bonds or other debts resulting from minor traffic or ordinance violations. Plaintiffs' seven claims for relief assert that Florissant's unlawful conduct included: (1) jailing them for their inability to pay the City, or by forcing them to make payments in order to avoid jail; without providing an indigence analysis (Fourteenth Amendment); (2) imprisoning them without appointing adequate counsel (Sixth and Fourteenth Amendments); (3) using indefinite and arbitrary detention (Equal Protection and Due Process Clause of the Fourteenth Amendment); (4) maintaining deplorable conditions in the Florissant Jail (violation of due process and constitutes impermissible punishment); (5) using jail and threats of jail to collect debts owed to the City (Equal Protection Clause of the Fourteenth Amendment); (6) issuing and serving invalid warrants, including those based solely on nonpayment of monetary debt (Fourth and Fourteenth Amendments); and (7) extended detention of the warrantless arrestees without a neutral judicial finding of probable cause based on sworn evidence (Fourth and Fourteenth Amendments).

**Proposed Classes: Modified Classes and Original Classes**

Plaintiffs seek certification of four of the seven "Modified Classes"[2] that were the subject of Plaintiffs' motion for leave to file a Second Amended Complaint, stating they believe the Court's ruling as to the requested Modified Classes was based on a factual error. Plaintiffs further assert they can seek Modified Classes because definitions do not have to mirror the complaint.

Plaintiffs seek certification of the following Modified Classes:[3]

---

[2] In the motion for class certification, Plaintiffs abandon proposed Classes 2, 6, and 7, and seek certification of four modified classes—Classes 1, 3, 4, and 5. *See* ECF No. 142-1 at pp. 36-37.

[3] The bold and underlined class names are the names used by Plaintiffs in their class certification briefing. However, at oral argument, Plaintiffs did not refer to classes as "Class 1," "Class 3," etc., instead they appear to use original

**Class 1 ("the Jailed Class")[4]**: All persons held in the City of Florissant jail on behalf of the City of Florissant for failure to satisfy a bond, fine, fee, (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)), surcharge, and/or costs without (1) an indigency hearing, (2) a finding that they were a flight risk, or (3) a finding that they were a danger to the community from October 31, 2011 to present (excluding individuals jailed pursuant to a domestic violence hold).

**Class 3 ("the Arbitrary Detention Subclass")**: All persons held in the City of Florissant jail, between October 31, 2011 to present, on a Failure to Appear warrant for the City of Florissant who were not brought before a judge for a first appearance or arraignment (excluding individuals jailed pursuant to a domestic violence hold).

**Class 4 ("the Paid Fines Class")**: All persons who paid fines and/or fees to the City of Florissant (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)) without an indigency hearing from October 31, 2011 to present.

**Class 5 ("the Warrantless Detention Subclass")**: All persons held past booking and assignment of bail in the City of Florissant jail on behalf of the City of Florissant without a warrant from October 31, 2011 to present. (excluding individuals jailed pursuant to a domestic violence hold).

(ECF No. 167-1 at 2.) In the alternative, Plaintiffs seek certification of the Classes contained in the operative First Amended Complaint (ECF No. 16) ("Original Classes") as follows:

**First Declaratory and Injunctive Relief Class:** All persons who currently owe or who will incur debts to the City of Florissant from fines, fees (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)), costs, or surcharges arising from cases prosecuted by the City of Florissant.

**Second Declaratory and Injunctive Relief Class**: All persons who, either because they owe debts to the City of Florissant or for any other reason, will become in the custody of the City of Florissant and thereby subjected to its post-arrest wealth-based detention procedures.

---

class names interchangeably with the modified class names and also referred to the classes by the conduct at issue, perhaps in an attempt to sidestep the issue of pleading classes in the alternative. The class name in parentheses is how Plaintiffs referred to the classes at oral argument.

[4] Plaintiffs argue that Modified Class 1 and the Original Jailed Class are one and the same. Florissant vehemently disagrees, arguing that the addition of the word "bond" to the definition expands the size of the class. *See infra.* Plaintiffs also argue that the Original Second Declaratory and Injunctive Relief Class members would be members of Class 1, 3, and/or 5.

**Paid Fines Class**: All persons, whether or not such person has ever been jailed, who have paid any amount to the City of Florissant to satisfy fines, fees (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)), costs, or surcharges arising from cases in the City court and who have not been provided an opportunity to prove indigence.

**Jailed Class**: All persons who have been jailed by the City of Florissant for non-payment of fines, fees (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)), costs, or surcharges arising from cases in the City court and who (1) were not provided an opportunity to prove indigence prior to jailing; (2) were not considered a danger to the community by notation in the City's file; and (3) were not designated as a flight risk at the time of jailing.

(ECF No. 167-1 at 3.) Plaintiffs contend that the Modified Classes do not expand the total number of Class Members. Rather, Classes 1, 3, and 5 are purportedly all groups of Class members comprising two of the Original Classes: the Jailed Class and the Second Declaratory and Injunctive Relief Class. Plaintiffs contend that the Modified Class 4 is comprised of the individuals as the Original Paid Fines Class and the First Declaratory and Injunctive Relief Class. Florissant opposes class certification on several grounds.

## III.    Standard of Review

To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a). Once that burden has been met, Plaintiffs must also satisfy one of the three subsections of Rule 23(b)." *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1118 (8th Cir. 2005). The Court must conduct a rigorous review under 23(a), bearing in mind that Plaintiffs assume the burden of proof to demonstrate that they meet the requirements of Rule 23 and that the class should be certified. *Coleman v. Watt,* 40 F.3d 255 (8th Cir.1994). The interests of justice require that when in doubt, any error, if there is to be one, should be committed in favor of allowing the class action. *In re Control Data Corp. Secs. Litig.,* 116 F.R.D. 216, 219 (D.Minn. 1986) (citations omitted). In evaluating a motion for class certification, the Court must accept Plaintiffs' substantive allegations as true and not assess the

likelihood of success on the merits. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Ultimately, the Court's duty is to ensure the proper exercise of Rule 23. That duty includes the obligation to create a new definition *sua sponte* if the parties' own proposals are not adequate or accurate. *See Metropolitan Area Hous. Alliance v. U.S. Dep't of Hous. & Urban Dev.,* 69 F.R.D. 633, 637 (N.D. Ill. 1976) (rejecting both parties' proposed class definitions and creating a new definition *sua sponte,* because "the definitions proposed by both parties are inadequate;" the court chose a definition "similar to the one originally proposed by the Plaintiffs and narrower than the second [one proposed by Plaintiffs]," and also "much broader than the one suggested by the defendants"); *Hagen v. City of Winnemucca,* 108 F.R.D. 61, 64 (D.Nev. 1985) ("Many circuits have held that the court itself may construct a definition of the class.").

