## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS BAKER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-CV-1693 NAB |
| | ) | |
| CITY OF FLORISSANT, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Exclude the Report and Testimony of Dr. Thomas Ireland (ECF No. 164) and Defendant's Motion to Disqualify and Exclude the Report and Testimony of John Ward Economics (ECF No. 194). Both motions seek exclusion of the reports and testimony of the other side's damages-related economics expert under Rule 702, Federal Rules of Evidence, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Both motions have been fully briefed and are ripe for consideration. For the reasons that follow, I will deny Defendant's motion and deny in part and grant in part Plaintiffs' motion.

Plaintiffs have designated Dr. William Rogers, an economist from John Ward Economics, to testify to the measure of economic damages sustained by individuals who have been allegedly wrongfully detained. In his report, Dr. Rogers proffers two methods to measure such damages: 1) the Market Hourly Price Valuation, which is measurable as the hourly market compensation rate that a city must pay to staff its jails with jailors; and 2) the Value of Statistical Life (or Willingness-to Pay) valuation, which is measurable as the amount that persons are willing to pay to be able to perform their activities of daily living without impediment. (ECF No. 164-3, John Ward Economics Report.)

The City of Florissant does not challenge the validity of these methods in calculating economic damages in general, however, it argues that the methodologies cannot be applied in a class action brought under 42 U.S.C. § 1983 for unlawful detention. Florissant contends that damages in a § 1983 action are intended to redress personal injury and are necessarily individual in nature. Florissant also claims that plaintiffs seek to apply these methodologies to measure the value of hedonic damages, that is, the loss of enjoyment of life, and that economic principles cannot apply to such damages. Florissant therefore moves to exclude Rogers' expert report and testimony.

Florissant's proffered expert, Dr. Thomas R. Ireland, is an economics professor at the University of Missouri-St. Louis. In his report, Dr. Ireland focused on the manner in which Dr. Rogers determined dollar values for the time class members spent in jail. Dr. Ireland criticizes Dr. Rogers for his attempt to assign an economic value to the loss of enjoyment of life, or hedonics. Dr. Ireland contends that the intangible, non-economic nature of hedonics cannot be measured using economic theories, and that several courts have barred purported expert testimony attempting to measure hedonic damages. In his report here, Dr. Ireland accuses Dr. Rogers of providing "would-be expert guidance" that is based on pure speculation and is "puffed up" by a list of "irrelevant references that does not provide any basis for making the comparison Dr. Rogers is making." Dr. Ireland contends that Dr. Rogers' opinion is not based on economic expertise but instead was formed only to "pander to a jury." (*See* ECF No. 164-5, Ireland Report.) Arguing that Dr. Ireland's criticisms are based on false assumptions and his own personal opinions instead of any expertise, plaintiffs move to exclude Dr. Ireland's expert report and testimony.

**LEGAL STANDARD**

"Expert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue." *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 865 (8th Cir. 2010) (internal quotation marks and citation omitted). This Court must act as a "gatekeeper" to "insure that the proffered expert testimony is both relevant and reliable." *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006) (internal quotation marks and citation omitted); *see also Daubert*, 509 U.S. at 589. In determining whether expert testimony should be admitted, the district court must decide if "the expert's methodology is reliable and can be reasonably applied to the facts of the case." *Eckelkamp v. Beste,* 315 F.3d 863, 868 (8th Cir. 2002). Pursuant to *Daubert*, the district court must conduct this initial inquiry as part of its gatekeeping function. *Glastetter v. Novartis Pharm. Corp.,* 252 F.3d 986, 988 (8th Cir. 2001) (per curiam). The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony. That interest is not implicated at the class certification stage where the judge is the decision maker. "The district court's 'gatekeeping function' under *Daubert* ensures that expert evidence 'submitted *to the jury'* is sufficiently relevant and reliable, but '[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.'" *In re Zurn Pex Plumbing Prod. Liab. Litig.,* 644 F.3d 604, 613 (8th Cir. 2011) (quoting *Bonner v. ISP Technologies, Inc.,* 259 F.3d 924, 929 (8th Cir. 2001) (emphasis added) and *United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir. 2005)). The purpose of motions to exclude expert testimony is to ensure that only reliable and relevant expert testimony is presented to a jury. *Russell v. Whirlpool Corp.,* 702 F.3d 450, 456 (8th Cir. 2012).

Federal Rule of Evidence 702 provides the standard for this Court's admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[1] A party's mere disagreement with an expert's assumptions and methodologies does not warrant exclusion of that expert's testimony. *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012). If a party thinks other assumptions and methodologies are more appropriate, it may make this apparent through cross-examination and its own expert witnesses. *Id.* "[Q]uestions of conflicting evidence must be left for the jury's determination." *Bonner,* 259 F.3d at 930 (internal quotations marks and citation omitted).