District courts have broad discretion to determine whether to certify a class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997) ("The law gives broad leeway to district courts in making class certification decisions"); *Gilbert v. City of Little Rock, Ark.*, 722 F.2d 1390, 1399 (8th Cir. 1983) ("A district court has broad discretion in determining whether to certify a class, and its determination will not be overturned absent a showing that it abused its discretion."); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) ("We ordinarily afford the district court "broad discretion in determining whether to certify a class. . . "). At the certification stage, merits questions "may be considered to the extent—but only to the extent— that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013).

Rule 23(a) requires showing that the class meets requirements of "numerosity, commonality, typicality, and fair and adequate representation." *Postawko v. Missouri Dept. of Corrections*, 910 F.3d 1030, 1037 (8th Cir. 2018).

### Rule 23(b)(2)

Rule 23(b)(2) provides that a class action *may* be maintained if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *Ahmad v. City of St. Louis*, 995 F.3d 635, 643 (8th Cir. 2021). Because Rule 23(b)(2) classes seek only prospective relief, the notice requirements and preclusive effects of damages class actions are avoided. *See Wal-Mart*, 564 U.S. at 362 ("The Rule provides no opportunity for ... (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.").

Rule 23(b)(2) class certification may be proper when the primary relief sought is declaratory or injunctive. *See Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1035 (8th Cir. 2010). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). However, because unnamed class members are bound without an opportunity to opt out, a Rule 23(b)(2) class requires even greater cohesiveness than a Rule 23(b)(3) class seeking damages:

> Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. The members of a (b)(2) class are generally bound together through preexisting or continuing legal relationships or by some significant common trait such as race or gender.

*St. Jude*, 425 F.3d at 1122 (cleaned up). Thus, when named plaintiffs attempt "'to aggregate a plethora of discrete claims ... into one super-claim'" against a government agency, without

demonstrating "that the class members have been harmed in essentially the same way," the proposed Rule 23(b)(2) class is deficient. *M.D. ex. rel. Stukenberg v. Perry*, 675 F.3d 832, 848 (5th Cir. 2012) (cleaned up). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). When liability does not apply uniformly to the entire class, the relief sought becomes highly individualized, and "the cohesiveness necessary to proceed as a class under [Rule 23](b)(2) is lacking." *Ebert v. General Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016).

### Rule 23(b)(3)

Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The two requirements of Rule 23(b)(3) are referred to as predominance and superiority. Rule 23(b)(3) also provides four illustrative factors relevant to the predominance and superiority inquiries. *See Amchem*, 521 U.S. at 615, 117 S.Ct. 2231. Those factors are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

"Even if Rule 23(a)'s commonality requirement may be satisfied ... the predominance criterion is far more demanding." *Amchem*, 521 U.S. at 623-24, 117 S.Ct. 2231. "In adding 'predominance' ... to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* at 615, 117 S.Ct. 2231 (second ellipses in original) (quoting Fed. R. Civ. P. 23 advisory committee's notes). The predominance requirement "does not require that common questions be dispositive or significant," simply that they predominate. *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 699 (D. Minn. 1995). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).

## IV.  Discussion

### Consideration of Modified Classes vs. Original Classes

As an initial matter, Plaintiffs plead classes in the alternative. The Original Classes are the four classes in Plaintiffs' First Amended Complaint filed on December 13, 2016. (ECF No. 16.) When Plaintiffs sought leave to file a Second Amended Complaint more than three years later, they asked to "reconfigure and add" to the classes such that instead of the four Original Classes, there would be seven classes. The Court exercised its wide discretion in matters of case management and declined to allow the addition of a new plaintiff and to reconfigure and add class categories due to a lack of diligence on the part of the Plaintiffs. (ECF No. 201.) The Second Amended Complaint was filed to correct demographical information and typographical errors and

to remove paragraphs no longer supported by the information revealed in discovery. (ECF No. 204.) The Second Amended Complaint contains the four Original Classes only.

While their motion to reconsider the ruling on the Second Amended Complaint was pending, Plaintiffs moved to certify four of the seven Modified Classes. In the alternative, they seek certification of the four Original Classes. Florissant takes the position that Plaintiffs are barred from seeking modified classes, asserting that Plaintiffs' attempt to certify in the alternative is an inappropriate end run around the Court's denial of leave to amend and add classes in the Second Amended Complaint. Florissant also argues that if the Court certifies the Modified Classes, it cannot enter a judgment because they have not been pled.[5]

The undersigned is not troubled by considering the certification of class definitions different than the class definitions in the operative complaint. None of the legal authority cited by either party appears to be directly on point. Ultimately, the Court has discretion to certify appropriate classes that meet the requirements of Rule 23, even if those classes do not necessarily conform to the operative complaint. *See Ireland v. Anderson,* 2016 WL 7324104 (D.N.D. August 29, 2016) ("Defendants cite no authority for the proposition that a class definition must mirror the definition pled in the complaint, and the court has identified no authority for that position."); *Walls v. Sagamore Ins. Co.*, 274 F.R.D. 243, 249 (W.D. Ark. 2011) (considering classes in the alternative, including class definitions not in the operative complaint); *Bridgeview Health Care*

---

[5] Florissant also takes the position that Plaintiffs failed to brief argument regarding the Original Classes such that they have abandoned the Original Classes, citing *In re Aquila ERISA Litig.,* 237 F.R.D. 202, 213 (W.D. Mo. 2006) (unbriefed certification theory deemed abandoned). The Court is not persuaded by this argument. In *In re Aquila ERISA Litigation*, the court noted that Plaintiffs moved for class certification under Rule 23(b)(2), and even though their amended petition also claimed certification under Rule 23(b)(3), "the Court considers that Plaintiffs have abandoned the theory and the argument will thus not be considered." 237 F.R.D. at 213. Abandoning a certification theory is different than abandoning a class altogether. Moreover, unlike the *Aquila* plaintiffs, Plaintiffs here explicitly stated in their briefing that they seek certification of the classes in the alternative and seemingly used the Modified and Original Class names interchangeably, as they maintained that Class 1 and the Jailed Class were the same population.

*Ctr. Ltd. v. Clark*, 2011 WL 4628744, at *2 (N.D. Ill. Sept. 30, 2011) (rejecting Defendant's argument that changes in plaintiffs' class definition should preclude class certification). Florissant acknowledges that there is precedent for courts to allow *some* amendment of class definitions as a component of certification, and their reasons not to consider the Modified Classes do not persuade the Court. As was discussed in the Court's Amended Memorandum and Order dated February 25, 2021, Plaintiffs failed to show diligence in amending their complaint, and for that reason, the Court disallowed changes to the complaint that involved adding new claims and new named Plaintiffs. (ECF No. 201.) Notably, the parties' briefing and the Court's analysis focused on the propriety of adding *additional* plaintiffs and *additional* claims. *See id.*  In Plaintiffs' present motion, they seek to certify only four of the seven Modified Classes, and contend the four proposed Modified Classes do not require adding additional Plaintiffs or allowing new claims. Plaintiffs maintain that the Modified Classes are a reconfiguration of the classes originally  pled and attempt to make the class categories match the allegations in the complaint. They contend that Modified Classes 1, 3, and 5 are comprised of members of two of the Original Classes: the Jailed Class and the Second Declaratory and Injunctive Relief Class. Plaintiffs also contend that Modified Class 4 is comprised of members of the other two Original Classes: the Paid Fines Class and the First Declaratory and Injunctive Relief Class.