The Court has substantial discretion in determining whether expert testimony should be allowed. *Russell,* 702 F.3d at 456. If the Court is satisfied with the expert's knowledge, skill, experience, training, or education, and the expert's testimony is reasonably based on that expertise, admitting the testimony is not an abuse of discretion. *Daubert,* 509 U.S. at 588-91; *Weitz Co. v. MH Washington,* 631 F.3d 510, 527 (8th Cir. 2011).

The Court should resolve doubts regarding an expert's testimony in favor of admissibility, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006), however, it is well settled that an expert may not be permitted to offer an opinion on legal issues involved in a case. *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005). Nor may an otherwise qualified expert simply offer conclusory opinions without providing a basis for the conclusions. *See Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 826-27 (D. Minn. 2011), *cited*

---

[1] Neither side challenges the qualifications of the other's expert as to their ability to provide expert opinions on economics.

*approvingly in Jaycox v. Terex Corp.*, No. 4:19-CV-02650 SRC, 2021 WL 2438875, at *4 (E.D. Mo. June 15, 2021). Finally, an expert may not testify on a question that the jury is capable of understanding and deciding without the expert's help. *See American Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015).

## DISCUSSION

Persons who are subject to unlawful incarceration are deprived of their liberty and are entitled to compensatory damages. *Betances v. Fischer*, 403 F. Supp. 3d 212, 231 (S.D.N.Y. 2019). General damages for loss of liberty may be, and indeed have been, calculated on a class-wide basis. *See Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015).

> "The damages recoverable for the loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering. . . ." General damages for the loss of liberty "'need not be specifically proved—it may be inferred from the circumstances of the arrest or imprisonment' and 'would include at least the value of the time lost by the plaintiff during the period of detention.'" Thus, these damages do not turn on any individual characteristics of any class members.

*Id.* (quoting *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir. 2004) (quoting McCormick, *Handbook on the Law of Damages*, § 107 at 376)). *Cf. Orvis v. Spokane Cty.*, 281 F.R.D. 469, 475 (E.D. Wash. 2012) (court-approved § 1983 class-wide settlement providing for payment of *per diem* rate for each day that a class member was incarcerated without judicial inquiry into ability to pay); *McFarlane v. Carothers*, No. 4:15-cv-00176-SEB-DML, 2017 WL 9533071, at *7 (S.D. Ind. Feb. 9, 2017) (methodology for determining damages in § 1983 class action alleging unconstitutional detention can be addressed as case develops); *Covington v. Wallace*, No. 2:12-cv-123-DPM, 2014 WL 5306720, at *2 (E.D. Ark. Oct. 15, 2014) (in certifying Rule 23(b)(3) class in § 1983 action, court found that *per diem* rate for number of days each class member was unlawfully detained appeared "both fair and legally adequate" in measuring damages); *Moffitt v.*

5

*Johnson*, No. 4:05CV00963 JLH, 2007 WL 2904004, at *8 (E.D. Ark. Oct. 2, 2007) (court-approved class-wide settlement provided for assessment of monetary damages through points formula based on time spent in over-detention, with each point valued at $125). The Court therefore disagrees with Florissant's assertion that damages for time spent in unlawful detention cannot be awarded on a class-wide basis in a § 1983 action.

The plaintiffs here proffer two economic methodologies by which to measure the value of time lost by persons during periods of unlawful detention: the Market Hourly Price Valuation, and the Value of Statistical Life/Willingness-to-Pay Valuation. Neither Florissant nor its expert, Dr. Ireland, challenges these methodologies themselves, only their application to plaintiffs' claims of unlawful detention under § 1983. Specifically, Florissant and Dr. Ireland contend that plaintiffs' claim for damages for time spent in detention is actually a "loss of enjoyment of life" claim, which cannot be measured economically and thus cannot be calculated using the economic methodologies proposed by Dr. Rogers. Also, because quality of life is unique to each individual and cannot be bought or sold in the marketplace, Florissant and Dr. Ireland contend that no economic methodology of *any* kind can be used to measure this hedonic value and that a jury must rely on its own experience and common sense to determine whether a value can be assigned.  In his report, Dr. Ireland states that a special focus of his research involves legal decisions regarding the admissibility of hedonic damages testimony by economic experts. Dr. Ireland has reviewed, studied, and written about several court opinions from which he has concluded that purported expert testimony about hedonic damages is not admissible at trial.  He therefore concludes that Dr. Rogers' opinions are likewise not admissible here. (ECF No. 164-5, Ireland Report.)

*Daubert* recognizes a distinction between issues that a trial court must decide and issues for a jury to determine after opposing counsel has been provided the opportunity to cross-examine

an expert regarding his conclusions and the facts on which they are based. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying the testimony is sound. The Court must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Thus, a district court is not free to choose between the conflicting views of experts whose principles and methodology are reliable and relevant. *Nat'l Bank of Com. of El Dorado v. Associated Milk Producers, Inc.*, 191 F.3d 858, 862 (8th Cir. 1999).  The question of whether the expert is credible or his theories are correct given the circumstances of a particular case is a factual one that is left for the jury. *Id.*; *A.H. v. St. Louis Cty.*, No. 4:14-CV-2069 (CEJ), 2016 WL 4269548, at *3 (E.D. Mo. Aug. 15, 2016).