Florissant's most compelling argument for exclusion of the Modified Classes is that the Modified Class 1 expands the scope of putative class members by the inclusion of the word "bonds" because "bonds" was not included in the Jailed Class definition.[6] Plaintiffs contend that

---

[6] Compare the Original Jailed Class to the Modified Class 1:
**Jailed Class**: All persons who have been jailed by the City of Florissant for non-payment of fines, fees (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)), costs, or surcharges arising from cases in the City court and who (1) were not provided an opportunity to prove indigence prior to jailing; (2) were not considered a danger to the community by notation in the City's file; and (3) were not designated as a flight risk at the time of jailing.

the Court can certify a class using the definition of Modified Class 1 (or the definition of the Original Jailed Class) omitting the word "bond" and even without it, the class will include people who have been jailed for non-payment of bonds because bonds are "costs" or "fees" that arrestees need to pay to ensure their release, and the difference is merely terminology used.

The Court finds Plaintiffs' argument that whether the definition includes the word "bond" is of no consequence to be somewhat disingenuous. If the class definition did not need to include the word "bond" to include the people who failed to satisfy a bond to be released, then Plaintiffs would not have added it to the Modified Class 1 definition. The fact that Plaintiffs modified the definition to include the word necessarily means that they recognized that bonds are arguably not a fee or cost. Florissant argues that bonds are not a fee or cost and expand the scope of the case in a way they did not expect given the class definitions in the pleadings.

However, the flaw in Florissant's argument regarding notice of the inclusion of bonds is that the First Amended Complaint, filed in 2016, repeatedly identifies the imposition of bonds as one of Florissant's unlawful monetary-based detention policies. *See, e.g.*, ECF No. 16 ¶ 110 n.7 ("The City's policies and practices—and the terminology that it uses—are at times difficult to navigate…. Moreover, many of the release amounts (which City employees call 'bond' amounts) are purportedly classified as pretrial money bail for new charges, typically the charge of 'failure to appear.' Each of the named Plaintiffs was, according to the City, kept in its jail pursuant to a cash 'bond' relating to new 'failure to appear' charges. In any event, the City applies materially

---

**Class 1**: All persons held in the City of Florissant jail on behalf of the City of Florissant for failure to satisfy a **bond**, fine, fee, (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)), surcharge, and/or costs without (1) an indigency hearing, (2) a finding that they were a flight risk, or (3) a finding that they were a danger to the community from October 31, 2011 to present (excluding individuals jailed pursuant to a domestic violence hold).

the same money-based post-arret detention policies to arrestees charged with ne offenses as it does to arrestees who owe old debts."); ¶ 153 ("The City has kept hundreds of people in its jail for non-payment of cash "bond" in each of the past five years."); ¶ 14 ("It is and has been the policy and practice of the City to confine impoverished people who cannot afford to pay their fines and/or bond in grotesque, dangerous, inhumane conditions."); ¶ 56 ("Ms. Bolden told the jail officers that she could not afford the bond and asked why she had a bond on charges for which she had not yet been assigned a court date"). Indeed, Florissant was aware that this conduct was at issue and conducted discovery related to the imposition of bonds, including running search terms for variations of the word bond or bail, issuing discovery requests related to bonds, and being present at depositions wherein Plaintiffs' counsel questioned Florissant employees about Florissant's bond practices. Even if the Court was to believe Florissant was not aware that persons held for failure to pay a bond were potential class members, Florissant was put on notice upon receipt of the report of Arthur Olsen, Plaintiffs' expert who testified regarding the identification of members of the seven Modified Classes, including Modified Classes 1, 3, and 5. Olsen's report was disclosed on or around December 11, 2019, and he was deposed on or around February 10, 2020. The parties' discovery deadline was April 1, 2020 (ECF No. 141), nearly three months after the disclosure and deposition of Olsen. On the record before the Court, after learning during expert disclosures that Plaintiffs intended to include persons held for failure to pay bonds as part of their class definitions, Florissant did not seek more time to conduct additional discovery on this issue. Nor has Florissant identified what additional discovery they believe to be necessary if bonds are included in the certified class definition. Lastly, assuming that the inclusion of the word "bonds" necessarily expands the class, Florissant has cited no authority for the proposition that the class definition cannot be expanded in a motion for class certification.

For these reasons, the Court will consider the Modified Classes and will further address arguments related thereto in its discussion below.

## Standing

Florissant argues that each proposed class cannot be certified because each includes members who had not yet sustained damages on the date the original Complaint was filed, and therefore lacked standing. Citing *Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023 (8th Cir. 2010), and its holding that "a class cannot be certified if it contains members who lack standing," *id.* at 1034, Florissant argues that for any putative class to be certified, each known and unknown member of the class had to have suffered a claimed injury as of the date the Complaint was filed, October 31, 2016. In two other "debtors' prison" class actions in this district, the defendants made a similar lack of standing argument that was rejected. *See Webb v. City of Maplewood,* No. 4:16-CV-1703-CDP, 340 F.R.D. 124, 134-5 (E.D. Mo. 2021); *Fant v. City of Ferguson, Missouri*, No. 4:15-CV-00253-AGF, 2022 WL 2072647, at *6 (E.D. Mo. June 9, 2022). In *Webb* and *Ferguson,* the Court found the defendant's reliance on *Avritt* to be misplaced, explaining:

> A close reading of *Avritt* demonstrates that the Eighth Circuit's holding was simply that a named plaintiff cannot represent a class of persons "who could not have been injured by the defendant's conduct *at any time*" and, thus, "could never bring a suit themselves." *See id.* (citing *Avritt*, 615 F.3d at 1034) (emphasis in *Webb*). But nothing in *Avritt* contradicts the general rule that "[a] putative class action can proceed as long as one named plaintiff has standing" when the case was filed, *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017), provided that the class is defined in a manner that includes only those that would have suffered an injury under Article III, *Avritt*, 615 F.3d at 1034.

*Fant,* 2022 WL 2072647, at *6 (quoting *Webb,* 340 F.R.D. at 135). Florissant does not contest the standing of the individual named Plaintiffs, and the Court rejects Florissant's argument as to the purported lack of standing of putative class members who did not interact with Florissant prior to the inception of this case.

## Ascertainability

In addition to the Rule 23(a) prerequisites to class certification, "[i]t is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (quotation omitted). "A class may be ascertainable when its members may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017) (citing *Sandusky*, 821 F.3d at 997-98). Where a dispute arises regarding the method for identifying class members, an independent discussion of whether a class is ascertainable is warranted. *Id.* at 998.