"Hedonic damages," as that term is used in litigation, are damages that "attempt to compensate a victim for the loss of the pleasure of being alive[.]" *Families Advocate, LLC v. Sanford Clinic N.*, No. 16-CV-114, 2019 WL 1442162, at *1 (D.N.D. Mar. 31, 2019), *quoted approvingly in Lessert v. BNSF Ry. Co.*, 476 F. Supp. 3d 926, 950 (D.S.D. 2020). And Florissant is correct that expert testimony on calculating the value of hedonic damages is generally not allowed. But in this case, plaintiffs argue their expert's damages calculations are not based on hedonic damages. They contend instead that Dr. Rogers uses acceptable, recognized, and reliable economic methodologies to calculate the value of time itself and, particularly in this case, the value of a person's time spent in jail – which plaintiffs argue is distinct from measuring the enjoyment of life. (*See* ECF No. 198 at p. 12.) Florissant's challenge to Dr. Rogers' application of these methodologies to the facts of this case affects the weight of Dr. Rogers' testimony, not its admissibility, and may be addressed on cross-examination. Florissant may not, however, conduct its cross-examination in such a manner as to elicit an opinion from Dr. Rogers on the legal issue

7

of whether the damages he attempts to measure are "hedonic" rather than for the value of time. Florissant's motion to exclude the expert report and testimony of Dr. Rogers will be denied.

The Court will also deny plaintiffs' motion to exclude the expert report and testimony of Dr. Ireland to the extent plaintiffs seek to exclude his opinions *in toto*. Plaintiffs' characterization that Ireland provides only personal and not expert opinions in response to Dr. Rogers' opinions is understandable, especially given Dr. Ireland's admission that he did not review the materials or references cited by Dr. Rogers. Also, in Dr. Ireland's report he employs a strategy of condescension in an attempt to persuade the Court that all of Dr. Rogers' opinions are unreliable and not appropriate in litigation. Dr. Ireland does refer to his own economic background and expertise as the basis upon which he disagrees with Dr. Rogers' application of otherwise sound economic principles to the facts of this case. The reasonableness of Dr. Ireland's criticisms of Dr. Rogers' analysis and methods of calculation is a matter for the jury's consideration in weighing the evidence. *See Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005).

However, the admissibility of Dr. Ireland's opinions is not without limitation. Dr. Ireland is not qualified to render an opinion as to what he believes is Dr. Rogers' intention in using economic methodologies in this case or Dr. Rogers' motivation in the selection of certain publications and references to support his opinions. Any testimony in this regard is therefore barred. *See Hallmark Cards Inc. v. Monitor Clipper Partners, LLC*, No. 08-0840-CV-W-ODS, 2012 WL 3047308, at *6 (W.D. Mo. July 25, 2012) ("experts cannot offer opinions regarding historical facts or matters of intent, motivation, or other thought processes"); *Amica Mut. Ins. Co. v. Willard*, No. 4:07CV1745 DDN, 2009 WL 2982902, at *5 (E.D. Mo. Sept. 14, 2009) (expert may not testify in a fashion that characterizes a person's state of mind).

Nor is it appropriate for Dr. Ireland to draw legal conclusions or opine on his interpretation of the law. *See In re Genetically Modified Rice Litig.*, 2010 WL 2326036, at *5 (E.D. Mo. June 7, 2010) (internal citation omitted). Dr. Ireland is therefore barred from testifying in any manner as to his "opinion" that Dr. Rogers' testimony is inadmissible and will be unhelpful to the jury. *See Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (expert testimony on legal matters is inadmissible and intrudes on Court's role to instruct the jury as to the law); *Betances v. Fischer*, No. 11-CV-3200 (RWL), 2021 WL 1534159, at *4 (S.D.N.Y. Feb. 23, 2021) (same).

Finally, I will also exclude Dr. Ireland's opinion that "there are many people who are poor enough that they would probably readily volunteer to be incarcerated for a period of time if paid . . . ." (ECF No. 164-5, Ireland Report at p. 3.) With regard to this opinion, Dr. Ireland states, "I can cite no specific study in support of what I'm saying because no such studies exist…" Therefore, this insensitive and conclusory statement will be excluded.

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant City of Florissant's Motion to Disqualify and Exclude the Report and Testimony of Dr. William Rogers and John Ward Economics (ECF No. 194) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' Motion to Exclude the Report and Testimony of Dr. Thomas R. Ireland (ECF No. 164) is **DENIED** to the extent plaintiffs seek to exclude Dr. Ireland's report and testimony *in toto*, but **GRANTED** consistent with the limitations set out in this Memorandum and Order.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of February, 2023.