Here, Florissant argues that none of the classes are ascertainable, relying heavily on criticisms of Plaintiffs' expert, Arthur Olsen. The Court will address Florissant's challenges to ascertainability as they relate to each separate class below.

## Modified Class 1 Under Rule 23(b)(3)

Plaintiffs seek Rule 23(b)(2) and (b)(3) certification of Modified Class 1 (which they deem to effectively be "the Jailed Class"). They define the class as follows:

> All persons held in the City of Florissant jail on behalf of the City of Florissant for failure to satisfy a bond, fine, fee, (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)), surcharge, and/or costs without (1) an indigency hearing, (2) a finding that they were a flight risk, or (3) a finding that they were a danger to the community from October 31, 2011 to present (excluding individuals jailed pursuant to a domestic violence hold).

Plaintiffs contend that members of this class were jailed for failure to pay or for failure to appear on minor violations and were held for periods of hours or days because they could not afford the bond, fines, or fees associated with their charges and were not provided an opportunity for an indigence inquiry. They seek injunctive relief in the form of requiring indigency hearings before

conditioning release from jail on payment; and monetary relief in the form of damages for the value of lost liberty during the periods of detention. All named Plaintiffs—Baker Bailey, Bolden, Nelson, and Walker—seek to represent this class.

<u>Rule 23(a) Requirements</u>

*Numerosity*

Rule 23(a)(1) requires that the members of a class be so numerous as to make joinder impractical. Florissant does not challenge Plaintiffs' assertion that the members of this class number in the thousands. This criterion is satisfied.

*Commonality*

Rule 23(a)(2) requires that the members of a class be united by a common question of law or fact. Commonality requires a showing that class members have suffered the same injury and that a class action has the capacity to generate common answers to resolve the litigation. *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 571 (8th Cir. 2015). Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to all. *See Downing v. Goldman Phipps PLLC*, No. 4:13CV206 CDP, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015).

Plaintiffs assert that members of Modified Class 1 were injured by Florissant's indigent jailing practices wherein Florissant kept people in jail after arrest solely because they could not afford a monetary sum in an effort to extract monies owed from them. Florissant failed to conduct meaningful inquiries into class members' ability to pay before keeping the arrestees in jail in violation of the Fourteenth Amendment. They contend that although class members may have entered Florissant's system through different charges, paid different fee amounts, and experienced different lengths of confinement, that does not diminish the commonality among them.

Florissant responds that there can be no commonality for any class because Plaintiffs'
definitions fail to distinguish between indigent and non-indigent class members.[7] Florissant argues
"'whether Florissant has a custom and practice of failing to conduct meaningful inquiries into
ability to pay *before keeping arrestees in jail*' does not raise a question which answer resolves any
claim that can be advanced by any class, since there is no viable claim for failing to provide an
indigence inquiry 'before keeping arrestees in jail.'" (ECF No. 220-1 at 34.) Judge Fleissig recently
rejected this argument in certifying a similar class:

> [T]he Court is not convinced that an inmate's right to an ability-to-pay inquiry,
> which courts have considered under both the Equal Protection and Due Process
> Clauses, depends on his or her indigence. *See, e.g.*, *Cain v. City of New Orleans*,
> 327 F.R.D. 111, 124 (E.D. La. 2018) ("[A] putative class member's right to an
> ability-to-pay inquiry does not depend on indigence; the procedural protections
> required by the Supreme Court in *Bearden* apply equally to indigent and non-
> indigent individuals."). Regardless, the proposed class is, by definition, limited to
> the indigent "given that most people would not willingly stay incarcerated if their
> financial circumstances permitted them to avoid it." *Webb*, 340 F.R.D. at 139
> (quoting *Dixon v. City of St. Louis*, No. 4:19-CV-0112-AGF, 2021 WL 616153, at
> *7 (E.D. Mo. Feb. 17, 2021)). In light of the City's failure to conduct indigency
> hearings or create any record from which to otherwise determine an individual's
> indigence, the Court concludes that the *Bearden* Class is sufficiently limited to the
> indigent.

*Fant v. City of Ferguson, Missouri*, 2022 WL 2072647, at *9. Here, the Court likewise finds
Modified Class 1 is sufficiently limited to the indigent. Common questions of fact and law unite
Plaintiffs' and the putative class members' claims. Accordingly, this criterion is satisfied.

*Typicality and Adequacy*

The typicality requirement of Rule 23(a)(3) is satisfied if the named plaintiffs assert claims
typical of the class. Typicality tends to merge with commonality, but the Eighth Circuit has given

---

[7] Florissant also argues that Plaintiffs cannot satisfy commonality because of the difference in Florissant's procedures
before and after the passage of Missouri Senate Bill 5. However, as discussed in the context of Rule 23(b)(2)
requirements for certification of injunctive classes, Florissant's argument is a merits challenge that is not properly
before the Court at this time. *See infra.*

it independent meaning by requiring a "demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Huskey v. Birch Telecom of Mo., Inc.,* No. 4:17-cv-02415-JAR, 2018 WL 4679738, at*3 (E.D. Mo. Sept. 28, 2018) (citing *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 562 (8th Cir. 1982)).

Rule 23(a)(4) requires that the named plaintiffs adequately protect the interests of the class. The adequacy factor serves "to ensure due process for absent class members, who generally are bound by a judgment rendered in a class action." *Rattray v. Woodbury Cty., Iowa*, 614 F.3d 831, 835 (8th Cir. 2010). Class representatives and their attorneys must be able and willing to prosecute the action competently and vigorously, and each representative's interests must be sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. *Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 553 (W.D. Mo. 2014). "The experience and capability of the representative's counsel bears upon the adequacy of the representative." *Rattray*, 614 F.3d at 836.

Florissant asserts typicality and adequacy arguments that overlap with arguments raised regarding commonality. Florissant further argues that none of the Plaintiffs are typical because they received an indigency analysis prior to jailing (*e.g.*, Baker); their arrest stemmed from outstanding warrants in another jurisdictions and Florissant was obligated to hold the arrestee to be picked up or sent to the other jurisdiction (*e.g.,* Bolden, Bailey, Walker); and/or they were represented by counsel and/or posted bond which is not typical of indigent arrestees incarcerated for failing to post bond (*e.g.*, Bolden, Nelson).

Judge Perry recently rejected these arguments when raised by another municipality opposing certification of a jailed class with substantially similar claims to Plaintiffs claims here. There, the Court explained:

The City misses the mark on plaintiffs' theory of liability for this Class.
The periods of detention for these three named plaintiffs ranged from 3 hours to more than 44 hours. Regardless of these varied durations and the plaintiffs' eventual release with or without payment of bond, it is the *fact* of their detention without *any* consideration given to their ability to pay to secure their release that is the thread that connects the legal and remedial theories of plaintiffs and the putative class members. And the City's established policy, practice, or procedure of not considering a person's ability to pay *at all* renders the presumptively reasonable 48-hour period of detention meaningless. As described by plaintiffs' counsel at the hearing, the policy of holding these persons without inquiring into their ability to pay served the City's purpose of extracting any monies it could before releasing them – whether it be full bond after 3 hours or a reduced bond or no bond as the 48-hour mark approached. The City held these persons as long as it could until either they could scrounge up some money for bond or an arbitrary decision had to be made to release them without payment of bond. Accordingly, as plaintiffs' counsel averred at the hearing, the delay in releasing these persons was merely for delay's sake. Given this alleged purpose for keeping these persons in jail – whether it be for one hour after booking, 7 hours, or 47 hours and 59 minutes – this detention is not "reasonable" as the City argues.

*Webb v. City of Maplewood, Missouri*, 340 F.R.D. 124, 141–42 (E.D. Mo. 2021) (emphasis in original); *see also Fant,* 2022 WL 2072647, at *11 (quoting *Webb*). The same is true in this case. Similarly, with respect to Florissant's argument regarding the Florissant police's obligation to detain arrestees on warrants from another jurisdiction, the conduct at issue is not the arrest itself, but the lawfulness of holding these persons in Florissant jails for a period of time for the purpose of collecting money before sending them to address their outstanding warrant in the next jurisdiction. Plaintiffs Baker, Bailey, Bolden, Nelson, and Walker satisfy the typicality and adequacy criteria of Rule 23(a) and are suitable Class Representatives for Modified Class 1.

<u>Rule 23(b)(3) Requirements</u>

The parties focus their discussion of Rule 23(b)(3) on the predominance inquiry. Plaintiffs assert the primary liability questions as to all of Plaintiffs' causes of actions are common to the putative classes and class-wide damages can be calculated according to a common methodology using Florissant's own records.

Florissant responds that individual inquiries dominate each issue presented and identifies differences in the individual circumstances of the named Plaintiffs, such as the circumstances that led to the arrest, the length of detention, and the terms of release. Florissant also argues that Plaintiffs have not proposed a cohesive damages class, pointing to their pending motion to disqualify Plaintiffs' damages expert.

Regardless of the differences surrounding each plaintiff's detainment, Plaintiffs' theories regarding Florissant's allegedly unlawful policies apply to all plaintiffs. *See Webb,* 340 F.R.D. at 142 ("[I]t does not matter if this detention was for an hour, a day, or a week. Nor does the amount of the bond matter. Nor does it matter if the bond was paid in full, was reduced, or not paid before release. Any period of detention based solely on a failure to pay without an inquiry into indigency is a common question subject to common proof."). For example, if Plaintiffs establish that Florissant had a policy or custom of jailing arrestees without any inquiry into ability to pay or consideration of non-financial alternatives, the question of whether such conduct is unconstitutional can be resolved once on behalf of all class members instead of individually for each of the thousands of putative class members. Florissant's liability for the alleged violations of constitutional rights can be established through common proof, including municipal court records, jail records, revenue records, and testimony of municipal employees.

The Court is also not swayed by Florissant's criticism of Plaintiffs' damages methodology.[8] Plaintiffs' data expert utilized arrest data to identify the individuals meeting certain criteria, at the direction of Plaintiffs' counsel, to identify members of each class. The data expert then calculated the number of hours each individual was jailed and/or the amount of fines paid. Then, Plaintiffs' economist calculated a value per hour of unconstitutional incarceration. Plaintiffs'

---

[8] A separate order denying Florissant's motion to exclude the expert report and testimony of Plaintiffs' economist is entered today.

methodology for calculating damages can be applied to all class members, and the individual assessments of damages for each class member do not erode Rule 23(b)(3)'s predominance factor. *See Webb,* 340 F.R.D. at 143; *Fant,* 2022 WL 2072647, at *12.

Florissant does not challenge the superiority of a class action. The Court concludes that certification of this class is superior to individual litigation. The class includes thousands of allegedly indigent persons who would be unlikely to commence litigation on their own behalf. *See D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) ("It is appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually."). Resolution of their claims in a single forum would also serve judicial economy interests.

Accordingly, the Court will certify Modified Class 1 under Rule 23(b)(3) and appoint named Plaintiffs Baker, Bailey, Bolden, Nelson, and Walker as Class Representatives. Plaintiffs' request to certify this Class under Rule 23(b)(2) for injunctive relief is addressed below.

## Modified Class 3 Under Rule 23(b)(3)

Plaintiffs seek Rule 23(b)(2) and (b)(3) certification of Modified Class 3. They contend that this is a subclass of Modified Class 1/the Jailed Class and refer to this group as an arbitrary detention subclass. They define the class as follows:

> All persons held in the City of Florissant jail, between October 31, 2011 to present, on a Failure to Appear warrant for the City of Florissant who were not brought before a judge for a first appearance or arraignment (excluding individuals jailed pursuant to a domestic violence hold).

Plaintiffs contend that Florissant arrested thousands of members of Class 3 each year on warrants and subsequently failed to bring the arrestees before a judge. Plaintiffs assert that Florissant's extended detentions of Class 3 members is in violation of their substantive due process rights. *See*

*Hayes v. Faulkner County,* 388 F.3d 669, 673 (8th Cir. 2004) (considering whether the defendant county's conduct was unconstitutional by analyzing (1) does the Due Process Clause prohibit an extended detention, without an initial appearance, following arrest by a valid warrant; (2) does the defendant's conduct offend the standards of substantive due process; and (3) do the totality of the circumstances shock the conscience). All named Plaintiffs—Baker Bailey, Bolden, Nelson, and Walker—seek to represent this class.

Rule 23(a) Requirements

*Numerosity*

Plaintiffs contend this class has more than 11,000 members. This criterion is satisfied.

*Commonality*

Plaintiffs contend that members of Modified Class 3 were injured by Florissant's practice of jailing plaintiffs indefinitely and without any meaningful legal process through which they can challenge their detention. They contend Florissant kept them confined unless or until they could make arbitrarily determined cash payments or until Florissant employees decided to release them for free violated the Due Process Clause. Plaintiffs seek relief in the form of timely individualized hearings to determine the necessity of bond and the arrestee's ability to pay. Plaintiffs also seek recovery of the general value of time spent in detention pursuant to the City's unconstitutional practices. Common questions of fact and law unite Plaintiffs and the putative class members' claims for relief. Commonality is satisfied.

*Typicality and Adequacy*

Florissant argues that the proposed class members' claims cannot satisfy the typicality criterion because the determination of whether the length of incarceration without a first appearance "shocks the conscience" in violation of due process is necessarily one that must be

made on a case-by-case basis and is not amenable to class-wide treatment. Florissant asserts only one named Plaintiff was held more than 24 hours (Bailey's 34-hour detention), and to make a systematic challenge, the class of persons held must be held in excess of the presumptively reasonable period of 48 hours. Florissant relies on *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) to argue that a 48-hour detention without a probable cause determination is presumptively reasonable. In *Riverside*, the Supreme Court held that the Fourth Amendment does not compel immediately determination of probable cause upon completion of the administrative steps incident to a warrantless arrest, but that jurisdictions must hold probable cause determinations as soon as reasonably feasible. *Id*. at 54-57. The Court also imposed a presumptively reasonable standard of 48 hours and concluded that counties who hold judicial determinations of probable cause no later than 48 hours after arrest are generally immune from systematic challenges. *Id.* at 56. However, the Court noted that a hearing within 48 hours may still violate the Fourth Amendment if the arrested individual could prove the probable cause determination was delayed unreasonably, such as delay for delay's sake. *Id.* at 56-57.

As other judges of this Court recognized in considering certification of classes of arrestees detained under similar circumstances in *Webb* and *Fant*, *Riverside's* 48-hour reasonableness test does not foreclose the possibility of class wide relief when the police do not plan to ever present the detainee to a neutral for a probable cause hearing. Here, Plaintiffs claim that Florissant was in the business of delay for delay's sake, and there was no plan to *ever* bring the arrestees before a judge. Instead, the putative class members were held until they made a payment that satisfied jail staff, or until an arbitrary decision was made to release the arrestee because they could not pay. Plaintiffs Baker, Bailey, Bolden, Nelson, and Walker satisfy the typicality and adequacy criteria of Rule 23(a) and are suitable Class Representatives for Modified Class 3.

Rule 23(b)(3) Requirements

For Modified Class 3, Florissant raises the same arguments to support its contention that Modified Class 1 fails to satisfy the predominance inquiry. The Court again disagrees. Furthermore, Florissant's contention regarding Plaintiffs' failure to distinguish between different types of "failures to appear" or narrow the list of arrestees to only those who were not brought before a judge for an initial appearance ignores Plaintiffs' position that regardless of the circumstances that led to detainment at the Florissant jail and regardless of the length of detention, *no arrestee* was brought before a judge for an initial appearance. Florissant's allegedly unlawful policies are subject to common proof and can be determined on a class-wide basis. Like Modified Class 1, the damages of Modified Class 3 can be calculated using Plaintiffs' methodology to assess damages for each class member, and such an individual assessment does not erode Rule 23(b)(3)'s predominance factor. Additionally, certification of this class is superior to individual litigation. *See Betances v. Fischer,* 304 F.R.D. 416, 432 (S.D.N.Y. 2015) ("It is appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.").

Accordingly, the Court will certify Modified Class 3 under Rule 23(b)(3) and appoint named Plaintiffs Baker, Bailey, Bolden, Nelson, and Walker as Class Representatives. Plaintiffs' request to certify this Class under Rule 23(b)(2) for injunctive relief is addressed below.

### Modified Class 5 Under Rule 23(b)(3)

Plaintiffs seek Rule 23(b)(2) and (b)(3) certification of Modified Class 5. They contend that this is a subclass of Modified Class 1/the Jailed Class and refer to this group as the warrantless detention subclass. They define the class as follows:

> All persons held past booking and assignment of bail in the City of Florissant jail on behalf of the City of Florissant without a warrant from October 31, 2011 to present. (excluding individuals jailed pursuant to a domestic violence hold).

Plaintiffs contend that Modified Class 5 members were subject to warrantless arrest and were held for hours or days without a neutral determination of probable cause to justify their continued confinement because Florissant never provided probable cause hearings to warrantless arrestees as a matter of course. Plaintiffs propose Bolden as the sole named plaintiff to represent this class.

As an initial matter, Florissant argues this class fails because no named Plaintiff can represent the class. This "warrantless detention" subclass of Modified Class 1 is comprised of persons held past booking and assignment of bail without a warrant. Bolden's Declaration states that Bolden was held by Florissant without a warrant based on alleged ordinance violations. (Pltffs' Exh. 19 ¶ 5.) However, Florissant points out that Plaintiffs' expert, Arthur Olsen, does not include Bolden on his list of Class 5 members. (Pltffs' Exh. 26.) Therefore, Florissant argues that Plaintiffs have no named plaintiff to represent Class 5.

Plaintiffs reply that there was a "slight discrepancy" in Olsen's report and attach a declaration to their reply brief "explaining the error and the minor changes made to rectify it." (ECF No. 228 at p. 20 n.11.) The changed made by Olsen added Bolden and 778 more arrestees to the proposed Modified Class 5.

In Olsen's original report attached to Plaintiffs' motion, he asserted that there were 2,252 arrestees in Modified Class 5. He calculated this population by taking Florissant's arrest data records as a starting point, and then excluded from the population arrestees with charges that had a warrant attached and arrestees with charges identified by counsel as being entered by jurisdictions other than Florissant. He also excluded arrests that contained at least one charge identified as a failure to appear, and arrests involving a potential domestic violence charge.

Then, using the more narrowed population, he determined the average time spent in jail by arrestees for booking and assignment was 773 minutes, and therefore excluded arrests where the arrestee spent 773 minutes or less in jail. These calculations led him to his conclusion that there are 2,252 putative members of Modified Class 5.

After Florissant pointed out in its opposition that Bolden was not included in the 2,252 arrestees, Plaintiffs' expert changed his findings. In his declaration, Olsen explained that when he made his original calculations, in excluding arrestees who had a warrant, he inadvertently also excluded the population of arrestees who had warrants issued by other jurisdictions and only had a charge *but not a warrant* issued by Florissant. One such arrestee is Bolden, whose March 2014 arrest was for her three outstanding warrants in other municipalities. (Florissant Police Department Incident Report, ECF No. 217-38, Def. Exh V ("Bolden was placed under arrest for her fugitive warrants…") During that arrest, Bolden was also charged with driving with a suspended license and driving with an expired vehicle license and assigned a $300 bond for each charge. (Booking Sheet, ECF No. 217-40, Def. Exh. X.) Bolden was held at the Florissant jail for at least 12 hours before being transferred to the next municipality. (Pltffs' Exh. 14.)

While Olsen originally identified 2,252 arrestees in Modified Class 5, he now identifies 3,031 arrestees. The changes in Olsen's calculations are as follows:

|  | December 2019 Report | May 2021 Declaration | Difference between Report & Declaration |
|---|---|---|---|
| Total Arrestees in Modified Class 5 | 2,252 | 3,031 | +779 |
| Total Number of Arrests | 2,571 | 3,399 | +828 |
| Average Hours in Jail Per Arrest | 28.74 | 32.03 | +3.29 |
| Total Hours Spent in Jail by Proposed Class | 73,900.32 | 108,868.67 | +34,968.35 |

In his Declaration, Olsen does not address whether he was required to adjust his calculation that the original average time spent in jail by arrestees for booking and assignment of bail was 773 minutes. Nor do Plaintiffs explain any of Olsen's last-minute changes in their briefing. The record before the Court does not illustrate whether in fixing the original errors, Olsen also adjusted the 773-minute threshold or narrowed the updated class population using the original 773 minutes. It is unclear to the Court whether such an adjustment would change the proposed class population further, or if it would impact Bolden's membership in the proposed class.

At oral argument, Florissant argued that Olsen's supplemental declaration should not be considered, as he was effectively amending his expert report, and Plaintiffs did not seek leave to do so. On the one hand, at first glance, Olsen's amendment appears to be for the sole purpose of fixing a calculation error. On the other hand, fairness may dictate that to allow this amendment, Florissant should be given an opportunity to question Olsen regarding this change and its impact on the case, and possibly time to amend Florissant's own expert reports in light of the error.

At this stage, discovery is closed, Olsen has not formally amended his expert report, and Plaintiffs have not sought leave for him to do so. In attempting to amend his report by way of their reply brief declaration, Plaintiffs do not take the opportunity in the brief to explain the changes, they merely refer to the Olsen Declaration, which does not sufficiently clarify the changes made to proposed Modified Class 5. Because Plaintiffs have presented insufficient evidence to show that Bolden or any named Plaintiffs meet the criteria of this class, the Court denies certification of the Modified Class 5. *See Amchem Prods.*, 521 U.S. at 625-16, 117 S.Ct. 2231 ("a class representative must be part of the class").

**Modified Class 4 Under Rule 23(b)(3)**

Plaintiffs seek Rule 23(b)(2) and (b)(3) certification of Modified Class 4. They contend that this class is comprised of members of the Original Paid Fines Class and the Original First Declaratory and Injunctive Relief class. Florissant does not argue the Modified Class 4 expands the membership broader than the Original Classes. Plaintiffs define the class as follows:

> All persons who paid fines and/or fees to the City of Florissant (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)) without an indigency hearing from October 31, 2011 to present.

Plaintiffs contend that Florissant imposed and collected fines and/or fees from Class 4 members without conducting an indigence analysis and under the threat of unconstitutional incarceration in violation of the Equal Protection Clause. Plaintiffs propose Baker, Bolden, Nelson, and Walker as the named plaintiffs to represent this class.

Rule 23(a) Requirements

As an initial matter, Florissant argues the Modified Class 4 (or Paid Fines Class) is not ascertainable because Plaintiffs and their expert included every person who ever paid a fine or fee (excluding warrant recall fees, letter fees, and failure to appear fees), regardless of any of the underlying reasons and without any evidence of whether that person received an indigence analysis. Florissant argues that there are all sorts of situations where a payor would pay a fine or fee without being under threat of incarceration. For example, if a person gets a ticket in Florissant and simply pays the fine and has no further interaction with Florissant, that person could be a member of Plaintiffs' proposed Modified Class 4 and assert a violation of constitutional rights. A person who agrees to a payment plan and timely pays the fines over time would be a member of Plaintiffs' proposed class. A person who retains counsel to appear on his behalf and pays after negotiating a disposition would be included in the proposed class. Both the Original Paid Fines

Class and the Modified Class 4, as defined in the operative complaint and Plaintiffs' motion, are too broad. To include every person who paid fines or fees to Florissant would necessarily include persons unharmed by the conduct at issue. Plaintiffs' expert calculated that Modified Class 4 was made up of 54,570 payors. While this certainly satisfies numerosity, it cannot be said that the proposed class's commonalities predominate over questions affecting individual members.

In an effort to address these concerns and only identify persons who paid the fine because of a real or perceived threat of imprisonment, at the very end of oral argument Plaintiffs proposed a more narrow class of persons who paid fines and/or fees to Florissant *after being incarcerated.* Plaintiffs state that the group could easily be ascertained from the data available. The Court agrees. While the original definition of Modified Class 4 is too general, the Court accepts Plaintiffs' more narrowed proposal ("Narrowed Modified Class 4") and will define the class as follows:

> All persons who paid fines and/or fees to the City of Florissant  (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)) after being jailed on a warrant issued by Florissant and without an indigency hearing from October 31, 2011 to present.

The Narrowed Modified Class 4 is ascertainable from municipal court records and is adequately limited to the indigent, given that "most people would not willingly stay incarcerated if their financial circumstances permitted them to avoid it." *Dixon v. City of St. Louis*, No. 4:19-CV-0112-AGF, 2021 WL 616153, at *7 (E.D. Mo. Feb. 17, 2021). Plaintiffs' data expert, Arthur Olsen, has already compiled the data for the now-rejected Modified Class 4. Based on the data Olsen already used to identify arrestees in other classes, he can narrow the Modified Class 4 population by limiting it to only those payors who paid their fine or fee after being jailed on a Florissant warrant.

According to the Declaration of the Assistant Police Chief of the Florissant Police Department and the Court Administrator, the named Plaintiffs fall within the Narrowed Modified

Class 4. (*See* Declaration of Randy Boden and Debra Mills¸ ECF No. 220-7.) For example, they report that "Baker was held in the Florissant jail for 6 hours sand 30 minutes on January 17, 2013. (Ex. A.) He was released when he paid the fine and costs. (Ex. A)." (ECF No. 220-7 at 3.) They report Nelson was arrested after failing to appear at two successive court dates and "was held in the Florissant jail for 4 hours and 19 minutes on January 22, 2013. (*Id.*) She was released when she posted bond in the amount of $200" and subsequently "$150 of her bond was applied to satisfy her fees and costs." (ECF No. 220-7 at 6.) Bolden was picked up by Florissant police after being jailed in a different municipality on a Florissant warrant. "She was held in the Florissant jail for 6 hours and 2 minutes, at which point she posted bond in the amount of $400.00 and was released." Her $400 bond was later forfeited in payment of fines and costs. (ECF No. 220-7 at 9.) During a traffic stop for invalid license plates, Walker was arrested on a Florissant warrant for failure to address prior traffic citations. She was held in the Florissant jail on February 3, 2014 for 16 hours, and when she did not post bond she was released to the next municipality pursuant to a warrant in a different jurisdiction. She eventually entered into a payment agreement concerning several citations, and fully paid her fines and penalties by December 2016. (ECF No. 220-7 at 10-11.) Each was assessed a fine without an opportunity to prove indigence, arrested and jailed on Florissant warrants, and paid their fines only after arrest and/or issuance of additional warrants. Accordingly, the Court finds that Baker, Bolden, Nelson, and Walker were subject to the allegedly unconstitutional conduct at issue and are appropriate representatives of this narrowed class. Baker, Bolden, Nelson, and Walker satisfy the Rule 23 (a) requirements for class certification.

Rule 23(b)(3) Requirements

As discussed above, Florissant's liability for the alleged violations of Plaintiffs' constitutional rights can be established through common proof, including municipal court records,

jail records, revenue records, and testimony of municipal employees. While no records exist to definitively show whether or not indigency inquiries were made, Plaintiffs contend no putative class member received such an inquiry. The existence of Florissant's policies and processes are subject to common proof such that the question of whether they are constitutional can be determined on a class wide basis.

Damages can also be determined using a common method of analyzing municipal court records. Plaintiffs' expert can narrow the class as described above and utilize the records to show the amount of fines paid by these persons. Such individual assessments of damages do not erode Rule 23(b)(3)'s predominance factor.

Lastly, certification of this class is superior to other methods of adjudication. The class consists of indigent persons subject to detention for failure to appear or for failure to pay on minor ordinance violations. It is unlikely that many if not most of these individuals would ever commence litigation on their own behalf to vindicate their rights. Because the Narrowed Modified Class 4 satisfies the requirements of Rule 23(a) and (b)(3), the Court will certify Narrowed Modified Class 4 under Rule 23(b)(3) and appoint named Plaintiffs Baker, Bolden, Nelson, and Walker as Class Representatives. Plaintiffs' request to certify this Class under Rule 23(b)(2) for injunctive relief is addressed below.

**Modified Classes, 1, 3, 4, and 5 Under Rule 23(b)(2)**

Plaintiffs request Rule 23(b)(2) certification for each of the four Modified Classes discussed above, seeking injunctive relief in the form of individualized hearings to determine a person's ability to pay, with such hearings to occur prior to assessments of fines, imposition of bonds, and/or incarceration or the threat of incarceration for nonpayment. Florissant first suggests that the injunctive relief sought is within the control of the separate municipal court division and

not Florissant itself. Additionally, Florissant argues that any injunctive relief sought is moot due to the implementation of reforms following the passage and implementation of Senate Bill 5. *See* Missouri Revised Statute § 479.360, Mo. R. Crim. P. 37. Missouri Senate Bill 5 prohibits detention for the purpose of "coerc[ing] payment of fines and costs" unless the detainee was found to be in contempt; and requires, *inter alia,* that anyone in custody pursuant to an arrest warrant "have an opportunity to be heard by a judge … as soon as practicable and not later than forty-eight hours on minor traffic violations…" Florissant enacted new Operating Orders following the bill's passage, and Florissant contends that the new orders have been followed such that Plaintiffs cannot prove the City is refusing to act under Rule 23(b)(2). Plaintiffs respond that some of the indigent jailing conduct at issue was already disallowed by existing Missouri law pre-Senate Bill 5. Plaintiffs take the position that if Florissant's conduct did not comport with preexisting Missouri law, the enactment of new law in Senate Bill 5 addressing indigent jailing practices may not prevent Florissant from continuing its allegedly unconstitutional conduct.

Florissant's 23(b)(2) challenges address the merits of Plaintiffs' claims and are not properly before the Court on class certification. In any event, the Court does not have sufficient evidence regarding the impact of Senate Bill 5's implementation to make a finding that the injunctive relief sought by Plaintiffs is moot.

A class may be certified under Rule 23(b)(2) when the primary relief sought is declaratory or injunctive. *Avritt,* 615 F.3d at 1035. Such a class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the *Webb* court acknowledged:

This Court has held that Rule 23(b)(2) certification is appropriate for a class comprised of arrestees "detained because they are unable to pay bail" and who

> "seek a declaration on the lawfulness of Defendants' practices and injunction requiring Defendants to conduct hearings in accordance with due process, not flawed by this infirmity." *Dixon*, 2021 WL 616153, at *5. Indeed, a Rule 23(b)(2) class "has been frequently used, and approved, in cases challenging relatively short periods of detention or detention of those with conditions yet to be ascertained, such as disability or indigence." *ODonnell v. Harris Cty., Tex.*, Civil Action No. H-16-1414, 2017 WL 1542457, at *3 (S.D. Tex. Apr. 28, 2017) (citing *Gerstein v. Pugh*, 420 U.S. 103, 110-11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and other cases).

*Webb,* 340 F.R.D. at 143. Despite Florissant's contention to the contrary, each modified class seeks a cohesive request for an injunction that could uniformly and consistently provide relief to the class. Plaintiffs seek declaratory and injunctive relief permanently enjoining Florissant from enforcing the alleged unconstitutional policies and practices, including jailing putative class members without a meaningful inquiry into their ability to pay and an evaluation of alternatives to incarceration before they are failed for non-payment (Modified Class 1), jailing them without a first appearance or arraignment before a neutral (Modified Class 3), and imposing fines or fees without an inquiry to determine indigency (Narrowed Modified Class 4).[9] For class certification purposes, Plaintiffs have shown that a class-wide injunction may be the only way to ensure the City's compliance with its constitutional duties. The Court will grant Rule 23(b)(2) certification of Modified Class 1, Modified Class 3, and Narrowed Modified Class 4.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Class Certification is **GRANTED in part** and **DENIED in part** as set forth above.  [ECF No. 167.]

**IT IS FURTHER ORDERED** that named Plaintiffs Baker, Bailey, Bolden, Nelson, and Walker are appointed as Class Representatives to represent the Modified Class 1, defined as follows:

---

[9] The Court omits Modified Class 5 from the discussion because, as discussed *supra,* Plaintiffs failed to meet their burden with respect to the Rule 23(a) requirements.

All persons held in the City of Florissant jail on behalf of the City of Florissant for failure to satisfy a bond, fine, fee, (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)), surcharge, and/or costs without (1) an indigency hearing, (2) a finding that they were a flight risk, or (3) a finding that they were a danger to the community from October 31, 2011 to present (excluding individuals jailed pursuant to a domestic violence hold).

**IT IS FURTHER ORDERED** that named Plaintiffs Baker, Bailey, Bolden, Nelson, and Walker are appointed as Class Representatives to represent the Modified Class 3, defined as follows:

All persons held in the City of Florissant jail, between October 31, 2011 to present, on a Failure to Appear warrant for the City of Florissant who were not brought before a judge for a first appearance or arraignment (excluding individuals jailed pursuant to a domestic violence hold).

**IT IS FURTHER ORDERED** that Plaintiffs Baker, Bolden, Nelson, and Walker are appointed as Class Representatives to represent the Narrowed Modified Class 4, defined as follows:

All persons who paid fines and/or fees to the City of Florissant (excluding "warrant recall fees", "letter fees", and/or "failure to appear fees", as defined in *Watkins v. City of Florissant*, No. 16SL-CC00165 (St. Louis Co. Cir. Ct. filed Jan. 2016)) after being jailed on a warrant issued by Florissant and without an indigency hearing from October 31, 2011 to present.

**IT IS FURTHER ORDERED** that John Waldron and Blake Strode of ArchCity Defenders, Inc., 440 N. 4th Street, Suite 390, St. Louis, Missouri 63102; Andrea R. Gold of Tyco & Zavareei LLP, 1828 L Street NW, Suite 1000, Washington, DC 20036; and Ryan Keane and Nathaniel Carroll of Keane Law LLC, 7711 Bonhomme Ave., Suite 600, St. Louis, Missouri 63105, are appointed as Class Counsel.

**IT IS FINALLY ORDERED** that the parties, within thirty (30) days of entry of this Order, shall submit a proposed joint scheduling plan that includes the parties' positions concerning when

a referral of this action to mediation would be most productive, and any other appropriate deadlines and dates for anticipated motions.


                                                      _____

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of February, 2023